**FILED**
**05-17-2022**
**CIRCUIT COURT**
**DANE COUNTY, WI**
**2022CV001178**
**Honorable Frank D.**
**Remington**
**Branch 8**

STATE OF WISCONSIN      CIRCUIT COURT      DANE COUNTY
BRANCH __

---

KHARY PENEBAKER, individually and as a
relator on behalf of the State of Wisconsin,
429 West Boden Street
Milwaukee, WI 53207;

MARY ARNOLD, individually and as a relator
on behalf of the State of Wisconsin,
954 Dix Street
Columbus, WI 53925;

     and

BONNIE JOSEPH, individually and as a relator
on behalf of the State of Wisconsin,
8130 North Beach Drive
Fox Point, WI 53217,

          *Plaintiffs*,

     v.

ANDREW HITT
231 East Carrington Lane
Appleton, WI 54913;

ROBERT F. SPINDELL, JR.
1626 North Prospect Avenue
Milwaukee, WI 53202;

BILL FEEHAN
1901 Cherokee Avenue
La Crosse, WI 54603;

KELLY RUH
2091 Old Plank Road
De Pere, WI 54115;

CAROL BRUNNER
7473 Karth Court
Franklin, WI 53132;

Case No. 22CV_____

Case Code: Civil - 30106 Intentional Tort;
     30701 - Declaratory Judgment;
     30956 - Pet. for Writ of Quo Warranto



EDWARD SCOTT GRABINS
3016 Hidden View Trail
Verona, WI 53593;

KATHY KIERNAN
1751 Scenic Road
Richfield, WI 53076;

DARRYL CARLSON
1225 Longfellow Avenue
Sheboygan, WI 53083;

PAM TRAVIS
W5504 Bieneck Road
Neillsville, WI 54456;

MARY BUESTRIN
13259 North Lakewood Drive
Mequon, WI 53097;

JAMES R. TROUPIS
4126 Timber Lane
Cross Plains, WI 53528;

     and

KENNETH CHESEBRO
1600 Massachusetts Avenue, Apt. 801
Cambridge, MA 02138,

        *Defendants.*

---

## SUMMONS

---

THE STATE OF WISCONSIN

To each person named above as a Defendant:

     You are hereby notified that the Plaintiffs named above have filed a lawsuit or other legal

action against you. The Complaint, which is attached, states the nature and basis of the legal

action.

2

Within 45 days of receiving this Summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The Answer must be sent or delivered to the Court, whose address is Clerk of Circuit Court, Dane County Circuit Court, 215 S. Hamilton Street, Madison, WI 53703; to Law Forward, Inc., 222 West Washington Avenue, Suite 250, Madison, Wisconsin, 53703; to Stafford Rosenbaum LLP, 222 West Washington Avenue, Suite 900, Madison, Wisconsin 53701; and to ICAP, Georgetown University Law Center, 600 New Jersey Ave NW, Washington, DC 20001. You may have an attorney help or represent you.

If you do not provide a proper answer within 45 days, the Court may grant Judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A Judgment may be enforced as provided by law. A Judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated: May 17, 2022

*Electronically signed by Jeffrey A. Mandell*
Jeffrey A. Mandell (State Bar No. 1100406)
Carly Gerads (State Bar No. 1106808)
STAFFORD ROSENBAUM LLP

Mel Barnes (State Bar No. 1096012)
LAW FORWARD, INC.

Mary B. McCord*
Rupa Bhattacharyya*
Alex Aronson*
Joseph W. Mead*
Ben Gifford*
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION

3

*Attorneys for Plaintiffs Khary Penebaker, Mary Arnold, and Bonnie Joseph*

**\*** Application for admission *pro hac vice* forthcoming

Addresses:

STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701
Email: jmandell@staffordlaw.com
      cgerads@staffordlaw.com
608.256.0226

LAW FORWARD, INC.
222 West Washington Avenue, Suite 250
Madison, Wisconsin 53703
Email: mbarnes@lawforward.org
608.535.9808

INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave NW
Washington, DC 20001
Email: mbm7@georgetown.edu
      rb1796@georgetown.edu
      aa2595@georgetown.edu
      jm3468@georgetown.edu
      bg720@georgetown.edu
202.662.9042

FILED
05-17-2022
CIRCUIT COURT
DANE COUNTY, WI
2022CV001178
Honorable Frank D.
Remington
Branch 8

STATE OF WISCONSIN     CIRCUIT COURT     DANE COUNTY
BRANCH __

---

KHARY PENEBAKER, individually and as a
relator on behalf of the State of Wisconsin,
429 West Boden Street
Milwaukee, WI 53207;

MARY ARNOLD, individually and as a relator
on behalf of the State of Wisconsin,
954 Dix Street
Columbus, WI 53925;

     and

BONNIE JOSEPH, individually and as a relator
on behalf of the State of Wisconsin,
8130 North Beach Drive
Fox Point, WI 53217,

         *Plaintiffs,*

       v.

ANDREW HITT
231 East Carrington Lane
Appleton, WI 54913;

ROBERT F. SPINDELL, JR.
1626 North Prospect Avenue
Milwaukee, WI 53202;

BILL FEEHAN
1901 Cherokee Avenue
La Crosse, WI 54603;

KELLY RUH
2091 Old Plank Road
De Pere, WI 54115;

CAROL BRUNNER
7473 Karth Court
Franklin, WI 53132;

Case No. 22CV_____

Case Code: Civil - 30106 Intentional Tort;
       30701 - Declaratory Judgment;
       30956 - Pet. for Writ of Quo Warranto

EDWARD SCOTT GRABINS
3016 Hidden View Trail
Verona, WI 53593;

KATHY KIERNAN
1751 Scenic Road
Richfield, WI 53076;

DARRYL CARLSON
1225 Longfellow Avenue
Sheboygan, WI 53083;

PAM TRAVIS
W5504 Bieneck Road
Neillsville, WI 54456;

MARY BUESTRIN
13259 North Lakewood Drive
Mequon, WI 53097;

JAMES R. TROUPIS
4126 Timber Lane
Cross Plains, WI 53528;

     and

KENNETH CHESEBRO
1600 Massachusetts Avenue, Apt. 801
Cambridge, MA 02138,

       *Defendants.*

---

## COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Khary Penebaker, Mary Arnold, and Bonnie Joseph bring this Complaint for Damages and Declaratory and Injunctive Relief against Defendants Andrew Hitt, Robert F. Spindell, Jr., Bill Feehan, Kelly Ruh, Carol Brunner, Edward Scott Grabins, Kathy Kiernan, Darryl Carlson, Pam Travis, Mary Buestrin, James R. Troupis, and Kenneth Chesebro, and allege as follows:

2

## INTRODUCTION

A little over a year ago, a violent mob broke into the United States Capitol. Amid chants of  hang Mike Pence,  the intruders swept through the building, many of them aiming to stop the Vice President   who was presiding over Congress s counting of electoral votes   from accepting votes cast in favor of President-Elect Joseph R. Biden, Jr., and Vice President-Elect Kamala D. Harris.[1] These rioters were not acting spontaneously. To the contrary, President Donald J. Trump had repeatedly encouraged his supporters to assemble in Washington, D.C., on January 6, 2021, where he had advertised that there would be a  BIG Protest Rally  to  StopTheSteal! [2] Once there, at a gathering near the White House, Trump urged his supporters to  walk down to the Capitol  and  demand that Congress do the right thing and only count the electors who have been lawfully slated. [3]

Trump s reference to  the electors who have been lawfully slated  is at the heart of this case. In the months following his loss on November 3, 2020, Trump and his allies developed a plan to overturn the election results by assembling slates of fraudulent presidential electors in select swing States where he had lost. The Defendants in this case are the fraudulent electors from the State of Wisconsin, along with two individuals who conspired with, aided, and abetted

---

[1] *See* Ashley Parker, Carol D. Leonnig, Paul Kane & Emma Brown, *How the Rioters Who Stormed the Capitol Came Dangerously Close to Pence*, Wash. Post (Jan. 15, 2021), available at https://www.washingtonpost.com/politics/pence-rioters-capitol-attack/2021/01/15/ab62e434-567c-11eb-a08b-f1381ef3d207_story.html.

[2] *See* Dan Barry & Sheera Frenkel, *Be There. Will Be Wild! WTrump All but Circled the Date*, N.Y. Times (Jan. 6, 2021), available at https://www.nytimes.com/2021/01/06/us/politics/capitol-mob-trump-supporters.html.

[3] *Transcript of Trump s Speech at Rally Before US Capitol Riot*, AP News (Jan. 13, 2021), available at https://apnews.com/article/election-2020-joe-biden-donald-trump-capitol-siege-media-e79eb5164613d6718e9f4502eb471f27.

them. Like their counterparts in six other swing States, the Wisconsin fraudulent electors gathered on December 14, 2020 the day statutorily designated for the meeting of the Electoral College and purported to cast their State s electoral votes for Trump and Pence.[4] They did so even though they knew that Biden and Harris had won the election in Wisconsin; even though those results had been recounted and certified; and even though Trump and Pence had exhausted all available legal mechanisms for challenging the outcome. The Wisconsin fraudulent electors and their counterparts in the other swing States purported to cast electoral votes for Trump and Pence because they hoped to lay the foundation for Pence and Congress to count their ballots on January 6, 2021, and to reject those cast by the real electors who had won the popular vote.[5] The actions of the fraudulent electors were thus a necessary predicate for the subsequent efforts by Trump and his supporters to intervene at the Capitol.

Defendants not only helped lay the groundwork for the events of January 6, 2021, but also inflicted lasting damage on Wisconsin s civic fabric. The public s faith in the integrity of our elections is critical to the continued functioning of our democracy. If citizens believe that their votes can be overridden by the scheming of partisan actors, they will have little incentive to participate in the political process. And if voters are falsely told that an election was stolen from them, they will doubt the legitimacy of their government s authority and its actions. Although Defendants were unsuccessful in having their fake ballots counted, they caused significant harm simply by trying, and there is every reason to believe that they will try again if given the

---

[4] *See* Alan Feuer, Maggie Haberman & Luke Broadwater, *Memos Show Roots of Trump s Focus on Jan. 6 and Alternate Electors*, N.Y. Times (Feb. 2, 2022), available at https://www.nytimes.com/2022/02/02/us/politics/trump-jan-6-memos.html.

[5] *See id.*

opportunity.[6]

Defendants  actions also violated a host of state and federal laws.[7] Thus far, however, none of the fraudulent electors has been held accountable.[8] This lawsuit seeks to change that.

Plaintiffs are individual Wisconsin taxpayers and voters, and include lawfully elected presidential electors for the State in the 2020 presidential election.  They ask for a declaration from this Court that Defendants acted unlawfully when they falsely assumed    and conspired with, aided, and abetted each other in falsely assuming    the office of presidential elector for the State of Wisconsin, as well as an injunction both correcting the historical record and preventing Defendants from engaging in similar violations in the future.  Plaintiffs also request damages in recognition of the reputational harm that Defendants inflicted on Wisconsin s lawfully elected presidential electors    whose offices Defendants usurped, and whose legitimacy Defendants impugned    and Defendants  unlawful use of public resources on December 14, 2020.  As alleged below, Plaintiffs are entitled to relief under several statutory and common-law theories, as well as under the Wisconsin Constitution.

---

[6] *See* Sam Levine, *Widely Criticized Wisconsin Report Repeats Falsehoods in Argument to Decertify  OMOMElection*, The Guardian (Mar. 1, 2022), available at https://www.theguardian.com/us-news/2022/mar/01/widely-criticized-wisconsin-report-repeats-falsehoods-argument-decertify-2020-election.

[7] The Wisconsin fraudulent electors are similar in this respect to fraudulent electors in other States.  For example, the Attorney General of Michigan has publicly opined that fraudulent electors there violated state forgery laws.  *See* David Eggert, *Michigan AG Asks Feds to Investigate Fake GOP Electors*, ABC News (Jan. 14, 2022), available at https://abcnews.go.com/Politics/wireStory/michigan-ag-asks-feds-investigate-fake-gop-electors-82263515.

[8] On March 9, 2022, the Wisconsin Elections Commission dismissed an administrative complaint, filed by undersigned counsel, alleging that the Wisconsin fraudulent electors violated Wis. Stat. §§ 5.10 and 7.75.  The complainant has requested judicial review of the actions of Defendant Spindell   who in addition to being a fraudulent elector is also a member of the Wisconsin Elections Commission   in participating in that decision, notwithstanding the complainant s motion for recusal.  *See Sickel v. WEC, et al.*, No. 22CV884 (Dane Cnty. Cir. Ct.).  That request is currently pending.

5

## PARTIES

1.      Plaintiff Khary Penebaker is a taxpayer and duly qualified voter of Wisconsin,

residing at 429 West Boden Street, Milwaukee, WI 53207.  Mr. Penebaker served as a lawfully

elected presidential elector for the State of Wisconsin in the 2020 presidential election.  He also

voted in Wisconsin s 2020 general election and objects to Defendants  unlawful interference in

Wisconsin s participation in the Electoral College, as described below.

2.      Plaintiff Mary Arnold is a taxpayer and duly qualified voter of Wisconsin,

residing at 954 Dix Street, Columbus, WI 53925.  Ms. Arnold served as a lawfully elected

presidential elector for the State of Wisconsin in the 2020 presidential election.  She also voted

in Wisconsin s 2020 general election and objects to Defendants  unlawful interference in

Wisconsin s participation in the Electoral College, as described below.

3.      Plaintiff Bonnie Joseph is a taxpayer and duly qualified voter of Wisconsin,

residing at 8130 North Beach Drive, Fox Point, WI 53217.  Ms. Joseph voted in Wisconsin s

2020 general election and objects to Defendants  unlawful interference in Wisconsin s

participation in the Electoral College, as described below.

4.      Defendant Andrew Hitt is an adult resident of Wisconsin whose last known

address is 231 East Carrington Lane, Appleton, WI 54913.  On October 6, 2020, he was

nominated by the Republican Party of Wisconsin as a candidate for the office of presidential

elector.  At all times relevant to the events at issue here, Defendant Hitt was Chairman of the

Republican Party of Wisconsin.  He no longer holds that position.

5.      Defendant Robert F. Spindell, Jr., is an adult resident of Wisconsin whose last

known address is 1626 North Prospect Avenue, Milwaukee, WI 53202.  On October 6, 2020, he

was nominated by the Republican Party of Wisconsin as a candidate for the office of presidential

6

elector. Defendant Spindell is an appointed Wisconsin Elections Commissioner, but he is sued here in his personal capacity.

6.      Defendant Bill Feehan is an adult resident of Wisconsin whose last known address is 1901 Cherokee Avenue, La Crosse, WI 54603. On October 6, 2020, he was nominated by the Republican Party of Wisconsin as a candidate for the office of presidential elector.

7.      Defendant Kelly Ruh is an adult resident of Wisconsin whose last known address is 2091 Old Plank Road, De Pere, WI 54115. On October 6, 2020, she was nominated by the Republican Party of Wisconsin as a candidate for the office of presidential elector. At all times relevant to the events at issue here, Defendant Ruh was a member of the City of De Pere Common Council, but on April 5, 2022, she lost her reelection bid. She is sued here in her personal capacity.

8.      Defendant Carol Brunner is an adult resident of Wisconsin whose last known address is 7473 Karth Court, Franklin, WI 53132. On October 6, 2020, she was nominated by the Republican Party of Wisconsin as a candidate for the office of presidential elector.

9.      Defendant Edward Scott Grabins is an adult resident of Wisconsin whose last known address is 3016 Hidden View Trail, Verona, WI 53593. On October 6, 2020, he was nominated by the Republican Party of Wisconsin as a candidate for the office of presidential elector.

10.      Defendant Kathy Kiernan is an adult resident of Wisconsin whose last known address is 1751 Scenic Road, Richfield, WI 53076. She was designated by her co-defendants to fill a purported but fictitious vacancy in Wisconsin s slate of electors following the 2020 presidential election.

7

11.     Defendant Darryl Carlson is an adult resident of Wisconsin whose last known address is 1225 Longfellow Avenue, Sheboygan, WI 53083. On October 6, 2020, he was nominated by the Republican Party of Wisconsin as a candidate for the office of presidential elector.

12.     Defendant Pam Travis is an adult resident of Wisconsin whose last known address is W5504 Bieneck Road, Neillsville, WI 54456. On October 6, 2020, she was nominated by the Republican Party of Wisconsin as a candidate for the office of presidential elector.

13.     Defendant Mary Buestrin is an adult resident of Wisconsin whose last known address is 13259 North Lakewood Drive, Mequon, WI 53097. On October 6, 2020, she was nominated by the Republican Party of Wisconsin as a candidate for the office of presidential elector.

14.     Defendant James R. Troupis is an adult resident of Wisconsin whose last known address is 4126 Timber Lane, Cross Plains, WI 53528.

15.     Defendant Kenneth Chesebro is an adult resident of Massachusetts whose last known address is 1600 Massachusetts Avenue, Apt. 801, Cambridge, MA 02138.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this dispute pursuant to Article VII, Section 8 of the Wisconsin Constitution and Wis. Stat. § 753.03, which provide for subject matter jurisdiction over all civil matters within this State.

17.     Jurisdiction over Defendants Hitt, Spindell, Feehan, Ruh, Brunner, Grabins, Kiernan, Carlson, Travis, Buestrin, and Troupis is conferred by Wis. Stat. § 801.05(1)(b).

18.     Jurisdiction over Defendant Chesebro is conferred by several provisions of the Wisconsin Statutes, including, but not limited to, Wis. Stat. § 801.05(1)(d), (3), and (4).

8

19.     Venue is proper in Dane County because it is the county where Defendants Hitt,

Spindell, Feehan, Ruh, Brunner, Grabins, Kiernan, Carlson, Travis, and Buestrin    pursuant to a

conspiracy in which Defendants Troupis and Chesebro participated    unlawfully met and

engaged in the actions at the heart of this Complaint. Wis. Stat. § 801.50(2)(a).

## BACKGROUND

### Legal Framework

20.     Every four years, the American people decide who will serve as President and

Vice President of the United States.

21.     This political tradition has continued unbroken for over two centuries, making the

United States one of the longest-surviving democracies in the world.

22.     The rules governing presidential elections are delineated in the U.S. Constitution,

as well as in various federal and state laws.

23.     Under the Constitution, the President and Vice President are chosen by

presidential electors, who are appointed by each State. *See* U.S. Const. Art. II, § 1, cl. 2.

24.     Each State is allocated  a Number of Electors, equal to the whole Number of

Senators and Representatives to which the State may be entitled in the Congress.    *Id.*

25.     For the 2020 presidential election, Wisconsin was allocated ten electoral votes.[9]

26.     Although some state legislatures chose their presidential electors directly in the

first decades of the Nation s history, all States have long provided that their presidential electors

will be chosen by popular vote.

27.     Since statehood, Wisconsin has always assigned its electoral votes to the winner

---

[9] *See Distribution of Electoral Votes*, Nat l Archives, available at https://www.archives.gov/
electoral-college/allocation (last visited May 10, 2022).

of the statewide presidential election.[10]

28.     The Wisconsin Statutes explicitly state that, when voters participate in a presidential election, they are voting for the slate of electors that will cast Wisconsin s Electoral College votes:

> Although the names of the electors do not appear on the ballot and no reference is made to them, a vote for the president and vice president named on the ballot is a vote for the electors of the candidates for whom an elector s vote is cast. Under chs. 5 to 12 [the provisions of which regulate elections], all references to the presidential election, the casting of votes and the canvassing of votes for president, or for president and vice president, mean votes for them through their pledged presidential electors.

Wis. Stat. § 5.10.

29.     Accordingly, in Wisconsin, as in every State, voters choose presidential electors, and presidential electors choose the President and Vice President.

30.     Before voters can choose their presidential electors, there is a process for determining who will be on the slates of electors associated with different candidates.

31.     Under Wisconsin law, candidates for the office of presidential elector may be nominated by members of qualifying political parties at a meeting that takes place at the Wisconsin State Capitol  on the first Tuesday in October of each year in which there is a presidential election.    Wis. Stat. § 8.18(1).

32.     For the 2020 presidential election, the nomination by qualifying political parties of Wisconsin s candidates for the office of presidential elector took place on October 6, 2020.

33.     Voters in each State choose their presidential electors on Election Day, which

---

[10] *See* Michael Keane, Wisconsin Legislative Reference Bureau, *Wisconsin s Role in Electing the President*, July 2016 app. at V OSI available at http://lrbdigital.legis.wisconsin.gov/digital/collection/p16831coll2/id/1836/rec/5; *2016 Electoral College Results*, Nat l Archives, available at https://www.archives.gov/electoral-college/2016; *2020 Electoral College Results*, Nat l Archives, available at https://www.archives.gov/electoral-college/2020.

Congress has designated as the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President. P U.S.C. § 1; *see* U.S. Const. Art. II, § 1, cl. 4 (empowering Congress to determine the Time of chusing the Electors )

34.    For the 2020 presidential election, Election Day took place on November 3, 2020.

35.    Wisconsin law prescribes a multi-step process for determining which slate of electors has been selected in a presidential election.

36.    The votes cast by voters residing in each ward are counted and tallied at the ward. Wis. Stat. § 7.51.[11]

37.    The tallies are reported to the municipal clerk, who convenes the municipal board of canvass to canvass the results. Wis. Stat. § 7.53.

38.    The Clerk of each county then convenes the county board of canvass to canvass the election results from all municipalities within the county. Wis. Stat. §

39.    The County Clerk then transmits to the Wisconsin Elections Commission a certified statement containing those results. Wis. Stat. § 7.60(5)(a).

40.    The Chairperson of the Wisconsin Elections Commission is then required to prepare a statement certifying the election results and a certificate of determination indicating the names of the persons elected. Wis. Stat. § 7.70(3)(g).

41.    Following the state canvass, the Wisconsin Elections Commission staff prepare a certificate showing the determination of the results of the canvass and the names of the persons elected as presidential electors. Wis. Stat. § 7.70(5)(b).

42.    The Governor is then required to sign, affix the great seal of the state, and

---

[11] A small number of municipalities count all absentee ballots at a central count facility. *See* Wis. Stat. § 7.51(1).

11

transmit the certificate by registered mail to the U.S. administrator of general services.  *Id.*

43.    Federal law refers to this document as a certificate of ascertainment and requires that it be submitted to the Archivist of the United States. *See* 3 U.S.C. § 6.

44.    Federal law empowers each State to resolve any contests that may arise regarding which slate of presidential electors has been chosen by the State s voters. *See* 3 U.S.C. § 5.

45.    Wisconsin law prescribes a detailed set of procedures for resolving any contests that may arise regarding which slate of candidate electors was chosen by the State s voters. Specifically, Wisconsin law provides that the losing candidate in a presidential election may petition for a recount if that candidate trails the leading candidate by one percent of the vote or less. *See* Wis. Stat. § 9.01(1)(a)(1), (5).  Any candidate aggrieved by the recount can then appeal to circuit court, and any party aggrieved by an order of the circuit court can in turn appeal.  *See* Wis. Stat. § VSNSF EVFK This set of procedures  constitutes the exclusive judicial remedy for testing the right to hold an elective office as the result of an alleged irregularity, defect or mistake committed during the voting or canvassing process.   Wis. Stat. § 9.01(11).

46.    After each State s presidential electors have been chosen, the Constitution provides that those electors will meet in their respective States and cast their votes for President and Vice President. *See* U.S. Const. amend. XII.

47.    Federal law contemplates that  xe]ach State may, by law, provide for the filling of any vacancies which may occur in its college of electors when such college meets to give its electoral vote.   P U.S.C. § 4.

48.    Congress has specified that the meeting of the electors must take place in every State  on the first Monday after the second Wednesday in December next following their appointment at such place in each State as the legislature of such State shall direct.   P U.S.C.

12

§ 7.

49.     For the 2020 presidential election, the meeting of the electors took place on

December 14, 2020.

50.     Consistent with federal law, Wis. Stat. § 7.75 sets forth the requirements for

Wisconsin s lawfully elected presidential electors to participate in the meeting of the electors:

> (1) The electors for president and vice president shall meet at the state
> capitol following the presidential election at 12:00 noon the first
> Monday after the 2nd Wednesday in December.  If there is a vacancy
> in the office of an elector due to death, refusal to act, failure to attend
> or other cause, the electors present shall immediately proceed to fill by
> ballot, by a plurality of votes, the electoral college vacancy.  When all
> electors are present, or the vacancies filled, they shall perform their
> required duties under the constitution and laws of the United States.

> (2) The presidential electors, when convened, shall vote by ballot for that
> person for president and that person for vice president who are,
> respectively, the candidates of the political party which nominated
> them under s. 8.18 . . . .

51.     The U.S. Constitution provides that, during the meeting of the presidential

electors, the electors for each State shall make lists of their votes,   which lists they shall sign and

certify, and transmit sealed to the seat of the government of the United States, directed to the

President of the Senate.   U.S. Const. amend. XII.

52.     Federal law provides that the presidential electors, in addition to transmitting

certificates of their votes to the President of the Senate, shall also transmit certificates to the

secretaries of state for their respective States, the Archivist of the United States, and   the judge

of the district in which the electors shall have assembled.   P U.S.C. § 11.

53.     The U.S. Constitution specifies the procedures for counting the electoral votes.

The President of the Senate   shall, in the presence of the Senate and House of Representatives,

open all the certificates and the votes shall then be counted,   and  x]he person having the

greatest number of votes for President, shall be the President, if such number be a majority of the

13

whole number of Electors appointed.    U.S. Const. amend. XII.

54.    Congress has provided that the counting of the votes of the presidential electors must take place  on the sixth day of January succeeding every meeting of the electors.    P U.S.C. § 15.

55.    At the time of the counting of the votes of the presidential electors in the 2020 presidential election, Vice President Pence was the President of the Senate, *see* U.S. Const. art. I, § 3, cl. 4, and therefore was responsible for opening the certificates of the votes of the presidential electors so that those votes could be counted on January 6, 2021.

### Factual Allegations

#### *The 2020 Presidential Election*

56.    The 2020 presidential election took place on November 3, 2020.

57.    Prior to the election, the Democratic Party nominated Joseph R. Biden, Jr., as its candidate for President and Kamala D. Harris as its candidate for Vice President.  The Republican Party nominated Donald J. Trump as its candidate for President and Michael R. Pence as its candidate for Vice President.

58.    Also prior to the election, each party s candidates for the office of presidential elector were chosen in each State.

59.    In Wisconsin, each political party that qualified for ballot access met at the State Capitol on October 6, 2020, as contemplated by Wis. Stat. § 8.18, and nominated the individuals who would serve as presidential electors in the event that the party s candidates won the statewide popular vote for the offices of President and Vice President. *See* Exs. A  C.

60.    The Democratic Party of Wisconsin nominated the following individuals as its candidates for the office of presidential elector: Meg Andrietsch, Shelia Stubbs, Ronald Martin, Mandela Barnes, Khary Penebaker, Mary Arnold, Patty Schachtner, Shannon Holsey, Tony

Evers, and Benjamin Wikler. *See* Ex. B.

61.    Penebaker and Arnold are Plaintiffs in this case.

62.    The Republican Party of Wisconsin nominated the following individuals as its

candidates for the office of presidential elector: Andrew Hitt, Robert F. Spindell, Jr., Bill Feehan,

Kelly Ruh, Tom Schreibel, Carol Brunner, Edward Scott Grabins, Darryl Carlson, Pam Travis,

and Mary Buestrin. *See* Ex. C.

63.    Hitt, Spindell, Feehan, Ruh, Brunner, Grabins, Carlson, Travis, and Buestrin are

Defendants in this case.

64.    On November 3, 2020, nearly 3.3 million Wisconsin voters cast their ballots

more than in any presidential election in the State s history.[12]

65.    Based on a preliminary canvass by each county in the State, the Wisconsin

Elections Commission reported that Biden and Harris had received 1,630,673 votes, whereas

Trump and Pence had received 1,610,065 votes.[13]

66.    On November 18, 2020, pursuant to Wis. Stat. § 9.01(1), Trump and Pence

petitioned the Wisconsin Elections Commission for a partial recount.  The petition sought a

recount of the election results only in Dane and Milwaukee Counties.[14]

---

[12] *See* Wis. Elections Comm n, November 3, 2020 Election Data Report P QHCMNH available at
https://www.wispolitics.com/wp-content/uploads/2021/01/D.-November-2020-Election-Data-Report-Updated.pdf.

[13] *See County by County Report President of the United States (Under Recount)*, Wis. Elections
Comm n, available at https://elections.wi.gov/sites/elections/files/County%20by%20County%20Report%20President%20of%20the%20United%20States%20%28under%20recount%29.pdf (last
visited May 10, 2022).

[14] *See Trump Campaign Recount Petition*, Wis. Elections Comm n, available at https://elections
.wi.gov/sites/elections/files/2020-11/Trump%20Campaign%20Recount%20Petition.pdf (last
visited May 10, 2022).

67.    The partial recount concluded on November 30, 2020.  Based on the recount, the updated statewide vote totals showed that Biden and Harris had received 1,630,866 votes, whereas Trump and Pence had received 1,610,184 votes.[15]

68.    Also on November 30, 2020, after public notice and broadcast live on Wisconsin Eye, Ann S. Jacobs, the Chair of the Wisconsin Elections Commission, determined and certified, pursuant to Wis. Stat. § 7.70(3), that the Democratic candidates for the office of presidential elector had received the greatest number of votes cast in the general election, and that they were the duly elected presidential electors for the State of Wisconsin.  *See* Ex. D.

69.    Also on November 30, 2020, Wisconsin Governor Tony Evers executed a certificate of ascertainment, pursuant to Wis. Stat. § 7.70(5)(b), recognizing that the Democratic candidates for the office of presidential elector had received the greatest number of votes cast in the general election and were therefore the duly elected presidential electors for the State of Wisconsin.  *See* Ex. E.

70.    Trump and Pence subsequently sought judicial review of the results of the partial recount in the circuit courts for Dane and Milwaukee Counties, pursuant to Wis. Stat. § 9.01(6)(a).

71.    The Chief Justice of the Wisconsin Supreme Court consolidated the two actions and designated a single judge to preside over the consolidated case.  *See* Wis. Stat. § 9.01(6)(b).

72.    On Friday, December 11, 2020, the circuit court affirmed the results of the partial recount.  *See Trump v. Biden*, Nos. 2020CV2514 & 2020CV7092 (Milwaukee Cnty. Cir. Ct.

---

[15] *See County by County Report - President of the United States Post Recount*, Wis. Elections Comm n, available at https://elections.wi.gov/sites/elections/files/County%20by%20County%20Report%20-%20President%20of%20the%20United%20States%20post%20recount.pdf (last visited May 10, 2022).

2020).

73.     Trump and Pence immediately appealed to the Wisconsin Court of Appeals and filed an emergency petition for bypass to the Wisconsin Supreme Court, which granted the petition; ordered expedited, simultaneous briefing that evening; held oral argument on Saturday, December 12, 2020; and affirmed the judgment of the circuit court on the morning of Monday, December 14, 2020. *See Trump v. Biden*, 2020 WI 91, 394 Wis. 2d 629, 951 N.W.2d 568.

74.     At noon on December 14, 2020, the ten duly elected presidential electors for the State of Wisconsin, including Plaintiffs Penebaker and Arnold, convened at the State Capitol building, as prescribed by Wis. Stat. § 7.75 and 3 U.S.C. § 7, and publicly noticed in advance.

75.     In an open meeting broadcast live by Wisconsin Eye, Wisconsin s presidential electors called the roll to ensure all were present, elected a chairperson and a secretary, cast and counted the necessary ballots, and signed the necessary papers.

76.     After the meeting, they sent valid, official documents reflecting the lawful disposition of Wisconsin s ten electoral votes to the President of the United States Senate, the Wisconsin Secretary of State, the Archivist of the United States, and the Chief Judge of the United States District Court for the Western District of Wisconsin, as prescribed by 3 U.S.C. § 7. These documents included official copies of the certificate of the presidential electors  votes for Biden and Harris.[16]

77.     By these actions, the duly elected presidential electors followed the requirements of state and federal law, carried out the will of Wisconsin s electorate, and advanced American democracy.

---

[16] A copy of the certificate of votes is attached as Exhibit F.

### *The Scheme to Overturn the Election*

78.     While Plaintiffs Penebaker and Arnold and the other duly elected presidential

electors were preparing for their meeting on December 14, 2020, Trump and his allies were

developing a scheme to overturn the results of the presidential election.[17]

79.     Pursuant to this scheme, Trump s team sought to ensure that, in select swing

States, losing Republican candidates for the office of presidential elector would falsely assume

that office and purport to cast their States  electoral votes for Trump and Pence on December 14,

2020.[18]

80.     Once these fraudulent votes were cast, Trump and his allies would pressure Pence

to count them on January 6, 2021, and to reject the votes of the duly elected presidential electors

from each State.[19]

81.     The schemers believed that, if Pence were to count the fraudulent electoral votes

from each swing State, rather than the votes cast by the States  duly elected presidential electors,

Trump would win the Electoral College and be inaugurated.

82.     Trump s allies began discussing this scheme in the days immediately following

the election.

83.     On November 4, 2020, while the outcome of the election was still uncertain,

former Secretary of Energy Rick Perry texted then-White House Chief of Staff Mark Meadows

to suggest that Republican-controlled state legislatures should  just send their own electors to

---

[17] *See* Feuer, Haberman & Broadwater, *supra* n.4.

[18] *See id.*

[19] *See id.*; Nick Niedzwiadek & Kyle Cheney, *Trump Pressures Pence to Throw Out Election Results  Even Though He Can t*, Politico (Jan. 5, 2021), available at https://www.politico.com/news/2021/01/05/trump-pressures-pence-election-results-455069.

vote and have it go to the SCOTUS. [20]

84.     The next day, one of Trump s sons, Donald Trump, Jr., texted Meadows with a similar idea: have Republican-controlled state legislatures  step in  and advance slates of  Trump electors,  notwithstanding the results of the popular vote.[21]

85.     This plan  to override the will of the people with slates of fraudulent electors was as legally baseless as it was repugnant to democracy.  Trump s team nevertheless chose to pursue the plan as it became clear that Trump had no legitimate path to victory.

86.     According to public reporting, the scheme was orchestrated by Trump campaign officials, under the leadership of Trump s then personal attorney, Rudy Giuliani.[22]  Giuliani and his allies coordinated the nuts-and-bolts of the process on a state-by-state level,  and  there were multiple planning calls between Trump campaign officials and GOP state operatives. [23]

87.     Indeed, according to one fraudulent elector from Michigan,  the Trump campaign directed the entire operation. [24]  For example,  the Trump campaign lined up supporters to fill elector slots, secured meeting rooms in statehouses for the fake electors to meet on December 14, 2020, and circulated drafts of fake certificates that were ultimately sent to the National

---

[20] *See* Ryan Nobles, Zachary Cohen & Annie Grayer, *CNN Exclusive:  We Control Them All  W Donald Trump Jr. Texted Meadows Ideas for Overturning 2020 Election Before It Was Called*, CNN (Apr. 9, 2022), available at https://www.cnn.com/2022/04/08/politics/donald-trump-jr-meadows-text/index.html.

[21] *See id.*

[22] *See* Marshall Cohen, Zachary Cohen & Dan Merica, *Trump Campaign Officials, Led by Rudy Giuliani, Oversaw Fake Electors Plot in 7 States*, CNN (Jan. 20, 2022), available at https://www.cnn.com/2022/01/20/politics/trump-campaign-officials-rudy-giuliani-fake-electors/index.html.

[23] *Id.*

[24] *Id.*

Archives. [25]

88.     In Wisconsin, the scheme was executed by Defendants.  On November 18, OMOM  the same day that Trump and Pence filed their petition for a partial recount  Defendant Chesebro sent a memorandum to Defendant Troupis, a lawyer for the Trump campaign in Wisconsin.[26]

89.     In his memorandum, titled  The Real Deadline for Settling a State s Electoral Votes,  Defendant Chesebro argued that:  Assuming the electors pledged to Trump and Pence end up meeting at the Wisconsin Capitol on December 14, 2020, to cast their votes, and then send their votes to the President of the Senate in time to be opened on January 6, 2021, a court decision (or, perhaps, a state legislative determination) rendered after December 14, 2020, in favor of the Trump-Pence slate of electors should be considered timely. [27]

90.     In other words, Defendant Chesebro argued that, by meeting on December 14, 2020, and falsely assuming the functions of the office of presidential elector for the State of Wisconsin, the losing candidates for that office (nine of whom are Defendants here) could lay the foundation for an attempt to overturn the election results on January 6, 2021.

91.     Defendant Chesebro wrote again to Defendant Troupis on December 9, 2020, over a week after the Wisconsin Elections Commission had finished its partial recount, and after the Chair of the Wisconsin Elections Commission and the Governor had certified that the Democratic candidates for the office of presidential elector were the duly elected presidential

---

[25] *Id.*

[26] *See* Memorandum from Kenneth Chesebro to James R. Troupis (Nov. 18, 2020), available at https://int.nyt.com/data/documenttools/trump-electors-memo-november/6dfa71755c7d0879/full.pdf.

[27] *Id.* at 1.

electors for the State of Wisconsin.[28]

92.    In his second memorandum, titled  Statutory Requirements for December 14

Electoral Votes,  Defendant Chesebro acknowledged that none of the Republican candidates for

the office of presidential elector in the targeted swing States were *currently* certified as having

been elected by the voters of their State,  but he nevertheless argued that  most of the electors

. . . will be able to take the essential steps needed to validly cast and transmit their votes, so that

the votes might be eligible to be counted if later recognized (by a court, the state legislature, or

Congress) as the valid ones that actually count in the presidential election. [29]

93.    Contrary to Defendant Chesebro s assertion, the losing Republican candidates for

the office of presidential elector could not  take the essential steps needed to validly cast and

transmit their votes,  because they were not elected to the office of presidential elector by

Wisconsin voters.

94.    Furthermore, Defendant Chesebro s suggestion that not only  a court,  but also

 the state legislature, or Congress  could recognize the losing Republican candidates for the

office of presidential elector as duly elected presidential electors is contrary to state and federal

law.

95.    Under the U.S. Constitution, presidential electors are appointed in the manner

prescribed by state law. *See* U.S. Const. Art. II, § 1, cl. 2.

96.    And under Wisconsin law, presidential electors are chosen by popular vote, with

any election contests resolved exclusively by the Wisconsin Elections Commission and the state

---

[28] *See* Memorandum from Kenneth Chesebro to James R. Troupis (Dec. 9, 2020), available at
https://int.nyt.com/data/documenttools/trump-electors-memo-december/eb149df1a68cc512/
full.pdf.

[29] *Id.* at 1.

courts. *See* Wis Stat. §§ 5.10, 9.01.

97.    There is no legal mechanism for other institutional actors to install their preferred slate of presidential electors.

98.    In his second memorandum, Defendant Chesebro recommended a detailed set of steps to be taken in the targeted swing States by losing Republican candidates for the office of presidential elector. These included: meeting on December 14, 2020, in the same location that state law prescribed for the meeting of the duly elected presidential electors; filling any vacancies created by losing Republican candidates for the office of presidential elector who were unable or unwilling to participate in the scheme; casting votes for Trump for President and Pence for Vice President; preparing and signing certificates of those votes; and transmitting those certificates to the President of the Senate, the state Secretary of State, the National Archives, and the local federal district court.[30]

99.    As described below, the Wisconsin fraudulent electors took each of these steps.

100.    They did so because they intended for their purported votes to be counted, even though they knew they were not the lawfully elected presidential electors for the State of Wisconsin.

### *The Meeting of the Fraudulent Electors*

101.    On December 14, at around the same time that the duly elected presidential electors were convening at the Wisconsin State Capitol, a separate group of individuals gathered elsewhere in the building. This group included Defendants Hitt, Spindell, Feehan, Ruh, Brunner, Grabins, Kiernan, Carlson, Travis, and Buestrin (referred to hereinafter as the Fraudulent Elector Defendants )

---

[30] *Id.* at O PK

102. Earlier in the day, the Fraudulent Elector Defendants had assembled at a secret meeting place with armed security. [31]

103. Notwithstanding that pandemic-related restrictions had closed the State Capitol to the public, the Fraudulent Elector Defendants successfully arranged to be admitted to the building, and they were able to secure a room there for their meeting.[32]

104. An open records request initiated by Wisconsin State Senator Chris Larson indicates that then-Wisconsin State Senate Majority Leader Scott Fitzgerald reserved a room for the Fraudulent Elector Defendants to hold their meeting.[33]

105. The Fraudulent Elector Defendants use of State Capitol facilities required the allocation of resources from the Wisconsin Department of Administration, which is funded by Wisconsin taxpayers.

106. All Wisconsin taxpayers, including Plaintiffs, were harmed by this unlawful use of public resources.

107. At the time of their meeting, the Fraudulent Elector Defendants were not duly elected presidential electors for the State of Wisconsin. Instead, all but Kiernan were nominated by the Republican Party of Wisconsin on October 6 as candidates for the office of presidential elector. Kiernan was not nominated by any party as a candidate for the office of presidential elector.

---

[31] Fact Check with Bill Feehan, *The Electoral College*, at MQWR MQWO (Jan. 13, 2021), available at https://omny.fm/shows/fact-check-with-bill-feehan/the-electoral-college.

[32] *Id.* at MQWP MQWSK

[33] *See* Press Release, State Sen. Chris Larson, Open Records Regarding Wisconsin s Fake Electors Suggest Congressman Scott Fitzgerald Played Significant Role in Trying to Overturn a Free and Fair Election (Jan. 25, 2022), available at https://legis.wisconsin.gov/senate/07/Larson/media/2056/1-25-22-fitzgerald-electors-pr.pdf.

108. Because the Fraudulent Elector Defendants were not duly elected presidential electors, they had no legal authority to meet at the State Capitol on December 14 nor to purport to act as the duly elected presidential electors for the State of Wisconsin, undertaking duties assigned by law to others.

109. Furthermore, the Fraudulent Elector Defendants learned during their meeting that the Wisconsin Supreme Court had affirmed the results of the partial recount sought by Trump and Pence.[34]

110. They thereby learned that the process Wisconsin law expressly identifies as the exclusive mechanism for challenging the outcome of a presidential election in Wisconsin had been exhausted.

111. The Fraudulent Elector Defendants nevertheless conducted their meeting, at which they purported to exercise the powers assigned by law to the duly elected presidential electors for the State of Wisconsin.

112. First, the Fraudulent Elector Defendants purported to fill a vacancy created by the absence of Tom Schreibel, who had been nominated by the Republican Party of Wisconsin on October 6, 2020, as a candidate for the office of presidential elector.

113. Schreibel did not join the Fraudulent Elector Defendants' meeting at the State Capitol.

114. In purporting to fill his vacancy, Defendants Hitt and Ruh executed a document titled "Certificate of Filling Vacancy of the 2020 Electors from Wisconsin," in which they certified that Defendant Kiernan "[w]as elected by the Electors present, as an Elector of

---

[34] Fact Check with Bill Feehan, *supra* n. 31, at МТWQ МЈWTK.

24

President and Vice President of the United States of America for the State of Wisconsin to fill

the vacancy in the manner provided by law.   Ex. G at 2.[35]

115.    Federal and state law authorize only duly elected presidential electors to fill

vacancies in the office of presidential elector. *See* 3 U.S.C. § 4; Wis. Stat. § 7.75(1).

116.    Because the Fraudulent Elector Defendants were not duly elected presidential

electors, they had no authority to fill any vacancies in the office of presidential elector.

117.    Upon information and belief, the Fraudulent Elector Defendants knew that they

were not duly elected presidential electors, and that they therefore had no authority to fill any

vacancies in the office of presidential elector.

118.    After purporting to fill the vacancy created by Schreibel s absence, the Fraudulent

Elector Defendants executed a document titled   Certificate of the Votes of the 2020 Electors

from Wisconsin.   Ex. G at P QK

119.    In this document, the Fraudulent Elector Defendants purported to designate

Defendants Hitt and Ruh as their Chairperson and Secretary, respectively, and they falsely

represented that they were   the duly elected and qualified Electors for President and Vice

President of the United States of America from the State of Wisconsin.   *Id.* at 3.

120.    In the same document, the Fraudulent Elector Defendants falsely certified that

they had met at the State Capitol  to perform the duties enjoined upon  them, and that they had

cast Wisconsin s ten electoral votes for Trump and Pence. *Id.*

121.    The document was then transmitted   with a cover memorandum from Defendant

Hitt titled   Wisconsin s Electoral Votes for President and Vice President     to the President of

---

[35] The document spells Defendant Kiernan s last name as   Kiernen,  but this appears to be a
typographical error.

the United States Senate, the Archivist of the United States, the Wisconsin Secretary of State, and the Chief Judge of the United States District Court for the Western District of Wisconsin. *Id.* at 1.

122.    Defendant Hitt s cover memorandum falsely represented that it accompanied duplicate originals of Wisconsin s electoral votes for President and Vice President.    *Id.*

123.    Because the Fraudulent Elector Defendants were not duly elected presidential electors, they had no authority to represent that they were duly elected presidential electors, purport to cast Wisconsin s electoral votes for President and Vice President, or transmit those votes under false pretenses.

124.    Upon information and belief, the Fraudulent Elector Defendants knew that they had no authority to represent that they were duly elected presidential electors, purport to cast Wisconsin s electoral votes for President and Vice President, or transmit those votes under false pretenses.

125.    The Fraudulent Elector Defendants nevertheless falsely assumed the functions of the office of presidential elector for the State of Wisconsin.

126.    They did so because they intended for their fraudulent votes, rather than the legitimate votes of Plaintiffs Penebaker and Arnold and the other duly elected presidential electors, to be counted on January 6, 2021.

### *The Aftermath of Defendants Actions*

127.    With fake votes in hand from the Fraudulent Elector Defendants and their counterparts in other swing States, Trump and his allies began exerting pressure on Pence and preparing for January 6, 2021.[36]

---

[36] *See* Feuer, Haberman & Broadwater, *supra* n.4.

128.   One aspect of this pressure campaign was the filing of frivolous legal challenges intended to cast doubt on the legitimacy of the election results in the targeted swing States.

129.   By calling these results into question, Trump sought to provide Pence with an excuse to disregard the votes of each swing State s duly elected presidential electors.

130.   Several of these challenges targeted Wisconsin. Their stated goal was to overturn the results of the election in the State and decertify the slate of duly elected presidential electors, including Plaintiffs Penebaker and Arnold.[37]

_____

[37] For example, Defendant Feehan filed a petition for a writ of mandamus with the United States Supreme Court, in which he sought  to decertify the election of the Biden slate of electors from Wisconsin; or at a minimum to declare the certified result unconstitutional.   Emergency Petition Under Rule 20 for Extraordinary Writ of Mandamus at 10, *In re* William Feehan, No. 20-859 (U.S. Dec. 15, 2020). In the petition, filed on his behalf by disgraced attorney Sidney Powell, Feehan made the fantastical assertion that **hundreds of thousands if not millions of illegal, fraudulent, ineligible or purely fictitious ballots were cast for Biden (along with hundreds of thousands of Trump votes that were intentionally destroyed, lost or switched to Biden) and this massive fraud changed the outcome from a Biden loss to Biden  win.**   *Id.* at 2 (emphasis in original).

Feehan s petition was one of several materially similar filings made by Powell and her team on behalf of fraudulent electors who sought to overturn the presidential election results in different swing States. *See* Letter from Howard Kleinhendler, Att y for Petitioner, to Scott Harris, Clerk, Supreme Court of the U.S. (Dec. 30, 2020), https://www.supremecourt.gov/Docket PDF/20/20-859/165028/20201230144904572_Letter%20to%20Clerk%20Harris.pdf (letter from Powell s co-counsel  requesting consolidation and expedited consideration of four related cases, *King v. Whitmer* ￭MꞀRFEThe Michigan Case F￭*In re Pearson* ￭MꞀSFEThe Georgia Case F￭ *In re Bowyer* ￭MꞀRLFEThe Arizona Case ￭F￭ and *In re Feehan* ￭MꞀRꞀFEThe Wisconsin Case F￭ and explaining that  ￭e]ach of the cases was brought by Republican presidential electors (from Michigan, Georgia, Arizona, and Wisconsin, respectively) who cast votes on December 14, 2020, for President Trump with the intention of those Trump votes being counted in the Joint Session of Congress scheduled for January 6, ꞀMꞀN F￭.

Powell and her team were sanctioned in connection with the Michigan case for engaging in  a historic and profound abuse of the judicial process, *King v. Whitmer*, 556 F. Supp. 3d 680, 688 (E.D. Mich. 2021), and they were referred to disciplinary authorities  for investigation and possible suspension or disbarment, *id.* at 734. A sanctions motion against Defendant Feehan and his lawyers, including Powell and Kleinhendler, remains pending in the U.S. District Court for the Eastern District of Wisconsin. *See Feehan v. Wis. Elections Comm n*, No. 20-cv-1771-pp (E.D. Wis. Mar. 31, 2021), ECF No. 97.

131.    Had the slate been decertified, Trump and his allies would have argued that the Fraudulent Elector Defendants were in fact the duly elected presidential electors from Wisconsin, and that the votes they had purported to cast on December 14, 2020, should be counted on January 6, 2021.

132.    Indeed, Trump and his allies planned to argue that the Fraudulent Elector Defendants purported votes should be counted on January 6, 2021, regardless of how their legal challenges fared.

133.    As explained above, Defendant Chesebro s memoranda suggested    contrary to federal and state law    that not only a court, but also the state legislature, or Congress could recognize the Fraudulent Elector Defendants as duly elected presidential electors.

134.    By casting doubt on the legitimacy of the presidential election, Trump and his allies hoped to persuade state legislators, members of Congress, and Pence that any or all of them should unlawfully override the election results in Wisconsin and other swing States.

135.    Numerous members of Congress endorsed this strategy. Among them was Representative Scott Fitzgerald, newly sworn in to Congress. As noted above, *see supra* ¶104, Fitzgerald had, in his previous role as Wisconsin State Senate Majority Leader, helped ensure that the Fraudulent Elector Defendants would have a room to meet in the Wisconsin State Capitol on December 14, 2020.

136.    On January 2, 2021, a group of 11 United States senators and senators-elect issued a statement in which they pledged to object, on January 6, 2021, to the counting of votes

from electors from  disputed states, [38] including Wisconsin.

137.    The senators were joined by approximately 140 members of the House of

Representatives, who indicated that they also planned to object to the counting of votes cast by

duly elected presidential electors.[39]

138.    In their joint statement, the senators claimed that  the 2020 election featured

unprecedented allegations of voter fraud, violations and lax enforcement of election law, and

other voting irregularities,  and they  called on Congress to appoint an Electoral Commission to

conduct an emergency 10-day audit of the election returns in the disputed states. [40]

139.    In fact, according to security officials who studied the matter across the country

including the Trump Administration s own top cybersecurity expert   the 2020 presidential

election was the  most secure in American history. [41]

140.    Wisconsin election officials identified only 27 potential cases of voter fraud

---

[38] Bill Glauber, *U.S. Sen. Ron Johnson from Wisconsin to Join 10 Others from GOP in Refusing to Certify Electoral College Results*, Milwaukee J. Sentinel (Jan. 2, 2021), available at https://www.jsonline.com/story/news/politics/elections/2021/01/02/ron-johnson-oppose-certifying-joe-bidens-electoral-college-win/4113042001/. Ron Johnson, the senior United States senator from Wisconsin, was one of the objectors, and was in fact the only objecting senator from a State that voted for Biden. *Id.*

[39] *See* Burgess Everett, *At Least 12 GOP Senators to Challenge Biden s Win*, Politico (Jan. 2, 2021), available at https://www.politico.com/news/2021/01/02/ted-cruz-electoral-college-challenge-453430.

[40] Glauber, *supra* n.38 (internal quotation marks omitted).

[41] *See* Stefan Becket, Melissa Quinn, Grace Segers & Caroline Linton, *2020 Election  Most Secure in History,  Security Officials Say*, CBS News (Nov. 13, 2020), available at https://www.cbsnews.com/live-updates/2020-election-most-secure-history-dhs/; Zach Budryk, *Krebs Doubles Down After Threat: OAOMElection Was Most Secure in US History,* Hill (Dec. 2, 2020), available at https://thehill.com/policy/cybersecurity/528323-krebs-doubles-down-after-threat-2020-election-was-most-secure-in-us/.

among nearly 3.3 million votes cast    less than one-thousandth of one percent.[42]

141.    Trump and his allies nevertheless pressed Pence to disregard the votes of the lawfully elected presidential electors from each of the targeted swing States, including Wisconsin, and to count instead the votes of the fraudulent electors, including the Fraudulent Elector Defendants, who had purported to cast those votes on December 14, 2020.[43]

142.    The pressure culminated on January 6, 2021.

143.    Ahead of the joint session of Congress, Pence proactively altered the script that prior Vice Presidents had used when overseeing the counting of electoral votes.[44]

144.    His alterations made clear that the certificate of electoral votes he would introduce from each State was   the only certificate of vote from that state, and purports to be a return from the state, and that has annexed to it a certificate from an authority of that state purporting to appoint or ascertain electors. [45]

145.    As Pence s chief of staff later explained,   the added words were designed to clearly address Pence s views of Trump allies  push for false slates of presidential electors. [46]

---

[42] *See* Scott Bauer, *27 Possible Voter Fraud Cases in 3 Million Wisconsin Ballots*, AP News (May 21, 2021), available at https://apnews.com/article/donald-trump-wisconsin-election-2020-government-and-politics-daa3ac227c936d7fc038996af6e27cbe.

[43] *See* Barry & Frenkel, *supra* n.2.  Trump also placed pressure on Pence personally, telling him that  it would be politically  damaging  for Pence to refuse to block certification.   Kaitlan Collins & Jim Acosta, *Pence Informed Trump That He Can t Block Biden s Win*, CNN (Jan. 5, 2021), available at https://www.cnn.com/2021/01/05/politics/mike-pence-donald-trump-congress-election/index.html.

[44] *See* Kyle Cheney, *How Pence Used 43 Words to Shut Down Trump Allies  Election Subversion on Jan. 6*, Politico (Mar. 11, 2022), available at https://www.politico.com/news/2022/03/11/pence-jan-6-election-certification-script-00016539.

[45] *Id.*

[46] *Id.*

146.    Trump and his allies nevertheless made a final push for Pence to count the purported votes of the fraudulent electors.

147.    At noon on January 6, 2021, Trump began speaking at a rally near the White House.[47]

148.    He told his supporters: We will never give up, we will never concede. [48]

149.    And he called on Pence to reject the votes of lawfully elected presidential electors, warning: Mike Pence, I hope you re going to stand up for the good of our Constitution and for the good of our country. And if you re not, I m going to be very disappointed in you. [49]

150.    Finally, Trump told those at the rally to walk down to the Capitol and demand that Congress do the right thing and only count the electors who have been lawfully slated. [50]

151.    Less than an hour later, the attack on the Capitol began.[51]

### The Future of Democracy in Wisconsin

152.    Fortunately, notwithstanding the events of January 6, 2021, the votes of the duly elected presidential electors in Wisconsin and other swing States were ultimately counted, the presidential election results were properly certified, and America s tradition of democratic

---

[47] Kat Lonsdorf, Courtney Dorning, Amy Isackson, Mary Louise Kelly & Ailsa Chang, *A Timeline of How the Jan. 6 Attack Unfolded Including Who Said What and When*, NPR (Jan. 5, 2022), available at https://www.npr.org/2022/01/05/1069977469/a-timeline-of-how-the-jan-6-attack-unfolded-including-who-said-what-and-when.

[48] *Transcript of Trump s Speech at Rally Before US Capitol Riot, supra* n.3.

[49] *Id.*

[50] *Id.*

[51] Lonsdorf et al., *supra* n.47.

31

transition of power continued.[52]

153.    The scheme to overturn the election nevertheless caused permanent and irreparable damage to the country s political institutions generally, and to representative government in Wisconsin specifically.

154.    By spreading false allegations of widespread fraud, the scheme undermined   and continues to undermine   Wisconsin voters  faith in the integrity of their elections, and citizens belief in the legitimacy of their government s authority.[53]

155.    Furthermore, the scheme disrupted longstanding norms regarding adherence to the outcomes of elections and the peaceful transition of power, both of which are bedrock pillars of a functioning democracy.

156.    Defendants  actions were fundamental to the scheme.

157.    By falsely assuming the office of presidential elector and purporting to cast Wisconsin s electoral votes for Trump and Pence   and by conspiring in, aiding, and abetting this effort   Defendants helped lay the foundation for Trump and his allies to argue that the State s election results should be decertified, and that the votes of its lawfully elected presidential electors, including Plaintiffs Penebaker and Arnold, should be disregarded.

_____

[52] Stunningly, even after the attack had finished, nearly 150 lawmakers objected to the certification of the election results. *See* Li Zhou, *147 Republican Lawmakers Still Objected to the Election Results After the Capitol Attack*, Vox (Jan. 7, 2021), available at https://www.vox.com/2021/1/6/22218058/republicans-objections-election-results.

[53] *See* Charles Franklin, *New Survey by Marquette Law School Poll Finds Wisconsin Democratic Primary for U.S. Senate Tightening, Kleefisch Leading Republican Gubernatorial Primary; Among Republicans, Those Least Confident in 2020 Election Are More Enthusiastic to Vote This Fall*, Marq. Univ. L. Sch. (Apr. 27, 2022), available at https://law.marquette.edu/poll/2022/04/27/new-survey-by-marquette-law-school-poll-finds-wisconsin-democratic-primary-for-u-s-senate-tightening-kleefisch-leading-republican-gubernatorial-primary-among-republicans-those-least-confident-in-2/ (finding that a majority of Wisconsin Republicans are not confident in the accuracy of the 2020 election).

158.    Defendants actions were a necessary predicate for each component of the scheme, including the pressure campaign leading up to and including the events of January 6, 2021.

159.    Upon information and belief, Defendants knew that their actions were part of a broader scheme to overturn the election.

160.    The damage that Defendants inflicted on Wisconsin s democracy is still palpable today.

161.    Mere months after the attack on the United States Capitol, and in response to the urging of Trump, Wisconsin Assembly Speaker Robin Vos announced his appointment of former Wisconsin Supreme Court Justice Michael Gableman to oversee an investigation of the 2020 presidential election.[54]

162.    The announcement came one day after Vos and other Republican leaders in Wisconsin were criticized by Trump for working hard to cover up election corruption and actively trying to prevent a Forensic Audit of the election results. [55]

163.    At the time of his appointment, Gableman had already publicly accused the Wisconsin Elections Commission of steal[ing] our vote during the 2020 presidential election.[56]

164.    Gableman proceeded to open a wide-ranging probe in which he served scores of

---

[54] Shawn Johnson, *Following Warning by Trump, Vos Announces Former Justice Will Lead Assembly GOP Election Probe*, Wis. Pub. Radio (June 26, 2021), available at https://www.wpr.org/following-warning-trump-vos-announces-former-justice-will-lead-assembly-gop-election-probe.

[55] *Id.* (internal quotation marks omitted).

[56] Patrick Marley, *Michael Gableman Said Bureaucrats Stole Our Votes Before He Was Put in Charge of Reviewing 2020 Election*, Milwaukee J. Sentinel (Aug. 9, 2021), available at https://www.jsonline.com/story/news/politics/2021/08/09/michael-gableman-said-election-stolen-before-put-charge-wisconsin-review/5518815001/.

33

legislative subpoenas upon public and private entities.[57] For example, Gableman targeted the voting machine companies Dominion Voting Systems and Electronic Systems & Software,[58] demanded communications and financial information from nonprofit community organization Voces de la Frontera Action,[59] and sought information from the mayors of Madison and Green Bay, whom he has subsequently attempted to have jailed.[60]

165.    On March 1, 2022, Gableman delivered his second interim report to the Wisconsin State Assembly, in which he made unsubstantiated allegations that various laws had been violated during the administration of the 2020 presidential election.[61]

166.    Gableman also told Assembly members that they  ought to take a very hard look at decertifying the results of the 2020 presidential election,[62] and he laid out a roadmap in his report for how he believed decertification could take place.[63]

---

[57] Shawn Johnson, *Vos Expects Gableman Election Report by End of February*, Wis. Pub. Radio (Feb. 18, 2022), available at https://www.wpr.org/vos-expects-gableman-election-report-end-february.

[58] *Id.*

[59] Molly Beck, *Michael Gableman Withdraws Election Investigation Subpoena to Immigrant Rights Group Voces de la Frontera*, Milwaukee J. Sentinel (Feb. 16, 2022), available at https://www.jsonline.com/story/news/politics/2022/02/16/michael-gableman-withdraws-subpoena-immigrant-rights-group-voces/6816480001/.

[60] *Gableman Wants to Jail Mayors Again in Elections Probe*, AP News (Feb. 19, 2022), available at https://apnews.com/article/elections-wisconsin-milwaukee-madison-green-bay-d6cb12810b57a17d839c0e0498eee548.

[61] Shawn Johnson, *Gableman Report Calls for Decertifying 2020 Election.  The Legislature s Nonpartisan Lawyers Say That s Not Possible.*, Wis. Pub. Radio (Mar. 1, 2022), available at https://www.wpr.org/gableman-report-calls-decertifying-2020-election-legislatures-nonpartisan-lawyers-say-thats-not.

[62] *Id.*

[63] Off. of Special Couns., Second Interim Investigative Report NPN PS (Mar. 1, 2022), available at https://www.wpr.org/sites/default/files/osc-second-interim-report.pdf.

167.    Gableman wrote in his report that it is clear that the Wisconsin Legislature . . . could decertify the certified electors in the 2020 presidential election. [64] And he detailed a set of steps that he believed would lead to decertifying the relevant electors, if the Legislature concluded that they were not the slate of electors that best accorded with the election if run consistent with all relevant Wisconsin laws in effect on election day. [65]

168.    Contrary to Gableman s report, state legislatures do not have the power to decertify presidential electors after an election has taken place.

169.    Indeed, the Assembly s nonpartisan attorneys had already confirmed that [t]here is no mechanism in state or federal law for the Legislature to reverse certified votes cast by the Electoral College and counted by Congress. [66]

170.    Even Gableman s own hired litigation counsel subsequently testified to the Assembly that decertification is not possible.[67]

171.    The idea of decertifying the 2020 presidential electors has nevertheless taken hold among a growing number of politicians, and it is quickly becoming a flash point in Wisconsin.

172.    For example, State Representative Timothy Ramthun, who is now running for governor of Wisconsin, has been an active proponent of decertification, and he has repeatedly

---

[64] *Id.* at NPR PSK

[65] *Id.* at 136.

[66] Memorandum from Katie Bender-Olson, Senior Staff Att y, and Peggy Hurley, Staff Att y, Wis. Legis. Council, to Senator Kathy Bernier 1 (Nov. 1, 2021), available at http://thewheeler report.com/wheeler_docs/files/110121bernierlegcouncil_01.pdf.

[67] Molly Beck, *Michael Gableman Has Promoted Decertifying Wisconsin s 2020 Election. His Own Attorney Says It s Impossible and Pointless*, Milwaukee J. Sentinel (Mar. 24, 2022), available at https://www.jsonline.com/story/news/politics/elections/2022/03/24/michael-gable mans-attorney-james-bopp-says-decertifying-wisconsin-election-is-impossible/7154995001/.

clashed with Assembly Speaker Vos on the issue.[68]

173.    An attorney who has gained notoriety advocating for decertification is also running for Attorney General of Wisconsin.[69]

174.    Trump has also weighed in, praising Gableman s report and endorsing the Decertification of Electors. [70]

175.    These calls for decertification are well on their way to reaching the mainstream,[71] and they will only grow louder as the next presidential election approaches.  So too will support for the contention   incorrect as a matter of law   that state legislatures have plenary power to choose presidential electors, regardless of the outcome of the popular vote.

176.    As the decertification movement gains momentum, there is a significant probability that the Fraudulent Elector Defendants will be called upon again to falsely assume the office of presidential elector.

177.    Indeed, an underlying assumption of the movement seems to be that the Fraudulent Elector Defendants are in fact the duly elected presidential electors for the State of Wisconsin.

178.    Despite the grave risks that the decertification movement poses to democracy in

---

[68] Marcus Aarsvold, *Wisconsin Republicans Debate 2020 Presidential Election Decertification*, WMTV (Mar. 16, 2022), available at https://www.nbc15.com/2022/03/16/wisconsin-republicans-debate-2020-presidential-election-decertification/.

[69] Todd Richmond, *COVID, Election Conspiracy Theorist Enters Wisconsin AG Race*, AP News (Mar. 31, 2022), available at https://apnews.com/article/2022-midterm-elections-biden-covid-health-presidential-elections-ab1e8e5b58a31c619405152ffc38d3f0.

[70] David Weigel, *The Trailer: Decertify the 2020 Election?  In Wisconsin, It May Be on the Ballot*, Wash. Post (Mar. 15, 2022), available at https://www.washingtonpost.com/politics/2022/03/15/trailer-decertify-2020-election-wisconsin-it-may-be-ballot/.

[71] *See* Franklin, *supra* n.53 (finding that more than one-third of Wisconsin Republicans believe the 2020 presidential election should be decertified).

Wisconsin, the Fraudulent Elector Defendants have disavowed neither their false assumption of the office of presidential elector nor the actions that they took following the 2020 presidential election.

179.    The Fraudulent Elector Defendants have not attempted to rescind the  Certificate of the Votes of the 2020 Electors from Wisconsin  that they executed and transmitted under false pretenses, and they have not attempted to correct the numerous false statements contained therein.

180.    Nor have any Defendants acknowledged that what they did was wrong, let alone unlawful, or recognized the serious consequences of their misconduct following the election.

181.    To the contrary, Defendants have publicly stated that there was nothing objectionable about their conduct following the 2020 presidential election.[72]

182.    To ensure that the damage caused by Defendants  actions is remedied to the greatest extent possible, and to prevent such harms from recurring in the future, Plaintiffs bring the following claims.

## CLAIMS

### COUNT ONE
### (Civil Conspiracy Against All Defendants)

183.    Plaintiffs restate and re-allege paragraphs 1 through 182 above as if fully set forth herein.

184.    As described above, the Fraudulent Elector Defendants met at the Wisconsin State

---

[72] *See, e.g.*, Wis. Elections Comm n, *November Special Teleconference Meeting*, at MNWM MNWR (Nov. 3, 2021), available at https://elections.wi.gov/node/7556 (statement of Defendant Spindell, describing his actions following the 2020 presidential election as  solely performing only ministerial acts as one of the electors for the Republican Party of Wisconsin and for the Trump campaign  FK

Capitol on December 14, 2020. While there, they purported to exercise the powers reserved for

the duly elected presidential electors for the State of Wisconsin. In particular, the Fraudulent

Elector Defendants:

      a.   purported to fill a nonexistent vacancy in the office of presidential elector;

      b.   executed a document titled Certificate of the Votes of the 2020 Electors from

           Wisconsin, which falsely represented that the Fraudulent Elector Defendants

           were the duly elected and qualified Electors for President and Vice President

           of the United States of America from the State of Wisconsin X

      c.   falsely certified that the Fraudulent Elector Defendants had met at the State

           Capitol to perform the duties enjoined upon them, and that they had cast

           Wisconsin s ten electoral votes for Donald J. Trump and Michael R. Pence;

           and

      d.   transmitted, via memorandum executed by Defendant Hitt, the document

           titled Certificate of the Votes of the 2020 Electors from Wisconsin to the

           President of the United States Senate, the Archivist of the United States, the

           Wisconsin Secretary of State, and the Chief Judge of the United States District

           Court for the Western District of Wisconsin.

     185.   The Fraudulent Elector Defendants were not, and knew then that they were not,

the duly elected presidential electors for the State of Wisconsin.

     186.   And the Fraudulent Elector Defendants were not, and knew then that they were

not, authorized to exercise the powers assigned by law to the duly elected presidential electors

for the State of Wisconsin.

     187.   The Fraudulent Elector Defendants nevertheless purported to exercise the powers

assigned by law to the duly elected presidential electors for the State of Wisconsin.

188.    The Fraudulent Elector Defendants did so because they intended for their purported votes to be counted by Congress, even though they knew then that they were not the lawfully elected presidential electors for the State of Wisconsin.

189.    Through their actions, the Fraudulent Elector Defendants violated a number of civil and criminal laws.  So too did Defendants Chesebro and Troupis, who, upon information and belief, conspired with, aided, and abetted the Fraudulent Elector Defendants.

<u>Wisconsin Stat. §§ 5.10 and 7.75</u>

190.    Wisconsin Stat. § 5.10 specifies that Wisconsin s presidential electors are chosen by the statewide vote for the offices of President and Vice President.

191.    Wisconsin Stat. § 7.75 sets forth the requirements for Wisconsin s lawfully elected presidential electors to participate in the meeting of the electors held on the first Monday after the second Wednesday in December following a presidential election.

192.    Joseph R. Biden, Jr. and Kamala D. Harris won Wisconsin s statewide election in November 2020 for the offices of President and Vice President, respectively.

193.    Accordingly, the Democratic candidates for the office of presidential elector including Plaintiffs Penebaker and Arnold    were the duly elected presidential electors for the State of Wisconsin.

194.    During the 2020 presidential election, none of the Fraudulent Elector Defendants was duly elected as a presidential elector pursuant to Wis. Stat. § 5.10.

195.    None of the Fraudulent Elector Defendants was authorized to participate in the meeting of the presidential electors pursuant to Wis. Stat. § 7.75.

196.    By assuming to act as presidential electors for the State of Wisconsin, and by

purporting to participate in the meeting of the presidential electors held on December 14, 2020, the Fraudulent Elector Defendants violated Wis. Stat. §§ 5.10 and 7.75.

<u>Wisconsin Stat. §§ 939.05 and 946.69</u>

197.    Wisconsin Stat. § 946.69 prohibits falsely assuming to act as a public officer or employee or a utility employee. As relevant, it provides that:  Whoever does any of the following is guilty of a Class I felony: (a) Assumes to act in an official capacity or to perform an official function, knowing that he or she is not the public officer or public employee or the employee of a utility that he or she assumes to be.  Wis. Stat. § 946.69(2).

198.    By assuming to act as presidential electors for the State of Wisconsin, while knowing that they were not presidential electors for the State of Wisconsin, the Fraudulent Elector Defendants violated Wis. Stat. § 946.69.

199.    Under Wis. Stat. § 939.05,  xw]hoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime.  Wis. Stat. § 939.05(1).  A person is concerned in the commission of the crime if the person: (a) Directly commits the crime; or (b) Intentionally aids and abets the commission of it; or (c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it.  Wis. Stat. § 939.05(2).

200.    In addition to directly violating Wis. Stat. § 946.69, the Fraudulent Elector Defendants intentionally aided and abetted the violation of, and conspired with each other to violate, Wis. Stat. § 946.69, in violation of Wis. Stat. § 939.05.

201.    Defendants Chesebro and Troupis also intentionally aided and abetted the violation of, and conspired with the Fraudulent Elector Defendants to violate, Wis. Stat. § 946.69, in violation of Wis. Stat. § 939.05.

18 U.S.C. § 1512(c)(2)

202.     Under 18 U.S.C. § 1512(c)(2), ʌw]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

203.     By purporting to cast Wisconsin s electoral votes, knowing that they were not the duly elected presidential electors for the State of Wisconsin, and by intending that Congress count their purported votes rather than those cast by Wisconsin s duly elected presidential electors, the Fraudulent Elector Defendants corruptly attempted to obstruct, influence, or impede an official proceeding, in violation of 18 U.S.C. § 1512(c)(2).

204.     By conspiring with, aiding, and abetting the Fraudulent Elector Defendants, Defendants Chesebro and Troupis also corruptly attempted to obstruct, influence, or impede an official proceeding, in violation of 18 U.S.C. § 1512(c)(2).

18 U.S.C. § 371

205.     Under 18 U.S.C. § 371, ʌi]f two or more persons conspire . . . to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

206.     It has long been established that this statutory language is not confined to fraud as that term has been defined in the common law. It reaches any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government. *Dennis v. United States*, 384 U.S. 855, 861 (1966) (internal quotation marks omitted).

207.     By purporting to cast Wisconsin s electoral votes, knowing that they were not the duly elected presidential electors for the State of Wisconsin, and by intending that Congress

41

count their purported votes rather than those cast by Wisconsin s duly elected presidential

electors, the Fraudulent Elector Defendants conspired to defraud the United States by impairing,

obstructing, or defeating the lawful function of a department of government, in violation of 18

U.S.C. § 371.

208.    Defendants Chesebro and Troupis also conspired with the Fraudulent Elector

Defendants to defraud the United States by impairing, obstructing, or defeating the lawful

function of a department of government, in violation of 18 U.S.C. § 371.

<u>18 U.S.C. § 494</u>

209.    Under 18 U.S.C. § 494:

> Whoever falsely makes, alters, forges, or counterfeits any bond, bid,
> proposal, contract, guarantee, security, official bond, public record,
> affidavit, or other writing for the purpose of defrauding the United
> States; or . . .

> Whoever transmits to, or presents at any office or to any officer of the
> United States, any such false, forged, altered, or counterfeited writing,
> knowing the same to be false, forged, altered, or counterfeited

> Shall be fined under this title or imprisoned not more than ten years, or
> both.

210.    By executing a document titled  Certificate of the Votes of the 2020 Electors

from Wisconsin,  which falsely purported to be an official certificate reflecting the votes of

Wisconsin s duly elected presidential electors; by transmitting that certificate to the President of

the United States Senate, the Archivist of the United States, and the Chief Judge of the United

States District Court for the Western District of Wisconsin; and by intending that Congress count

their purported votes rather than those cast by Wisconsin s duly elected presidential electors: the

Fraudulent Elector Defendants falsely made, forged, and counterfeited a public record or other

writing for the purpose of defrauding the United States, and transmitted such writing to an officer

of the United States, in violation of 18 U.S.C. § 494.

211.    Defendants unlawful actions formed the basis of a civil conspiracy that injured

Plaintiffs.

212.    A civil conspiracy is a combination of two or more persons by some concerted

action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose

not in itself unlawful.    *Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, ¶168, 285 Wis. 2d

236, 701 N.W.2d 523 (internal quotation marks omitted).

213.    The elements of a civil conspiracy claim are ENF[t]he formation and operation of

the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting

from such act or acts.    *Onderdonk v. Lamb*, 79 Wis. 2d 241, 247, 255 N.W.2d 507 (1977).

214.    It is not the case that the acts which execute the conspiracy must be civilly

actionable.    *Radue v. Dill*, 74 Wis. 2d 239, 244, 246 N.W.2d 507 (1976).  Instead, xi]t is only

the existence of overt acts which is critical, in order that damages occur, not the actionability of

the overt acts themselves.    *Id.*

215.    As described above, the Fraudulent Elector Defendants formed and operated a

conspiracy to falsely assume the office of presidential elector for the State of Wisconsin.

216.    In doing so, they violated Wis. Stat. §§ 5.10, 7.75, 939.05, and 946.69, and 18

U.S.C. §§ 371, 494, and 1512(c)(2).

217.    Defendants Chesebro and Troupis also conspired with, aided, and abetted the

Fraudulent Elector Defendants, and in doing so violated Wis. Stat. §§ 939.05 and 946.69, and 18

U.S.C. §§ 371 and 1512(c)(2).

218.    Defendants wrongful acts caused Plaintiffs damages.

219.    As described above, Defendants undermined Plaintiffs Penebaker and Arnold s

claims to legitimacy as presidential electors and injured Plaintiffs Penebaker and Arnold s reputations by casting doubt on their status as presidential electors. *See Singer v. Singer*, 245 Wis. 191, 198, 14 N.W.2d 43 (1944) (injuries to plaintiff s character actionable in civil conspiracy suit).

220.    As described above, Defendants made unlawful use of public resources in which all Plaintiffs had an interest as Wisconsin taxpayers.

221.    Accordingly, Plaintiffs respectfully request that this Court declare that Defendants engaged in a civil conspiracy to falsely assume the office of presidential elector for the State of Wisconsin, pursuant to which the Fraudulent Elector Defendants violated Wis. Stat. §§ 5.10, 7.75, 939.05, and 946.69, and 18 U.S.C. §§ 371, 494, and 1512(c)(2), and pursuant to which Defendants Chesebro and Troupis violated Wis. Stat. §§ 939.05 and 946.69, and 18 U.S.C. §§ 371 and 1512(c)(2).

222.    Plaintiffs respectfully request that the Court award them damages caused by that conspiracy.

## COUNT TWO
### (Public Nuisance Under Wis. Stat. § 823.01 Against All Defendants)

223.    Plaintiffs restate and re-allege paragraphs 1 through 222 above as if fully set forth herein.

224.    Under Wis. Stat. § 823.01,  xa]ny person, county, city, village or town may maintain an action to recover damages or to abate a public nuisance from which injuries peculiar to the complainant are suffered, so far as necessary to protect the complainant s rights and to obtain an injunction to prevent the same.

225.    A public nuisance is a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community.

*Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, ¶21, 254 Wis. 2d 77, 646 N.W.2d 777 (footnote omitted).

226.    In addition,  repeated violation of criminal statutes constitutes per se a public nuisance.  *State v. H. Samuels Co.*, 60 Wis. 2d 631, 637, 211 N.W.2d 417 (1973).

227.    Defendants substantially and unduly interfered with the activities of the entire Wisconsin electorate when they purported to exercise    and conspired with, aided, and abetted each other in purporting to exercise    the powers assigned by law to the duly elected presidential electors for the State of Wisconsin.

228.    In particular, Defendants undermined Wisconsin voters  faith in the democratic process and their trust in the State s political institutions.

229.    Defendants  actions also interfered with every voter s interest in his or her right to exercise the franchise. *See McGrael v. Phelps*, 144 Wis. 1, 15, 128 N.W. 1041 (1910) E xThe right to vote] is a right which the law protects and enforces as jealously as it does property in chattels or lands.  The law maintains and vindicates it as vigorously as it does any right of any kind which men may have or enjoy.   (internal quotation marks and alteration omitted)).

230.    Furthermore, Defendants  actions helped lay the foundation for a nationwide scheme to override the results of the 2020 election, thereby setting an anti-democratic precedent that jeopardizes all future elections inside and outside the State.

231.    Defendants  actions continue to threaten the integrity of representative government in Wisconsin because they have failed to disavow their misconduct following the 2020 presidential election.

232.    There is also a significant probability, in light of ongoing efforts to delegitimize and decertify the 2020 presidential election in Wisconsin, that Defendants or others inspired by

Defendants will again, in the future, purport to exercise   and conspire with, aid, and abet others in purporting to exercise   the powers assigned by law to the duly elected presidential electors for the State.

233.   For these reasons, Defendants  actions constituted, and continue to constitute, a public nuisance.

234.   As explained above, Defendants also repeatedly violated various criminal prohibitions when they falsely assumed to act as public officers and conspired with, aided, and abetted each other to do the same.

235.   There is a significant probability that Defendants or others inspired by Defendants will violate these criminal prohibitions again in the future.

236.   For these reasons, Defendants  actions constituted, and continue to constitute, per se a public nuisance.

237.   When Defendants purported to act   and conspired with, aided, and abetted each other in purporting to act   as presidential electors for the State of Wisconsin, Plaintiffs Penebaker and Arnold suffered injuries peculiar to them.

238.   In particular, Defendants undermined Plaintiffs Penebaker and Arnold s claims to legitimacy as presidential electors for the State of Wisconsin.

239.   And Defendants injured Plaintiffs Penebaker and Arnold s reputations by casting doubt on their status as presidential electors for the State of Wisconsin.

240.   Defendants continue to inflict these injuries on Plaintiffs Penebaker and Arnold given Defendants  failure to disavow their prior actions and the ongoing efforts to delegitimize and decertify the 2020 presidential election in Wisconsin.

241.   There is a significant probability that Defendants or others inspired by Defendants

will inflict these injuries on Plaintiffs Penebaker and Arnold again in the future.

242.     Accordingly, Plaintiffs Penebaker and Arnold respectfully request that the Court declare that Defendants false assumption of the office of presidential elector and the actions they took to conspire with, aid, and abet each other in doing the same constituted, and continue to constitute, a public nuisance.

243.     Plaintiffs Penebaker and Arnold also respectfully request that the Court award damages for their peculiar injuries and enjoin Defendants from falsely assuming and conspiring with, aiding, and abetting others in falsely assuming the office of presidential elector again in the future.

**COUNT THREE**
**(Public Nuisance Under Wis. Stat. § 823.02 Against All Defendants)**

244.     Plaintiffs restate and re-allege paragraphs 1 through 243 above as if fully set forth herein.

245.     Under Wis. Stat. § 823.02, ᵡa]n action to enjoin a public nuisance may be commenced and prosecuted in the name of the state, either by the attorney general on information obtained by the department of justice, or upon the relation of a private individual, . . . having first obtained leave therefor from the court.

246.     As explained above, Defendants actions constituted, and continue to constitute, a public nuisance.

247.     Plaintiffs have filed contemporaneously with this Complaint a motion for leave to proceed under Wis. Stat. § 823.02 on behalf of the State.

248.     All Plaintiffs have standing to proceed under Wis. Stat. § 823.02.

249.     When Defendants purported to act and conspired with, aided, and abetted each other in purporting to act as presidential electors for the State of Wisconsin, all Plaintiffs

47

suffered injuries as Wisconsin taxpayers and voters.

250. In particular, the Fraudulent Elector Defendants made unlawful use of public resources during their meeting at the State Capitol on December 14, 2020, and those resources were the property of Wisconsin and its taxpayers.

251. As Wisconsin taxpayers, all Plaintiffs had an interest in the property that Defendants unlawfully used. *Cf. Hart v. Ament*, 176 Wis. 2d 694, 699, 500 N.W.2d 312 (1993) E Even a loss or potential loss which is infinitesimally small with respect to each individual taxpayer will suffice to sustain a taxpayer suit. FK

252. In addition, Defendants inflicted an injury on all Plaintiffs by interfering with their interest in their right to vote.

253. There is a significant probability that Defendants or others inspired by Defendants will inflict similar injuries on all Plaintiffs again in the future.

254. Accordingly, all Plaintiffs respectfully request that the Court declare that Defendants  false assumption of the office of presidential elector   and the actions they took to conspire with, aid, and abet each other in doing the same   constituted, and continue to constitute, a public nuisance.

255. All Plaintiffs also respectfully request that the Court enjoin Defendants from falsely assuming   and conspiring with, aiding, and abetting others in falsely assuming   the office of presidential elector again in the future.

## COUNT FOUR
### (*Quo Warranto* Against the Fraudulent Elector Defendants)

256. Plaintiffs restate and re-allege paragraphs 1 through 255 above as if fully set forth herein.

257. Chapter 784 of the Wisconsin Statutes codifies the common law action of *quo*

*warranto*. *See State ex rel. Shroble v. Prusener*, 185 Wis. 2d 102, 108 n.3, 517 N.W.2d 169 (1994).

258.    An action may be brought by the attorney general in the name of the state, upon his or her own information or upon the complaint of any private party, against the parties offending in the following cases: (a) When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state . . . K  Wis. Stat. § 784.04(1).

259.    Such action may be brought in the name of the state by a private person on personal complaint when the attorney general refuses to act or when the office usurped pertains to a county, town, city, village, school district or technical college district.   Wis. Stat. § 784.04(2).

260.    By falsely assuming the office of presidential elector for the State of Wisconsin, the Fraudulent Elector Defendants did  usurp, intrude into or unlawfully hold or exercise [that] public office.

261.    On April 22, 2022, Plaintiffs requested that the Wisconsin Attorney General bring an action against the Fraudulent Elector Defendants under Wis. Stat. § 784.04(1).  *See* Ex. H.

262.    On May 6, 2022, the Wisconsin Attorney General declined to bring such an action. *See* Ex. I.

263.    In addition to requesting first that the Attorney General bring an action under Wis. Stat. § 784.04(1), a private plaintiff bringing an action under § 784.04(2)  must show that he has sustained or is in danger of sustaining injury as a result of the challenged action, and he must show a special interest.  *City of Waukesha v. Salbashian*, 128 Wis. 2d 334, 349, 382 N.W.2d 52 (1986) (internal quotation marks omitted).  However,  only a slight interest is necessary to

qualify a person to apply for leave to prosecute the action. *Id.* For example, the pecuniary interest of a landowner-taxpayer is sufficient to confer standing in a *quo warranto* action. *Id.* at 351.

264.    As described above, Plaintiffs Penebaker, Arnold, and Joseph have sustained, and are in danger of sustaining in the future, injuries as a result of the Fraudulent Elector Defendants usurpation of the office of presidential elector for the State of Wisconsin.

265.    Plaintiffs Penebaker and Arnold have a special interest because they are entitled to the office that the Fraudulent Elector Defendants usurped.

266.    All Plaintiffs have a special interest because they are Wisconsin taxpayers and voters.

267.    When a defendant in a *quo warranto* action is adjudged guilty of usurping or intruding into or unlawfully holding or exercising any office, franchise or privilege, judgment shall be rendered that the defendant be excluded from the office, franchise or privilege and that the plaintiff recover costs against the defendant. The court may also, in its discretion, fine the defendant a sum not exceeding $2,000, which fine, when collected, shall be paid into the treasury of the state. Wis. Stat. § 784.13.

268.    In addition, xi]f the judgment be rendered upon the right of the person so alleged to be entitled in favor of such person the person may recover by action the damages the person has sustained by reason of the usurpation by the defendant of the office from which such defendant has been excluded. Wis. Stat. § 784.11.

269.    Accordingly, Plaintiffs respectfully request that this Court: render judgment excluding the Fraudulent Elector Defendants from the office of presidential elector for the State of Wisconsin; award costs to Plaintiffs; fine each of the Fraudulent Elector Defendants $2,000;

50

and award to Plaintiffs Penebaker and Arnold damages for the Fraudulent Elector Defendants

usurpation of the office to which they are entitled by the results of Wisconsin s 2020 presidential

election.

## COUNT FIVE
### (Punitive Damages Against All Defendants)

270.    Plaintiffs restate and re-allege paragraphs 1 through 269 above as if fully set forth

herein.

271.    In addition to compensatory damages, Wisconsin law allows the award of

punitive damages if the factfinder determines that a defendant acted in intentional disregard of

the rights of a plaintiff. Wis. Stat. § 895.043(3).

272.    A person acts in intentional disregard of the rights of a plaintiff if the person acts

with the purpose to disregard the plaintiff s rights or is aware that his or her acts are substantially

certain to result in the plaintiff s rights being disregarded. *Strenke v. Hogner*, 2005 WI 25, ¶38,

279 Wis. 2d 52, 694 N.W.2d 296.

273.    A finding of intentional disregard requires that the defendant s act or course of

conduct was: (a) deliberate; (b) an actual disregard of a right belonging to the plaintiff; and (c)

sufficiently aggravated to warrant punishment by punitive damages. *Id.*

274.    An award of punitive damages does not require that a defendant intended to cause

harm or injury to the plaintiff. *Wosinski v. Advance Cast Stone Co.*, 2017 WI App 51, ¶75, 377

Wis. 2d 596, 901 N.W.2d 797 (quoting *Strenke*, 2005 WI 25, ¶19; *Wischer v. Mitsubishi Heavy*

*Indus. Am., Inc.*, 2005 WI 26, ¶24, 279 Wis. 2d 4, 694 N.W.2d 320).

275.    Indeed, a defendant s conduct giving rise to punitive damages need not be

directed at the specific plaintiff seeking punitive damages. *Strenke*, 2005 WI 25, ¶51.

276.    Punitive damages are not awarded to compensate a plaintiff for any loss he or she

has sustained. Instead, the purpose of punitive damages is to deter wrongdoers and others from engaging in similar conduct in the future. *Trinity Evangelical Lutheran Church & Sch.-Freistadt v. Tower Ins. Co.*, 2003 WI 46, ¶50, 261 Wis. 2d 333, 661 N.W.2d 789.

277.    Under Wis. Stat. § 895.043(6), with respect to each defendant, a punitive damages award cannot exceed twice the amount of compensatory damages or $200,000.00, whichever is greater.

278.    Wisconsin law recognizes the propriety of punitive damages where both the plaintiff and society have significant interests in deterring the defendant s conduct, regardless of the lack of measurable harm that results. *See Jacque v. Steenberg Homes, Inc.*, 209 Wis. 2d 605, 617, 563 N.W.2d 154 (1997).

279.    This is true even where the underlying judgment is a nominal damage award represent[ing] the recognition that, although immeasurable in mere dollars, actual harm has occurred. *Id.* at 619.

280.    And it is especially true where, as here, society has an interest in punishing and deterring the conduct at issue beyond that of protecting the interests of the individual plaintiffs. *See id.* at 620.

281.    Defendants intentional conduct, as alleged in detail above and to be proven by Plaintiffs, shows that they acted deliberately, in disregard of Plaintiffs rights, and in a manner that warrants punitive damages.

282.    Punitive damages are further appropriate here to deter Defendants and others from ever engaging in similar conduct in the future.

283.    Accordingly, the factfinder may, and should, award Plaintiffs punitive damages up to the statutory maximum against each Defendant.

## COUNT SIX
### (Article I, Section 9 of the Wisconsin Constitution Against All Defendants)

284.    Plaintiffs restate and re-allege paragraphs 1 through 283 above as if fully set forth herein.

285.    Under Wis. Const. art. I, § 9:  Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

286.    This provision has been interpreted to mean that:  When an adequate remedy or forum does not exist to resolve disputes or provide due process, the courts, under the Wisconsin Constitution, can fashion an adequate remedy.   *Gramling*, 2005 WI 129, ¶128 (internal quotation marks omitted).

287.    For the reasons above, Plaintiffs are entitled to relief under Wisconsin statutory and common law.

288.    To the extent the Court disagrees, however, Plaintiffs respectfully request that the Court use its authority pursuant to Wis. Const. art. I, § 9, to award the relief detailed below.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

(1)    Declaring that Defendants engaged in a civil conspiracy, pursuant to which the Fraudulent Elector Defendants violated Wis. Stat. §§ 5.10, 7.75, 939.05, and 946.69, and 18 U.S.C. §§ 371, 494, and 1512(c)(2), and pursuant to which Defendants Chesebro and Troupis violated Wis. Stat. §§ 939.05 and 946.69, and 18 U.S.C. §§ 371 and 1512(c)(2);

53

(2)     Declaring that Defendants false assumption of the office of presidential elector

and the actions they took to conspire with, aid, and abet each other in doing the

same constituted, and continue to constitute, a public nuisance;

(3)     Enjoining Defendants from falsely assuming the office of presidential elector or

conspiring with, aiding, and abetting others in doing the same and issuing such

further equitable relief as appropriate;

(4)     Awarding Plaintiffs damages for Defendants engagement in a civil conspiracy;

(5)     Awarding Plaintiffs damages for Defendants creation of a public nuisance;

(6)     Awarding Plaintiffs punitive damages;

(7)     Pursuant to Chapter 784 of the Wisconsin Statutes, excluding the Fraudulent

Elector Defendants from the office of presidential elector for the State of

Wisconsin; awarding costs to Plaintiffs; fining each Fraudulent Elector Defendant

$2,000; and awarding Plaintiffs Penebaker and Arnold damages caused by the

Fraudulent Elector Defendants usurpation of the office to which they are entitled;

(8)     Pursuant to Wis. Const. art. I, § 9, awarding any other appropriate relief;

(9)     Awarding Plaintiffs reasonable attorneys fees and costs;

(10)    Granting other such relief as may be just and proper; and

(11)    Requiring that Defendants transmit a copy of the final judgment in this matter to

the President of the United States Senate, the Wisconsin Secretary of State, the Archivist of the

United States, and the Chief Judge of the United States District Court for the Western District of

Wisconsin.

Dated: May 17, 2022.

_Electronically signed by Jeffrey A. Mandell_
Jeffrey A. Mandell (State Bar No. 1100406)
Carly Gerads (State Bar No. 1106808)
STAFFORD ROSENBAUM LLP

Mel Barnes (State Bar No. 1096012)
LAW FORWARD, INC.

Mary B. McCord*
Rupa Bhattacharyya*
Alex Aronson*
Joseph W. Mead*
Ben Gifford*
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION

_Attorneys for Plaintiffs_

* Application for admission _pro hac vice_ forthcoming

Addresses:

STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701
Email: jmandell@staffordlaw.com
        cgerads@staffordlaw.com
608.256.0226

LAW FORWARD, INC.
222 West Washington Avenue, Suite 250
Madison, Wisconsin 53703
Email: mbarnes@lawforward.org
608.535.9808

INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave NW
Washington, DC 20001
Email: mbm7@georgetown.edu
        rb1796@georgetown.edu
        aa2595@georgetown.edu
        jm3468@georgetown.edu
        bg720@georgetown.edu
202.662.9042

# EXHIBIT A

CERTIFICATE OF NOMINATIONS

PRESIDENTIAL ELECTORS 2020

CONSTITUTION PARTY OF WISCONSIN

Andrew Zuelke, State Chairman

Congressional District

1st   **Nigel Brown**   132 Ringold Street   Janesville, WI 53545

2nd   **Dan Herro**   2770 Iva Ct. #15   Beloit, WI 53511

3rd   **Matthew Kloskowski**   171 13th Avenue S. W Wisconsin Rapids, WI 54495

4th   **Colin Hudson**   6962 N. Raintree Dr. Apt. #D   Milwaukee, WI 53223

5th   **Thomas Harland**   1115 River Place Boulevard   Waukesha, WI 53189

6th   **Andrew Zuelke** 578 Eureka Street Ripon, WI 54971

7th   **Elizabeth Lindee**   120 North St. W   Deer Park, WI 54007

8th   **Josh Young**   126 S. Willow Street   Kimberly WI 54136


At Large   **Glenn Petroski**, 2219 73rd Street   Kenosha, WI 53143 (1st District)

At Large   **Lorraine Decker**   2632 S. 29th Street   La Crosse, WI 54601  (3rd District)

# EXHIBIT B

### CERTIFICATE OF NOMINATION
### PRESIDENTIAL ELECTORS
### MEETING: OCTOBER 6, 2020

I, __BENJAMIN WIKLER__, Chairperson of the __DEMOCRATIC PARTY OF WISCONSIN__,
(name of chairperson)                                                    (name of party)

certify that the following are the names and addresses of the 2020 Presidential Electors

for the __DEMOCRATIC PARTY of WISCONSIN__, as selected by the
(name of party)

members of the __DEMOCRATIC PARTY of WISCONSIN__ Presidential
(name of party)

Electors Nominating Convention on October 6, 2020:

**Congressional District:**

1st __MEG ANDRIETSCH__

2nd __REP. SHELIA STUBBS__

3rd __RONALD MARTIN__

4th __LT. GOV. MANDELA BARNES__

5th __KHARY PENEBAKER__

6th __MARY ARNOLD__

7th __SEN. PATTY SCHACHTNER__

8th __SHANNON HOLSEY__

At Large __GOV. TONY EVERS__

At Large __BENJAMIN WIKLER__

Signed in the __CITY__ of __MADISON__, WI,
Town/Village or City              (Name of Town, Village or City)

this 6th day of October 2020.

_____
(signature of chairperson)

__BEN WIKLER__
(printed name of chairperson)

__DEMOCRATIC PARTY of WISCONSIN__
(name of party)

# EXHIBIT C

CERTIFICATE OF NOMINATION
PRESIDENTIAL ELECTORS
MEETING: OCTOBER 6, 2020

I, _____Andrew Hitt_____, Chairperson of the _Republican Party of Wisconsin,_
(name of chairperson)                                                    (name of party)

certify that the following are the names and addresses of the 2020 Presidential Electors

for the Republican Party of Wisconsin_____, as selected by the
(name of party)

members of the _____Republican Party_____ Presidential
(name of party)

Electors Nominating Convention on October 6, 2020:

**Congressional District**:

**1st** ___ Carol Brunner, 7473 Karth Court, Franklin, WI 53132_____

**2nd** ___ Edward Scott Grabins, P.O. Box 945, Madison WI 53701_____

**3rd** ___ Bill Feehan, 1901 Cherokee Avenue, La Crosse, WI 53603_____

**4th** ___ Robert F. Spindell, Jr. 1626 N Prospect Ave. Milwaukee, WI 53202_____

**5th** ___ Tom Schreibel, N80 W28196 Adams Road, Hartland, WI 53029_____

**6th** ___ Darryl Carlson, PO Box 1311, Sheboygan, WI 53082_____

**7th** ___ Pam Travis, W5504 Bieneck Road, Neillsville, WI 54456_____

**8th** ___ Kelly Ruh, 2091 Old Plank Road, De Pere, WI 54115_____

**At Large** ___ Andrew Hitt, 231 East Carrington Lane, Appleton, WI 54913 _____

**At Large** ___ Mary Buestrin, 13259 N. Lakewood Drive, Mequon, WI 53097_____

Signed in the _____city_____ of _____Madison_____ _____, WI,
Town/Village or City)                      (Name of Town, Village or City)

this 6th day of October 2020.

_____
(signature of chairperson)

_____Andrew Hitt_____
(printed name of chairperson)

____Republican Party of Wisconsin_____
(name of party)

# EXHIBIT D

# STATEMENT OF CANVASS

# FOR

# PRESIDENT, VICE PRESIDENT AND PRESIDENTIAL ELECTORS

# GENERAL ELECTION, NOVEMBER 3, 2020

I, Ann Jacobs, Chair of the Wisconsin Elections Commission, certify that the attached tabular statement, as compiled from the certified returns made to the Wisconsin Elections Commission by the county clerks of the several counties of the state, contains a correct abstract of the total number of votes given for the election of Presidential Electors, at a General Election held in the several towns, villages, cities, wards and election districts in said counties on the Third day of November, 2020.

I THEREFORE DETERMINE AND CERTIFY that the following electors for Joseph R. Biden and Kamala D. Harris, candidates for President and Vice President respectively, on the Democratic ticket, have received the greatest number of votes cast at the General Election held on November 3, 2020, and are duly elected Presidential Electors:

<u>Presidential Electors</u>

Meg Andrietsch
Shelia Stubbs
Ronald Martin
Mandela Barnes
Khary Penebaker
Mary Arnold
Patty Schachtner
Shannon Holsey
Tony Evers
Benjamin Wikler

Done in the City of Milwaukee, this 30th day of November, 2020.

Ann Jacobs, Chair
Wisconsin Elections Commission

**WEC Canvass Reporting System**
**County by County Report**
**2020 General Election**

## PRESIDENT OF THE UNITED STATES

| County | Total Votes Cast | DEM<br>Joseph R. Biden / Kamala D. Harris | REP<br>Donald J. Trump / Michael R. Pence | CON<br>Don Blankenship / William Mohr | IND<br>Jo Jorgensen / Jeremy Spike Cohen | IND<br>Brian Carroll / Amar Patel | IND<br>Kasey Wells (write-in) | IND<br>Jade Simmons / Claudeliah J. Roze (write-in) | IND<br>President R19 Boddie (write-in) | IND<br>Howie Hawkins / Angela Walker (write-in) | IND<br>Gloria La Riva / Sunil Freeman (write-in) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ADAMS | 11,818 | 4,329 | 7,362 | 27 | 85 | 3 | 0 | 0 | 0 | 1 | 0 |
| ASHLAND | 8,757 | 4,801 | 3,841 | 11 | 70 | 11 | 0 | 0 | 0 | 6 | 0 |
| BARRON | 25,346 | 9,194 | 15,803 | 37 | 262 | 21 | 1 | 0 | 0 | 13 | 1 |
| BAYFIELD | 10,880 | 6,147 | 4,617 | 11 | 80 | 13 | 0 | 0 | 0 | 7 | 0 |
| BROWN | 144,017 | 65,511 | 75,871 | 215 | 1,829 | 206 | 1 | 0 | 0 | 33 | 2 |
| BUFFALO | 7,816 | 2,860 | 4,834 | 20 | 80 | 10 | 0 | 0 | 0 | 0 | 0 |
| BURNETT | 10,141 | 3,569 | 6,462 | 13 | 86 | 9 | 0 | 0 | 0 | 1 | 0 |
| CALUMET | 30,774 | 12,116 | 18,156 | 42 | 363 | 75 | 0 | 0 | 0 | 6 | 0 |
| CHIPPEWA | 35,938 | 13,983 | 21,317 | 60 | 501 | 45 | 0 | 0 | 0 | 5 | 1 |
| CLARK | 14,898 | 4,524 | 10,002 | 32 | 168 | 147 | 1 | 1 | 0 | 2 | 0 |
| COLUMBIA | 33,869 | 16,410 | 16,927 | 61 | 421 | 32 | 0 | 1 | 0 | 15 | 0 |
| CRAWFORD | 8,695 | 3,953 | 4,620 | 18 | 92 | 12 | 0 | 0 | 0 | 0 | 0 |
| DANE | 344,728 | 260,121 | 78,794 | 405 | 3,666 | 583 | 1 | 5 | 0 | 216 | 42 |
| DODGE | 48,436 | 16,356 | 31,355 | 90 | 535 | 81 | 1 | 0 | 0 | 11 | 0 |
| DOOR | 20,117 | 10,044 | 9,752 | 27 | 231 | 22 | 0 | 0 | 0 | 10 | 0 |
| DOUGLAS | 24,677 | 13,218 | 10,923 | 42 | 379 | 41 | 0 | 0 | 0 | 1 | 0 |
| DUNN | 23,524 | 9,897 | 13,173 | 44 | 368 | 28 | 1 | 0 | 0 | 11 | 0 |
| EAU CLAIRE | 58,275 | 31,620 | 25,341 | 97 | 925 | 91 | 0 | 3 | 0 | 21 | 1 |
| FLORENCE | 2,940 | 781 | 2,133 | 4 | 22 | 0 | 0 | 0 | 0 | 0 | 0 |
| FOND DU LAC | 57,251 | 20,588 | 35,754 | 91 | 686 | 75 | 0 | 2 | 0 | 17 | 1 |
| FOREST | 5,053 | 1,721 | 3,285 | 6 | 35 | 2 | 0 | 0 | 0 | 0 | 0 |
| GRANT | 25,608 | 10,998 | 14,142 | 34 | 350 | 34 | 0 | 0 | 0 | 10 | 0 |
| GREEN | 21,406 | 10,851 | 10,169 | 38 | 271 | 27 | 0 | 1 | 0 | 10 | 0 |
| GREEN LAKE | 10,671 | 3,344 | 7,168 | 15 | 110 | 11 | 0 | 0 | 0 | 1 | 0 |
| IOWA | 13,992 | 7,828 | 5,909 | 25 | 161 | 44 | 0 | 0 | 0 | 4 | 0 |
| IRON | 4,010 | 1,533 | 2,438 | 6 | 26 | 1 | 0 | 0 | 0 | 1 | 0 |
| JACKSON | 10,184 | 4,256 | 5,791 | 17 | 111 | 8 | 0 | 0 | 0 | 1 | 0 |
| JEFFERSON | 47,979 | 19,904 | 27,208 | 69 | 634 | 44 | 0 | 1 | 0 | 9 | 0 |

Report Generated – 11/30/2020 1:45:49 PM

**WEC Canvass Reporting System**
**County by County Report**
**2020 General Election**

| County | IND<br>Kanye West<br>Michelle Tidball<br>(write-in) | IND<br>Mark Charles<br>Adrian Wallace<br>(write-in) | SCATTERING |
|---|---|---|---|
| ADAMS | 1 | 0 | 10 |
| ASHLAND | 1 | 0 | 16 |
| BARRON | 3 | 0 | 11 |
| BAYFIELD | 0 | 1 | 4 |
| BROWN | 19 | 2 | 328 |
| BUFFALO | 0 | 1 | 11 |
| BURNETT | 0 | 1 | 0 |
| CALUMET | 3 | 0 | 13 |
| CHIPPEWA | 2 | 0 | 24 |
| CLARK | 0 | 0 | 21 |
| COLUMBIA | 2 | 0 | 0 |
| CRAWFORD | 0 | 0 | 0 |
| DANE | 67 | 12 | 816 |
| DODGE | 6 | 1 | 0 |
| DOOR | 0 | 0 | 31 |
| DOUGLAS | 0 | 0 | 73 |
| DUNN | 2 | 0 | 0 |
| EAU CLAIRE | 10 | 0 | 165 |
| FLORENCE | 0 | 0 | 0 |
| FOND DU LAC | 7 | 1 | 29 |
| FOREST | 0 | 0 | 4 |
| GRANT | 0 | 0 | 40 |
| GREEN | 2 | 3 | 34 |
| GREEN LAKE | 0 | 0 | 22 |
| IOWA | 5 | 0 | 16 |
| IRON | 0 | 0 | 5 |
| JACKSON | 0 | 0 | 0 |
| JEFFERSON | 3 | 0 | 107 |

## WEC Canvass Reporting System
## County by County Report
### 2020 General Election

| County | Total Votes Cast | DEM Joseph R. Biden / Kamala D. Harris | REP Donald J. Trump / Michael R. Pence | CON Don Blankenship / William Mohr | IND Jo Jorgensen / Jeremy Spike Cohen | IND Brian Carroll / Amar Patel | IND Kasey Wells (write-in) | IND Jade Simmons / Claudeliah J. Rozo (write-in) | IND President R19 Boddie (write-in) | IND Howie Hawkins / Angela Walker (write-in) | IND Gloria La Riva / Sunil Freeman (write-in) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| JUNEAU | 13,709 | 4,746 | 8,749 | 21 | 146 | 21 | 0 | 0 | 0 | 2 | 0 |
| KENOSHA | 88,738 | 42,193 | 44,972 | 147 | 1,037 | 120 | 0 | 0 | 0 | 35 | 0 |
| KEWAUNEE | 12,095 | 3,976 | 7,927 | 26 | 127 | 12 | 0 | 1 | 0 | 5 | 0 |
| LA CROSSE | 67,884 | 37,846 | 28,684 | 135 | 877 | 121 | 0 | 1 | 0 | 20 | 3 |
| LAFAYETTE | 8,555 | 3,647 | 4,821 | 15 | 57 | 9 | 0 | 0 | 0 | 4 | 0 |
| LANGLADE | 11,165 | 3,704 | 7,330 | 20 | 94 | 13 | 0 | 1 | 0 | 3 | 0 |
| LINCOLN | 16,497 | 6,261 | 10,017 | 31 | 175 | 13 | 0 | 0 | 0 | 0 | 0 |
| MANITOWOC | 44,829 | 16,818 | 27,218 | 75 | 553 | 87 | 0 | 1 | 0 | 10 | 0 |
| MARATHON | 76,751 | 30,808 | 44,624 | 151 | 929 | 93 | 0 | 2 | 0 | 13 | 2 |
| MARINETTE | 22,979 | 7,366 | 15,304 | 33 | 237 | 32 | 0 | 0 | 0 | 5 | 0 |
| MARQUETTE | 9,065 | 3,239 | 5,719 | 10 | 78 | 4 | 0 | 0 | 0 | 2 | 1 |
| MENOMINEE | 1,590 | 1,303 | 278 | 3 | 6 | 0 | 0 | 0 | 0 | 0 | 0 |
| MILWAUKEE | 459,723 | 317,527 | 134,482 | 624 | 4,342 | 752 | 3 | 6 | 1 | 214 | 37 |
| MONROE | 22,611 | 8,433 | 13,775 | 66 | 263 | 30 | 0 | 0 | 0 | 3 | 0 |
| OCONTO | 23,215 | 6,715 | 16,226 | 40 | 210 | 20 | 0 | 0 | 0 | 2 | 0 |
| ONEIDA | 24,159 | 10,105 | 13,671 | 43 | 283 | 17 | 5 | 1 | 4 | 3 | 0 |
| OUTAGAMIE | 108,022 | 47,667 | 58,385 | 172 | 1,569 | 177 | 0 | 0 | 0 | 34 | 0 |
| OZAUKEE | 61,486 | 26,517 | 33,912 | 82 | 647 | 89 | 0 | 0 | 0 | 19 | 1 |
| PEPIN | 4,144 | 1,489 | 2,584 | 13 | 51 | 4 | 0 | 0 | 0 | 2 | 0 |
| PIERCE | 23,317 | 9,796 | 12,815 | 57 | 383 | 218 | 0 | 0 | 0 | 5 | 0 |
| POLK | 26,371 | 9,370 | 16,611 | 53 | 289 | 36 | 0 | 0 | 0 | 11 | 0 |
| PORTAGE | 40,603 | 20,428 | 19,299 | 67 | 640 | 67 | 0 | 1 | 0 | 31 | 2 |
| PRICE | 8,546 | 3,032 | 5,394 | 14 | 98 | 5 | 0 | 0 | 0 | 1 | 1 |
| RACINE | 106,451 | 50,159 | 54,479 | 169 | 1,200 | 150 | 0 | 2 | 0 | 43 | 2 |
| RICHLAND | 9,014 | 3,995 | 4,871 | 20 | 102 | 14 | 0 | 0 | 0 | 0 | 0 |
| ROCK | 85,360 | 46,658 | 37,138 | 152 | 1,094 | 122 | 0 | 0 | 0 | 14 | 2 |
| RUSK | 7,886 | 2,517 | 5,257 | 12 | 85 | 8 | 0 | 0 | 0 | 0 | 0 |
| SAUK | 36,203 | 18,108 | 17,493 | 50 | 441 | 89 | 0 | 0 | 0 | 15 | 0 |
| SAWYER | 10,510 | 4,498 | 5,909 | 15 | 62 | 8 | 0 | 0 | 0 | 1 | 1 |
| SHAWANO | 22,615 | 7,131 | 15,173 | 33 | 253 | 17 | 0 | 0 | 0 | 3 | 0 |

**WEC Canvass Reporting System**
**County by County Report**
**2020 General Election**

| County | IND Kanye West Michelle Tidball (write-in) | IND Mark Charles Adrian Wallace (write-in) | SCATTERING |
|---|---|---|---|
| JUNEAU | 0 | 0 | 24 |
| KENOSHA | 10 | 0 | 224 |
| KEWAUNEE | 2 | 1 | 18 |
| LA CROSSE | 12 | 1 | 184 |
| LAFAYETTE | 0 | 0 | 2 |
| LANGLADE | 0 | 0 | 0 |
| LINCOLN | 0 | 0 | 0 |
| MANITOWOC | 5 | 1 | 61 |
| MARATHON | 5 | 0 | 124 |
| MARINETTE | 2 | 0 | 0 |
| MARQUETTE | 0 | 0 | 12 |
| MENOMINEE | 0 | 0 | 0 |
| MILWAUKEE | 107 | 11 | 1,617 |
| MONROE | 1 | 0 | 40 |
| OCONTO | 2 | 0 | 0 |
| ONEIDA | 0 | 0 | 27 |
| OUTAGAMIE | 15 | 3 | 0 |
| OZAUKEE | 6 | 4 | 209 |
| PEPIN | 1 | 0 | 0 |
| PIERCE | 4 | 0 | 39 |
| POLK | 1 | 0 | 0 |
| PORTAGE | 0 | 1 | 67 |
| PRICE | 1 | 0 | 0 |
| RACINE | 12 | 2 | 233 |
| RICHLAND | 0 | 0 | 12 |
| ROCK | 3 | 0 | 177 |
| RUSK | 2 | 0 | 5 |
| SAUK | 7 | 0 | 0 |
| SAWYER | 0 | 1 | 15 |
| SHAWANO | 4 | 1 | 0 |

**WEC Canvass Reporting System**
**County by County Report**

**2020 General Election**

| County | Total Votes Cast | DEM Joseph R. Biden Kamala D. Harris | REP Donald J. Trump Michael R. Pence | CON Don Blankenship William Mohr | IND Jo Jorgensen Jeremy Spike Cohen | IND Brian Carroll Amar Patel | IND Kasey Wells (write-in) | IND Jade Simmons Claudeliah J. Roze (write-in) | IND President R19 Boddie (write-in) | IND Howie Hawkins Angela Walker (write-in) | IND Gloria La Riva Sunil Freeman (write-in) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SHEBOYGAN | 66,011 | 27,101 | 37,609 | 133 | 896 | 90 | 8 | 0 | 0 | 2 | 0 |
| ST. CROIX | 56,707 | 23,190 | 32,199 | 115 | 878 | 169 | 0 | 0 | 0 | 13 | 4 |
| TAYLOR | 10,686 | 2,693 | 7,657 | 31 | 113 | 185 | 2 | 0 | 0 | 1 | 0 |
| TREMPEALEAU | 15,380 | 6,285 | 8,833 | 38 | 177 | 21 | 0 | 0 | 0 | 3 | 0 |
| VERNON | 15,923 | 7,457 | 8,218 | 29 | 182 | 24 | 0 | 0 | 0 | 6 | 0 |
| VILAS | 15,369 | 5,903 | 9,261 | 22 | 138 | 14 | 0 | 0 | 0 | 0 | 0 |
| WALWORTH | 57,600 | 22,789 | 33,851 | 98 | 641 | 75 | 0 | 0 | 0 | 15 | 0 |
| WASHBURN | 10,378 | 3,867 | 6,334 | 19 | 123 | 13 | 0 | 0 | 0 | 4 | 0 |
| WASHINGTON | 88,070 | 26,650 | 60,237 | 125 | 941 | 78 | 1 | 0 | 0 | 28 | 0 |
| WAUKESHA | 267,996 | 103,906 | 159,649 | 305 | 3,023 | 331 | 0 | 6 | 0 | 54 | 5 |
| WAUPACA | 29,130 | 9,703 | 18,952 | 48 | 357 | 29 | 0 | 0 | 0 | 4 | 0 |
| WAUSHARA | 13,568 | 4,388 | 9,016 | 30 | 115 | 19 | 0 | 0 | 0 | 0 | 0 |
| WINNEBAGO | 94,032 | 44,060 | 47,796 | 168 | 1,629 | 138 | 0 | 0 | 0 | 38 | 1 |
| WOOD | 41,298 | 16,365 | 24,308 | 79 | 403 | 49 | 0 | 0 | 0 | 9 | 0 |
| Office Totals: | 3,298,041 | 1,630,866 | 1,610,184 | 5,146 | 38,491 | 5,259 | 25 | 36 | 5 | 1,089 | 110 |

**WEC Canvass Reporting System**
**County by County Report**
**2020 General Election**

| County | IND Kanye West Michelle Tidball (write-in) | IND Mark Charles Adrian Wallace (write-in) | SCATTERING |
|---|---|---|---|
| SHEBOYGAN | 5 | 0 | 167 |
| ST. CROIX | 5 | 1 | 133 |
| TAYLOR | 1 | 0 | 3 |
| TREMPEALEAU | 2 | 0 | 21 |
| VERNON | 1 | 2 | 4 |
| VILAS | 0 | 0 | 31 |
| WALWORTH | 8 | 0 | 123 |
| WASHBURN | 0 | 0 | 18 |
| WASHINGTON | 10 | 0 | 0 |
| WAUKESHA | 26 | 1 | 690 |
| WAUPACA | 2 | 0 | 35 |
| WAUSHARA | 0 | 0 | 0 |
| WINNEBAGO | 12 | 0 | 190 |
| WOOD | 4 | 0 | 81 |
| **Office Totals:** | **411** | **52** | **6,367** |

# EXHIBIT E



# Tony Evers

Office of the Governor | State of Wisconsin

## CERTIFICATE OF ASCERTAINMENT

## FOR

## PRESIDENT, VICE PRESIDENT AND PRESIDENTIAL ELECTORS

## GENERAL ELECTION - NOVEMBER 3, 2020

I, TONY EVERS, Governor of the State of Wisconsin, DO HEREBY CERTIFY that the following is a true listing of the votes cast for the election of Presidential Electors, at a General Election held in the several towns, villages, cities, wards and election districts within the State of Wisconsin, on the Tuesday next succeeding the first Monday in November 2020, being the THIRD day of said month.

That from the certified returns, the total number of votes cast for the election of Electors for President and Vice President of the United States was 3,298,041, of which number:

JOSEPH R. BIDEN and KAMALA D. HARRIS, candidates of the Democratic Party for President and Vice President, and each of their electors, Meg Andrietsch, Shelia Stubbs, Ronald Martin, Mandela Barnes, Khary Penebaker, Mary Arnold, Patty Schachtner, Shannon Holsey, Tony Evers, and Benjamin Wikler received 1,630,866 votes;

DONALD J. TRUMP and MICHAEL R. PENCE, candidates of the Republican Party for President and Vice President, and each of their electors, Carol Brunner, Edward Scott Grabins, Bill Feehan, Robert F. Spindell, Jr., Tom Schreibel, Darryl Carlson, Pam Travis, Kelly Ruh, Andrew Hitt, and Mary Buestrin received 1,610,184 votes;

DON BLANKENSHIP and WILLIAM MOHR, candidates of the Constitution Party for President and Vice President, and each of their electors, Nigel Brown, Dan Herro, Matthew Kloskowski, Colin Hudson, Thomas Harland, Andrew Zuelke, Elizabeth Lindee, Josh Young, Glenn Petroski, and Lorraine Decker received 5,146 votes;

JO JORGENSEN and JEREMY SPIKE COHEN, candidates of the Libertarian Party for President and Vice President, and each of their electors, Darek Raese, Patrick Baird, Stephen Ecker, Kristin Walker, Jeff Kortsch, Brian Defferding, Nathan Gall, Mike Hammond, Kevin Litten, David Grover received 38,491 votes;

BRIAN CARROLL and AMAR PATEL, candidates of the American Solidarity Party for President and Vice President, and each of their electors, Christopher E. Hansen, Thuy Quyen Tran, Steven L. Carlson, Stephen M. Beall, Patrick William Malone, Charles Adams, Fergus E. McKiernan, Riley Martin Drew, David S. Bovee, and Marianne F. Bovee received 5,259 votes;

REGISTERED WRITE-IN CANDIDATES and other individuals received a combined total of 8,095 write-in votes.

CERTIFICATE OF ASCERTAINMENT
November 30, 2020
Page 2

I DO, THEREFORE, HEREBY DETERMINE AND CERTIFY that all the candidates for Presidential Elector on the Democratic Ticket, having received the greatest number of votes, are duly appointed Presidential Electors for the State of Wisconsin:

    Meg Andrietsch
    Shelia Stubbs
    Ronald Martin
    Mandela Barnes
    Khary Penebaker
    Mary Arnold
    Patty Schachtner
    Shannon Holsey
    Tony Evers
    Benjamin Wikler

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Wisconsin to be affixed. Done at the Capitol, in the City of Madison, this 30th day of November Two Thousand and Twenty.

_____
TONY EVERS
Governor

By the Governor:

_____
DOUGLAS LA FOLLETTE
Secretary of State



# Tony Evers

Office of the Governor | State of Wisconsin

## CERTIFICATE OF FINAL DETERMINATION CONCERNING
## PRESIDENTIAL ELECTORS
## GENERAL ELECTION - NOVEMBER 3, 2020

I, TONY EVERS, Governor of the State of Wisconsin, DO HEREBY CERTIFY, pursuant to 3 U.S.C. § 6, that on December 14, 2020, the Supreme Court of Wisconsin made a final determination in *Donald J. Trump v. Joseph R. Biden*, Case No. 2020AP2038, resolving a contest or controversy concerning the appointment of Meg Andrietsch, Shelia Stubbs, Ronald Martin, Mandela Barnes, Khary Penebaker, Mary Arnold, Patty Schachtner, Shannon Holsey, Tony Evers, and Benjamin Wikler, the electors for Joe Biden and Kamala Harris, as presidential electors of the State of Wisconsin. I certify that a true and correct copy of the Supreme Court of Wisconsin's decision and final determination is attached hereto.

That final determination confirms that, in the general election of Wisconsin on the third day of November, Two Thousand and Twenty, Meg Andrietsch, Shelia Stubbs, Ronald Martin, Mandela Barnes, Khary Penebaker, Mary Arnold, Patty Schachtner, Shannon Holsey, Tony Evers, and Benjamin Wikler received the highest number of votes cast for presidential electors.

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Wisconsin to be affixed. Done at the Executive Residence, in the Village of Maple Bluff, this 21st day of December, Two Thousand and Twenty.

*Tony Evers*

**TONY EVERS**
Governor

By the Governor:

*Douglas La Follette*

DOUGLAS LA FOLLETTE
Secretary of State

# EXHIBIT F

UNITED STATES OF AMERICA

STATE OF WISCONSIN

CERTIFICATE OF VOTES CAST

FOR

PRESIDENT AND VICE PRESIDENT OF THE UNITED STATES

BY

PRESIDENTIAL ELECTORS OF WISCONSIN

\* \* \* \* \* \* \* \* \* \*

WE, THE UNDERSIGNED, ELECTORS OF PRESIDENT AND VICE PRESIDENT OF THE UNITED STATES OF AMERICA, being duly elected, qualified and acting Presidential Electors of the State of Wisconsin, having met and convened at the State Capitol, in the City of Madison, in the State of Wisconsin, at 12:00 noon on Monday, December 14, 2020, pursuant to Section 7, Title 3 of the United States Code, and Section 7.75 of the Wisconsin Statutes, for the purpose of casting our votes for President and Vice President of the United States, and the transmitting of the results of our determination, in accordance with Sections 9 and 11, Title 3 of the United States Code, DO HEREBY CERTIFY:

That all of such Presidential Electors, so elected and so certified to this meeting of the Electoral College answered present and were present in person.

WE FURTHER CERTIFY that the following distinct lists contain a correct abstract of the votes cast for the election of President and Vice President of the United States, respectively:

FOR PRESIDENT

| Names of Persons Voted For | Number of Votes |
|---|---|
| JOSEPH R. BIDEN, JR. of the State of Delaware | Ten(10) |

FOR VICE PRESIDENT

| Names of Persons Voted For | Number of Votes |
|---|---|
| KAMALA D. HARRIS of the State of California | Ten (10) |

IN TESTIMONY WHEREOF, We have hereunto set our hands. Done at the Capitol, in the City of Madison, in the State of Wisconsin, on the First Monday after the Second Wednesday in December, being the 14th day of December, 2020.

_____
Tony Evers

_____
Mandela Barnes

_____
Meg Andrietsch

_____
Shelia Stubbs

_____
Ronald Martin

_____
Khary Penebaker

_____
Mary Arnold

_____
Patty Schachtner

_____
Shannon Holsey

_____
Benjamin Wikler

# EXHIBIT G



# MEMORANDUM

TO:    President of the Senate         (By Registered Mail)
United States Senate
Washington, D.C. 20510

Archivist of the United States    (By Registered Mail)
700 Pennsylvania Avenue, NW
Washington, DC 20408

Secretary of State            (By Certified Mail)
State of Wisconsin
P.O. Box 7848
Madison, WI 53707

Chief Judge, U.S. District Court    (By Certified Mail)
Western District of Wisconsin
120 N. Henry Street
Madison, WI 53703

FROM:   Andrew Hitt, Chairperson, Electoral College of Wisconsin

DATE:   December 14, 2020

RE:     Wisconsin's Electoral Votes for President and Vice President

      Pursuant to 3 U.S.C. § 11, enclosed please find duplicate originals of Wisconsin's electoral votes for President and Vice President, as follows: two (2) duplicate originals for the President of the Senate and the Archivist, and one (1) duplicate original for the Secretary of State and Chief Judge.

# CERTIFICATE OF FILLING VACANCY
# OF THE 2020 ELECTORS FROM WISCONSIN

### **********

Upon the call of the roll, a vacancy became known due to the absence of Elector

## Tom Schreibel

Representing the Fifth Congressional District of Wisconsin

Thereupon, by nomination duly made and seconded,

## Kathy Kiernen

Was elected by the Electors present, as an Elector of President and Vice President of the United States of America for the State of Wisconsin to fill the vacancy in the manner provided by law. This Elector participated in the proceedings as set forth in the record of the Electoral College.

**IN WITNESS WHEREOF**, the undersigned Chairperson and Secretary of the Electoral College of Wisconsin hereunto Subscribe their names this 14th day of December, 2020.

_____
Andrew Hitt, Chairperson

_____
Kelly Ruh, Secretary

# CERTIFICATE OF THE VOTES OF THE
# 2020 ELECTORS FROM WISCONSIN

## **********

WE, THE UNDERSIGNED, being the duly elected and qualified Electors for President and Vice President of the United States of America from the State of Wisconsin, do hereby certify the following:

(A) That we convened and organized at the State Capitol, in the City of Madison, Wisconsin, at 12:00 noon on the 14th day of December, 2020, to perform the duties enjoined upon us;

(B) That being so assembled and duly organized, we proceeded to vote by ballot, and balloted first for President and then for Vice President, by distinct ballots; and

(C) That the following are two distinct lists, one, of all the votes for President; and the other, of all the votes for Vice President, so cast as aforesaid:

### FOR PRESIDENT

| Names of the Persons Voted For | Number of Votes |
|---|---|
| DONALD J. TRUMP of the State of Florida | 10 |

### FOR VICE PRESIDENT

| Names of the Persons Voted For | Number of Votes |
|---|---|
| MICHAEL R. PENCE of the State of Indiana | 10 |

IN WITNESS WHEREOF, we, the undersigned, have hereunto, at the Capitol, in the City of Madison, in the State of Wisconsin, on this 14th day of December, 2020, subscribed our respective names.

Andrew Hitt, Chairperson

Kelly Ruh, Secretary

Carol Brunner

Edward Scott Grabins

Bill Feehan

Robert F. Spindell, Jr.

Kathy Kiernen

Darryl Carlson

Pam Travis

Mary Buestrin

# EXHIBIT H



Law Forward Inc.
P.O. Box 326
Madison, WI 53703-0326

April 22, 2022

**VIA EMAIL**

Attorney General Josh Kaul
Wisconsin Department of Justice
17 West Main St.
Madison, WI 53703
*kauljl@doj.state.wi.us*

**Re: Request for Quo Warranto Action, Wis. Stat. § 784.04(1)(a), Against the Fraudulent Electors**

Attorney General Kaul,

Wisconsin law protects the citizens of our state from those who falsely assume a public office, not having been elected by the people. Our statutes authorize a quo warranto action "[w]hen any person shall usurp, intrude into or unlawfully hold or exercise any public office" within the state of Wisconsin. Wis. Stat. § 784.04(1)(a). Such a lawsuit may be brought by the Attorney General, in the name of the state, or, when the Attorney General declines to act, by a private person on personal complaint. Wis. Stat. § 784.04(1) – (2).

As you are aware, in December of 2020, 10 individuals in our state wrongfully and illegally usurped a public office. These 10 individuals—Wisconsin's "fraudulent electors," as described below—sought to subvert the statewide election results and seize public office contrary to the will of nearly 3.3 million Wisconsin voters. We write today to ask that you promptly initiate a quo warranto action against the fraudulent electors.

**Background**

The U.S. Constitution directs each state to determine how that state's Electoral College votes will be assigned. Since statehood, Wisconsin has chosen electors through popular statewide election. This unbroken practice is currently reflected in Wisconsin Stat. § 5.10, which specifies that Wisconsin's presidential electors are chosen by the statewide vote for the offices of President and Vice President. In accord with and reliance upon this longstanding tradition, Wisconsin voters cast their ballots in the November 3, 2020 election. The winning margin was close—within 1 percent—but not historically so.[1]

Wisconsin certified its election results on November 30, 2020, confirming that those results compelled designating the state's 10 electoral votes for now-President Joseph R. Biden, Jr., and now-Vice President Kamala D. Harris. This certification came after votes were counted, double-checked, and canvassed—first at

---

[1] For example, Wisconsin's 2000 and 2004 presidential elections, the 2011 and 2019 elections for Justices on the Wisconsin Supreme Court, and the 2018 election for Attorney General of Wisconsin were all statewide elections decided by fewer votes than separated the winner and runner-up of Wisconsin's 2020 presidential election.



Law Forward Inc.
P.O. Box 326
Madison, WI 53703-0326

the ward level, then at the municipal level, then at the county level, and finally statewide. All counts confirmed Biden and Harris as the winners of Wisconsin's statewide popular vote and therefore, under state law, the recipient of its ten votes in the Electoral College.

Notwithstanding the repeated confirmation of Wisconsin's results, the losing candidate and his allies continued to protest the validity of the election and finality of the result (both through a variety of increasingly attenuated legal filings and in the public eye). Wisconsin law makes clear that the statutory recount process is the exclusive vehicle for challenging the results of a presidential election. *See* Wis. Stat. § 9.01(11). In 2020, the losing candidate petitioned for such a recount (limited to Milwaukee and Dane Counties, per the candidate's decision). The recount was completed, slightly expanding the margin of victory for Biden and Harris in late November, 2020. The losing candidate sought judicial review of the recount results, and obtained expedited review both in a consolidated circuit court proceeding (as envisioned by Wis. Stat. § 9.01(6)-(8)) and in an expedited appeal to the Wisconsin Supreme Court. On the morning of December 14, the Supreme Court affirmed the circuit court's wholesale rejection of the losing candidate's recount challenge to certain ballots in Wisconsin. *Trump v. Biden*, 2020 WI 91, 394 Wis. 2d 629, 951 N.W.2d 568.

**The 2020 Electoral College & Presidential Electors**

Later that day, at noon, Wisconsin's Governor welcomed a group of people to the State Capitol. Governor Evers and the nine other duly elected presidential electors pledged to then-President-Elect Joseph R. Biden, Jr., and then-Vice President-Elect Kamala D. Harris convened under the authority, and the obligation, conferred by Wis. Stat. § 7.75(1) and 3 U.S.C. § 7 after they won Wisconsin's statewide November 2020 election. During an open meeting livestreamed by Wisconsin Eye, the electors conducted the business prescribed by state and federal law: cast and counted the necessary ballots, signed the necessary papers, and sent valid, official documents reflecting the lawful disposition of Wisconsin's 10 electoral votes to the President of the United States Senate, the Wisconsin Secretary of State, the Archivist of the United States, and the Chief Judge of the United States District Court for the Western District of Wisconsin. By these actions, the Governor and his fellow presidential electors vindicated the requirements of Wisconsin law, carried out the wishes of Wisconsin's electorate, and advanced American democracy through the lawful, peaceful transition of power that is the hallmark of our country.

However, while the Governor and his counterparts were convening, a separate group of individuals surreptitiously gathered elsewhere in the Wisconsin State Capitol. They executed a competing set of documents purporting to cast Wisconsin's 10 electoral votes for candidates who lost Wisconsin's statewide popular election and therefore had no legal entitlement to those electoral votes. They did so without advance notice, public access, or media attention. After their meeting, these individuals transmitted the fraudulent documents they had created to the President of the United States Senate, the Wisconsin Secretary of State, the Archivist of the United States, and the Chief Judge of the United States District Court for the Western District of Wisconsin.

These fraudulent electors acted without any legal mandate whatsoever, improperly seizing the public office of presidential elector for the state of Wisconsin despite not being elected. They acted with the intention that the



Law Forward Inc.
P.O. Box 326
Madison, WI 53703-0326

false documents they produced be received as valid documentation for the purpose of inducing the United States Congress to credit the wrong candidates with having earned Wisconsin's 10 electoral votes. The fraudulent electors seized office and met in a concerted effort to ensure that they would be accepted, as a result of their deliberate forgery and fraud, as Wisconsin's legitimate presidential electors chosen by the mechanism prescribed under the United States Constitution and Wisconsin law. Through these actions, the fraudulent electors sought to undermine the November 2020 presidential election, and achieve through fraud a result that their chosen candidates had been unable to secure through a fair, free election or a bevy of meritless post-election lawsuits challenging the results of the vote.

By the time the Electoral College—both the proper meeting and the fraudulent gathering of the fraudulent electors—convened on December 14, 2020, the outcome of the election, and the identity of Wisconsin's 10 electors, had been fully adjudicated and was no longer subject to doubt. No action by any court left the result of Wisconsin's election in question, and no legal authority suggested the fraudulent electors might properly convene and act as they did, purporting to cast Wisconsin's 10 Electoral College votes for candidates who were not chosen by Wisconsin voters and not entitled to the state's electoral votes under law.

**In light of the finality of Wisconsin's election results, there was no reasonable question at noon on December 14, 2020, about who, under Wisconsin law, were the state's duly elected presidential electors.**

Nevertheless, the fraudulent electors met, improperly presuming to act as public officers and purporting to cast the state of Wisconsin's electoral votes for candidates the people had not chosen. They purported to have the power to fill a purported vacancy in the Electoral College that they deemed to have arisen when one of the fraudulent electors failed to attend their sham meeting. They falsely claimed to be "the duly elected and qualified Electors for President and Vice President of the United States of America from the State of Wisconsin." They declared that they had met "to perform the duties enjoined upon us," even though the only obligation they had under the Wisconsin Statutes was *not to meet* given that the candidates to whom they were pledged had not won Wisconsin's election. They each signed their names to "certify" that Wisconsin's 10 electoral votes were cast for Donald J. Trump and Michael R. Pence, even though they knew that was not true. And they conveyed these fraudulent documents, based on false pretenses, to several federal and state officials as "Wisconsin's Electoral Votes for President and Vice President."

Upon information and belief, each of the fraudulent electors signed six duplicate original documents they would later hold out as genuine certificates of the vote from the state of Wisconsin, recording the results of their votes and bearing each fraudulent elector's signature. Upon information and belief, they then mailed copies of these fraudulent documents to the President of the United States Senate, Wisconsin's Secretary of State, the Archivist of the United States, and the Chief Judge of the United States District Court for the Western District of Wisconsin. In short, upon information and belief, the fraudulent electors took every possible action to pantomime the procedures prescribed in 3 U.S.C. §§ 7–11, and thereby to create the illusion that they were acting under color of law as Wisconsin's true presidential electors, even as they cast votes contrary to the will of the voters and the designated votes required by law to reflect the election results.



Law Forward Inc.
P.O. Box 326
Madison, WI 53703-0326

The only way to ensure these attempts do not recur—and even become a routine part of our presidential election cycle—is to hold the fraudulent electors accountable. We therefore request that your office promptly initiate a quo warranto action against these 10 individuals.

Thank you in advance for your prompt attention to this matter.

Sincerely,

Jeffrey A. Mandell                    Mel Barnes

# EXHIBIT I



**STATE OF WISCONSIN
DEPARTMENT OF JUSTICE**

**Josh Kaul**
**Attorney General**

Room 114 East, State Capitol
PO Box 7857
Madison WI 53707-7857
(608) 266-1221
TTY 1-800-947-3529

May 6, 2022

SENT VIA EMAIL

Jeffrey A. Mandell
Mel Barnes
Law Forward Inc.
P.O. Box 326
Madison, WI 53703-0326

    Re:    Request for *Quo Warranto* Action

Dear Jeff and Mel:

    We received your letter dated April 22, 2022, requesting that the Wisconsin Department of Justice (DOJ) initiate a *quo warranto* action pursuant to Wis. Stat. § 784.04. As Joe Biden and Kamala Harris were correctly certified as the winners of the 2020 election for President and Vice President in Wisconsin, the electors assigned for those candidates fulfilled their duties, and Congress properly certified Wisconsin's electoral votes, DOJ will not be initiating a *quo warranto* action regarding this matter.

    Sincerely,

Eric J. Wilson
Deputy Attorney General