IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KHARY PENEBAKER,
MARY ARNOLD, and
BONNIE JOSEPH,

      Plaintiffs,

v.                                                   Case No. 3:22-cv-00334

ANDREW HITT, ROBERT F. SPINDELL, JR.,
BILL FEEHAN, KELLY RUH,
CAROL BRUNNER, EDWARD SCOTT GRABINS,
KATHY KIERNAN, DARRYL CARLSON,
PAM TRAVIS, MARY BUESTRIN,
JAMES R. TROUPIS and KENNETH CHESEBRO,

      Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................3

BACKGROUND .....................................................................................................................5

   I.   Factual and Legal Background ........................................................................5

   II.   Democrat Party's Competing Slate of Electors in 1960. ................................10

   III.   Prior WEC Dismissal of Complaint Against the Alternate Elector Defendants. .............12

STANDARD OF REVIEW ...................................................................................................14

ARGUMENT ........................................................................................................................15

   I.   Plaintiffs Fail to Allege Sufficient Facts to Show a Right to Relief and, Therefore, the Complaint Must be Dismissed. ...................................................15

   II.   There is No Cause of Action Under Article I, Section 9 of the Wisconsin Constitution. .18

   III.   The Public Nuisance Claims Fail as a Matter of Law. ...................................21

   IV.   There is No Separate Cause of Action for Punitive Damages. ........................24

   V.   Plaintiffs' Vague and Conclusory Allegations of Conspiracy Fail as a Matter of Law. ....24

      A)   Plaintiffs' conclusory allegations of a civil conspiracy fail to state a claim. ..............24

      B)   Plaintiffs' conspiracy claims fail to satisfy the heightened pleading requirements of Fed. R. Civ. Pro. 9(b). ...................................................26

   VI.   Plaintiffs' Quo Warranto Claim Fails as a Matter of Law. ..............................29

      A)   The Plaintiffs are not "public officers." ..........................................29

      B)   The Plaintiffs fail to allege facts of "usurpation" as required by Wis. Stat. § 784.04 and fail to allege any injury. ...................................................30

      C)   The Quo Warranto claim is moot. ..................................................31

CONCLUSION .....................................................................................................................31

CERTIFICATE OF SERVICE .............................................................................................33

**INTRODUCTION**

Plaintiffs' Complaint is nothing more than a further attempt to seek political retribution, grab headlines, and further smear the names of the Defendants.   It is a further attempt because counsel for Plaintiffs already brought claims of election violations before the Wisconsin Elections Commission (the "WEC"), rooted in the same allegations and facts, against the same Defendants Andrew Hitt, Robert F. Spindell, Jr., Bill Feehan, Kelly Ruh, Carol Brunner, Edward Scott Grabins, Kathy Kiernan, Darryl Carlson, Pam Travis, and Mary Buestrin (the "Alternate Elector Defendants").[1] WEC unanimously denied and dismissed those claims based on the Wisconsin Department of Justice's recommendation that the Alternate Elector Defendants violated no Wisconsin election laws when they met on December 14, 2020 at the State Capitol to cast their alternate votes for the President and Vice President of the United States (an action taken in order to preserve those votes in the event any pending court challenge might affect the election results—court challenges that resolved in early 2021).

In addition to the fact that Defendants violated no laws on December 14, 2020, Plaintiffs' Complaint lacks sufficient factual allegations to state a plausible claim for relief.  The Complaint recites conclusory allegations—many of which have nothing to do with the Alternate Elector Defendants—and theoretical or speculative harm to voters and citizens, but contains no allegation that any Defendants did anything that would entitle Plaintiffs to any remedy under the law.  Rather, Plaintiffs allege that, despite anything the Alternate Elector Defendants did: the Plaintiffs voted, their votes counted, and their candidates—Joseph R. Biden and Kamala Harris—won the presidential election in 2020.

---

[1] As described further below, Attorney Mandell and Attorney Barnes represented Paul Sickel and the SEIU against the Alternate Elector Defendants in 2021 EL 2021-13.

Similar to the prior case before WEC, the Plaintiffs advance the baseless allegations that the Alternate Elector Defendants were "false" electors, committed crimes or conspired to commit crimes. But the Alternate Elector Defendants' conduct complied with Wisconsin and Federal law, which expressly allows, and sets forth procedures, for Congress to determine between competing electoral slates. Indeed, the very Wisconsin statutes that Plaintiffs contend were violated unequivocally demonstrate that the Alternate Elector Defendants were acting in accordance with those statutes.

Furthermore, as proceedings before WEC also showed, this lawful strategy to preserve electoral votes by casting a competing slate of electoral votes, is not new. Rather, it follows precedent as recent as 1960—when the Democratic Party in Hawaii held a meeting of alternate electors, voted for a candidate different from the initial election results, and submitted the competing slate of electors to Congress. *Congressional Record*, 87th Cong, 1st sess., 1961. vol. 107, pt. 1; Lewis Deschler, *Deschler's Precedents of the United States House of Representatives*, vol. 3, ch. 10, §§ 1.2, 3.5 (1994); *Bush v. Gore,* 531 U.S. 98, 128, 121 S. Ct. 525, 542 (2000); Tuttle, Daniel W, *The 1960 Election in Hawaii*, The Western Political Quarterly, vol. 14, no. 1, 1961, pp. 331–338; William Josephson, Beverly Ross, *Repairing The Electoral College*, Journal of Legislation, vol. 11, no. 145, p. 166, n.154 (1996). As such, Plaintiffs' contention that the Defendants' lawful actions were somehow fraudulent, illegal, or a public nuisance are not only specious, but continuing to advance such continued baseless assertions of fraud or forgery are intended to harass Defendants, mislead and confuse the public about our electoral process, and further fan the flames of political discontent and divisiveness.

4

## BACKGROUND

### I.      Factual and Legal Background.

The 2020 presidential election took place on November 3, 2020. (Compl. ¶ 56).

Following the November 3, 2020 election, WEC declared Joseph R. Biden and Senator Kamala

D. Harris the unofficial winners of the Presidential Election in Wisconsin.  (Compl. ¶ 65).  *See*

*also* WEC, Unofficial Results for the November 3, 2020 General Election, *available at*

https://elections.wi.gov/node/7234 (with a link to the unofficial "WI Election Results 2020 by

County" and showing Biden/Harris receiving 1,630,673 and Trump/Pence receiving 1,610,065).

Thereafter, a verified Recount Petition was filed by Donald J. Trump and Michael R. Pence on

November 18, 2020, and WEC entered an Order the following day directing the requested

recount of Dane and Milwaukee Counties, which commenced shortly thereafter.  (Compl. ¶ 66).

*See also In the Matter of: A Recount of the General Election for President of the United States*

*Held on November 3, 2020*, WEC – Order for Recount (Recount EL 20-01), *available at*

https://elections.wi.gov/sites/elections.wi.gov/files/2020-11/WEC%20-

%20Final%20Recount%20Order.pdf.  WEC released the final results of the Recount and

statewide canvass on Monday, November 30, 2020, determining Joseph R. Biden and Senator

Kamala D. Harris as the winners.  (Compl. ¶¶ 67- 68).  *See also* The WEC, Signed Canvass for

President – Vice President, *available at* https://elections.wi.gov/sites/elections.wi.gov/files/2020-

11/Jacobs%20-%20Signed%20Canvass%20for%20President%20-%20Vice%20President.pdf.

An appeal was taken contesting the results of the Recount and asserting related legal

challenges.  (Compl. ¶¶ 70-71).  *See e.g. Donald J. Trump et al. v. Joseph R. Biden et al.,*

Milwaukee County Case No. 20-CV-7092, *available at*

https://wcca.wicourts.gov/caseDetail.html?caseNo=2020CV007092&countyNo=40&index=0

(the "State Court Challenge").  The Wisconsin Supreme Court upheld the Recount results on December 14, 2020.  *Donald J. Trump et al. v. Joseph R. Biden*, 2020 WI 91, 394 Wis. 2d 629, 951 N.W.2d 568, *cert. denied,* No. 20-882, 2021 WL 666465 (U.S. Feb. 22, 2021).  Thereafter, Donald J. Trump sought review from the U.S. Supreme Court, which denied the petition for a writ of certiorari on February 22, 2021, concluding the matter.  Supreme Court of the United States, Case Docket No. 20-882, available at:

https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-882.html.

Additionally, a federal lawsuit challenging the election results in Wisconsin was filed in the Eastern District of Wisconsin on December 2, 2020.  *See Donald J. Trump et al. v. The Wisconsin Elections Commission et al.,* E.D. Wis. 2:20-CV-01785-BHL.  The district court dismissed the case on December 12, 2020, and the U.S. Court of Appeals for the Seventh Circuit upheld the dismissal on December 24, 2020.  *Trump v. Wisconsin Elections Comm'n*, 983 F.3d 919, 922 (7th Cir. 2020), *cert. denied sub nom. Trump v. WI Elections Comm'n*, No. 20-883, 2021 WL 850635 (U.S. Mar. 8, 2021).  That case concluded when the U.S. Supreme Court denied the petition for a writ of certiorari on March 8, 2021.  Supreme Court of the United States, Case Docket No. 20-883, available at:

https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-883.html.

With these legal challenges pending, the Alternate Elector Defendants, who were nominated to act as presidential electors pursuant to Wis. Stats. § 8.18, met on December 14, 2020, at the Wisconsin State Capital at noon to perform their duties pursuant to Wis. Stats. § 7.75(1) and (2).  (Compl. ¶¶ 59, 62, 101, and Ex. G).  The meeting of the electors preserved their

electoral votes should a court decision change the Wisconsin election results.  The meeting was no secret and thoroughly explained, among other publications, in the Emergency Petition to Bypass the Court of Appeals filed with the Wisconsin Supreme Court on December 11, 2020 (Appeal No. 20-AP-2038), as part of the State Court Challenge:

> Following the recommended approach to situations involving court challenges in Presidential elections which are not resolved by the time the Presidential electors must cast their votes pursuant to Art. II, § 1, cl. 4, and 3 U.S.C. § 7 (this year, December 14), the Trump-Pence Campaign has requested its electors to sign and send to Washington on that date their votes, to ensure that their votes will count on January 6 if there is a later determination that they are the duly appointed electors for Wisconsin.
>
> This practice dates back at least as far as 1960, when the Kennedy electors in Hawaii voted on the date the Electoral College met, even though on that date the Nixon electors had been ascertained by the acting Governor to have won the state; only after further litigation were the votes of the Kennedy electors approved and ultimately counted in Congress.  *See, e.g.*, Vasan Kesavan, *Is the Electoral Count Act Unconstitutional?*, 80 N. Car. L. Rev. 1654, 1691-92 (2002).  *See also* Michael L. Rosin & Jason Harrow, "How to Decide a Very Close Election for Presidential Electors: Part 2," Take Care Blog, Oct. 23, 2020 (https://takecareblog.com/blog/how-to-decide-a-very-close-election-for-presidential-electors-part-2) (visited Dec. 9, 2020) (concluding that if "a state wants to have its electoral votes counted, but which presidential electors were appointed by the voters on election day remains uncertain . . . there is only one possible solution:  both potentially-winning slates of electors should cast electoral votes on the day required while the recount continues").

*Trump et al. v. Biden et al*., Emergency Petition to Bypass Court of Appeals at 8, n.3, 20-AP-2038, *available at* https://www.wispolitics.com/wp-content/uploads/2020/12/2020AP2038-Trump-petition-for-bypass-12-11-20.pdf (Dec. 11, 2020).  Both WEC and the Chairperson of the WEC, Ann S. Jacobs, were parties to those proceedings, represented by attorneys from the Wisconsin Department of Justice.  *See* Wisconsin Court System, *Trump et al. v. Joseph R. Biden et al.,* Summary, *available at* https://wscca.wicourts.gov/caseDetails.do?caseNo=2020AP002038&cacheId=A02D000680ABC5B61E6ECAACBC3EFC5B&recordCount=3&offset=0.

As mentioned, federal law expressly authorizes such competing or alternate slates of electors.  For example, 3 U.S.C. § 6 provides that, although the initial results may declare one presidential candidate a victor, an initial certificate of ascertainment is not conclusive, and a State must provide a final certificate of determination after determination of a contested election:

> It shall be the duty of the executive of each State, as soon as practicable after the conclusion of the appointment of the electors in such State by the final ascertainment, under and in pursuance of the laws of such State providing for such ascertainment, to communicate by registered mail under the seal of the State to the Archivist of the United States a certificate of such ascertainment of the electors appointed, setting forth the names of such electors and the canvass or other ascertainment under the laws of such State of the number of votes given or cast for each person for whose appointment any and all votes have been given or cast; . . . and if there shall have been any final determination in a State in the manner provided for by law of a controversy or contest concerning the appointment of all or any of the electors of such State, it shall be the duty of the executive of such State, as soon as practicable after such determination, to communicate under the seal of the State to the Archivist of the United States a certificate of such determination in form and manner as the same shall have been made; . . ..

3 U.S.C. § 6.  As U.S. District Judge Brett H. Ludwig explained on December 12, 2020:

> The final determination of the next President and Vice President of the United States has not been made, however, and the issuance of a Certificate of Ascertainment is not necessarily dispositive on a state's electoral votes. . . . Under the federal statute governing the counting of electoral votes, a state governor may issue a certificate of ascertainment based on the canvassing and then a subsequent certificate of "determination" upon the conclusion of all election challenges.  3 U.S.C. § 6.  The certificate of "determination" notifies the U.S. Congress of the state decision when Congress convenes on January 6 to count the electoral votes.

*Trump v. Wisconsin Elections Comm'n et al.*, No. 20-CV-1785-BHL, 2020 WL 7318940, at *9 (E.D. Wis. Dec. 12, 2020), *aff'd,* 983 F.3d 919 (7th Cir. 2020) (internal citation omitted) (*see also* Goehre Aff. ¶ 3, Ex. B).  On appeal, the 7th Circuit concurred, noting that a court decision issued after the initial certification of the election results "would provide the opportunity for the appointment of a new slate of electors."  *Trump v. Wisconsin Elections Comm'n*, 983 F.3d 919,

8

925 (7th Cir. 2020), *cert. denied sub nom. Trump v. WI Elections Comm'n*, No. 20-883, 2021 WL 850635 (U.S. Mar. 8, 2021).

However, for a final certificate of determination to be effective, there must exist votes submitted to Congress of the electors who met on December 14, 2020 for their party's candidates for President and Vice President, in accordance with 3 U.S.C. § 11, since it is the count of "electoral votes," not certifications, that ultimately determine the next President and Vice President.  3 U.S.C. § 15.  Indeed, 3 U.S.C. § 15 sets forth clear procedures for handling such a situation where competing slates of electoral votes exist:

> [A]nd in such case of more than one return or paper purporting to be a return from a State, if there shall have been no such determination of the question in the State aforesaid, then those votes, and those only, shall be counted which the two Houses shall concurrently decide were cast by lawful electors appointed in accordance with the laws of the State, unless the two Houses, acting separately, shall concurrently decide such votes not to be the lawful votes of the legally appointed electors of such State.  But if the two Houses shall disagree in respect of the counting of such votes, then, and in that case, the votes of the electors whose appointment shall have been certified by the executive of the State, under the seal thereof, shall be counted.  When the two Houses have voted, they shall immediately again meet, and the presiding officer shall then announce the decision of the questions submitted.

3 U.S.C. § 15. With no court decision changing the election outcome, Congress properly applied 3 U.S.C. § 15 and counted the electoral votes submitted by the Democrat presidential electors on January 6, 2021.

Pursuant to their statutory duty, all of the Alternate Elector Defendants voted "for that person for president and that person for vice president who are, respectively, the candidates of the political party which nominated them under s. 8.18," Donald J. Trump and Michael R. Pence. Wis. Stats. § 7.75(2); 3 U.S.C. § 7.  Thereafter, the Alternate Elector Defendants submitted their electoral votes pursuant to, among others, the President of the United States Senate. 3 U.S.C. § 11; U.S. Const. Art. II, § 1, cl. 2-4.  As such, if the Alternate Elector Defendants did not meet on

December 14, 2020 to preserve their votes and thereafter submit their electoral votes, there would be nothing for Congress to count or consider—regardless of whether a court decision may have changed the election results after their meeting on December 14th. [2]   3 U.S.C. § 15.

Plaintiffs mention none of this.  Instead, they only allege that they voted in the 2020 presidential election in Wisconsin and their candidates won. (Compl. ¶¶ 1-3).  Plaintiffs Penebaker and Arnold also allege that they served as presidential electors for the Democrat party for the State of Wisconsin in the 2020 presidential election. (Compl. ¶¶ 1-2, 60, 74-76). Plaintiffs Penebaker and Arnold allege that, as presidential electors for the Democrat party, they voted for President Joseph R. Biden on December 14, 2020 and submitted their votes to, among others, the President of the United States Senate. (*Id.* ¶76).

## II.    Democrat Party's Competing Slate of Electors in 1960.

The precedent for a competing slate of electors dates back to at least 1960 in Hawaii, when the Democratic Party held a meeting of alternate electors, voted for a candidate different from the initial election results, and thereafter sent the competing votes to Congress. *Congressional Record*, 87th Cong, 1st sess., 1961. vol. 107, pt. 1; Lewis Deschler, *Deschler's Precedents of the United States House of Representatives*, vol. 3, ch. 10, §§ 1.2, 3.5 (1994); *Bush v. Gore,* 531 U.S. 98, 128, 121 S. Ct. 525, 542 (2000); Tuttle, Daniel W, *The 1960 Election in Hawaii*, The Western Political Quarterly, vol. 14, no. 1, 1961, pp. 331–338; William Josephson,

---

[2] Preserving the Alternate Elector Defendants' electoral votes by the statutory deadline was of the utmost importance—as was indicated by recent decisions by the Wisconsin Supreme Court.  *Trump v. Biden*, 2020 WI 91, ¶ 22, 394 Wis. 2d 629, 951 N.W.2d 568, 576, *cert. denied,* No. 20-882, 2021 WL 666465 (U.S. Feb. 22, 2021) (explaining, in part, that a delay of a matter of weeks "in light of these specific challenges is unreasonable."); *Hawkins v. Wisconsin Elections Comm'n*, 2020 WI 75, ¶ 9, 393 Wis. 2d 629, 635, 948 N.W.2d 877, 880 (declining to exercise original jurisdiction due to the lack of sufficient time and noting that the court "does not have even a 'precious little' amount of time to reach a decision and potentially grant any form of relief that would be feasible"); *West v. Wisconsin Elections Comm'n*, No. 20-C-1348, 2020 WL 5253844, at *1 (E.D. Wis. Sept. 3, 2020) (WEC denied the application of Kanye West and Michelle Tidball to have their names appear as candidates for President and Vice President because their nominating papers were delivered approximately 14 seconds after the statutory deadline.)

Beverly Ross, *Repairing The Electoral College*, Journal of Legislation, vol. 11, no. 145, p. 166, n.154 (1996).  In particular, the 1960 Presidential Election results in Hawaii initially showed that the Republican Party candidate, Richard Nixon, beat the Democratic Party candidate John F. Kennedy by 141 votes. 107 Cong. Rec. 288-290 (Jan. 6, 1961); *see also* Hon. Patsy T. Mink Remarks, 146 Cong. Rec. E2179-02, 146 Cong. Rec. E2179-02, E2179, 2000 WL 1826246 (Dec. 13, 2000).  Thereafter, on November 28, 1960, the Governor of Hawaii issued a certificate of ascertainment to the Republican slate of electors, but the Democrats challenged the results through a recount that began on December 13, 1960.  As required by law, the Republican electors met on December 19, 1960 and voted for the Republican Party's candidates, but so too did the Democrat electors in order to preserve their electoral votes in the event the pending legal challenge changed the outcome.  Both the Republican electors and the alternate Democrat electors in Hawaii submitted their electoral votes to Congress following their respective meetings.[3]

As noted by Representative Mink of Hawaii in 2000, the 1960 Hawaii "precedent" set by the Democratic Party sets forth the means for preserving and resolving such electoral disputes. 146 Cong. Rec. at E2180, 2000 WL 1826246.  In fact, just a day prior to Representative Mink's remarks, U.S. Supreme Court Justice Stevens highlighted, with approval, the use of alternate slates of electors in the 1960 Hawaii Presidential Election:

---

[3] Ultimately, the court challenge overturned the initial results and declared John F. Kennedy the winner of the Presidential Election in Hawaii. 107 Cong. Rec. at 289-290 (Jan. 6, 1961). When Congress met on January 6, 1961, as required by 3 U.S.C. § 15, it had before it three different sets of results from Hawaii:  (1) the certificate from the Republican electors casting their votes for the Republican Party's candidates dated December 19, 1960, which was accompanied by the certificate of ascertainment from the Governor; (2) the alternate slate of electors from the Democratic Party electors casting their votes for the Democratic Party's candidates dated December 19, 1960 (from the alternate meeting of electors and with no certification from the Governor); and (3) a certificate of determination from the Governor of Hawaii dated January 4, 1961 in favor of the Democratic electors in accordance with the judgment of the court, along with a copy of the court's decision.  *Id.*  Applying the procedure for determining such disputes, Vice President Nixon, as the presiding officer, determined that the January 4, 1961 determination in favor of the Democratic electors, following the court judgment indicating the same and the second certificate from the Governor of Hawaii, should be considered the lawful electors.  *Id.*

But, as I have already noted, those provisions merely provide rules of decision for Congress to follow when selecting among conflicting slates of electors. *Supra,* at 540. They do not prohibit a State from counting what the majority concedes to be legal votes until a bona fide winner is determined. Indeed, in 1960, Hawaii appointed two slates of electors and Congress chose to count the one appointed on January 4, 1961, well after the Title 3 deadlines.

*Bush v. Gore*, 531 U.S. 98, 127, 121 S. Ct. 525, 541, 148 L. Ed. 2d 388 (2000) (J. Stevens, dissenting). *See also* 151 Cong. Rec. H84-06, 151 Cong. Rec. H84-06, H91, 2005 WL 27020 (Jan. 6, 2005) (noting the potential for "two slates of electors . . . presented to Congress from the same State."). The 1960 precedent set by the Democrats is no different from the actions of the Alternate Elector Defendants in 2020, both were lawful, proper, and necessary to preserve their electoral votes.

### III.    Prior WEC Dismissal of Complaint Against the Alternate Elector Defendants.

Pursuant to Wisconsin law, WEC has exclusive authority to initiate any civil actions related to violations of Wisconsin's election code (Chs. 5-10 and 12). Wis. Stats. § 5.05(2m)(k). Shortly after the 2020 presidential election, the Plaintiffs' attorneys filed a similar complaint before WEC against the Alternate Elector Defendants on behalf of Paul Sickel and the SEIU. (Compl. at 5, n. 8). *See Sickel v. Hitt, et al.,* 2021 EL 2021-13 (March 15, 2022), available at https://www.wispolitics.com/wp-content/uploads/2022/03/220315Ruling.pdf.[4] Comprised of three Democrat appointed Commissioners and three Republican appointed Commissioners, the bipartisan agency dismissed that complaint by a unanimous vote. *Id.*

The unanimous decision incorporated by reference a memorandum provided by the Wisconsin Department of Justice, which was charged with investigating that complaint. *Sickel v. Hitt, et al.,* 2021 EL 21-13, WI DOJ Memorandum (February 9, 2022), available at

---

[4] This Court may also take judicial notice of matters of public record—such as court documents—without converting a motion based on the pleadings into a motion for summary judgment. Fed. R. Evid. 201. *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (allowing judicial notice of public court documents on a 12(b)(6) motion to dismiss).

https://www.wispolitics.com/wp-content/uploads/2022/03/220315Memo.pdf (the February 9,

2022 WI DOJ Memorandum and the March 15, 2022 letter from WEC dismissing the complaint

is referred to as the "WEC Decision").  As noted in the WEC Decision, Sickel and SEIU alleged

in that proceeding that the Alternate Elector Defendants acted fraudulently and "violated

Wisconsin Statutes sections 7.75 and 5.10" when they met on December 14, 2020 at the State

Capitol and submitted their votes thereafter pursuant to 3 U.S.C. § 11. *Id.* at 3.  WEC adopted

findings based on publicly available information that, as of December 14, 2020, legal challenges

related to the Wisconsin election results were still pending:

> [S]everal election-related lawsuits were pending in both state and federal court, including
> challenges to the results. These lawsuits were not finally concluded until February and
> March 2021, when the U.S. Supreme Court denied certiorari review in both cases. As of
> December 14, 2020, the recount results had been upheld but appeals, or appeal
> opportunities, remained.

*Id.* at 4 (internal citations omitted). It also found that, besides the bypass petition filed with the

Wisconsin Supreme Court, other public statements by the Alternate Elector Defendants indicated

that they would meet on December 14:

> In a social media post, Respondent Feehan indicated that the Trump and Pence
> electoral college votes were "[j]ust keeping our legal options open." (Compl. Ex.
> H.) The Republican Party of Wisconsin, via Respondent Hitt, stated: "While
> President Trump's campaign continues to pursue legal options for Wisconsin,
> Republican electors met today in accordance with statutory guidelines to preserve
> our role in the electoral process with the final outcome still pending in the courts."
> (Compl. Ex. I.)

*Id.* at 5.  WEC concluded that "Wisconsin law does not prohibit an alternative set of electors

from meeting" and that "Federal law and Supreme Court commentary contemplate the possibility

of multiple slates of electors."  *Id.* at 8, 10 (citing 3 U.S.C. §§5, 15 and *Bush v. Gore,* 531 U.S.

98, 127, 121 S. Ct. 525 (2000) (J. Stevens, dissenting)).

Lastly, the WEC Decision rejected any notion that the Alternate Elector Defendants conspired to commit fraud:

> Finally, Complainants argue that the Respondents "met in a concerted effort to ensure that they would be mistaken, as a result of their deliberate forgery and fraud, for Wisconsin's legitimate Presidential Electors." (Compl. 25.) The record does not support this allegation. Before and after the December 14 meeting, the Respondents publicly stated, including in court pleadings, that they were meeting to preserve legal options while litigation was pending.

*Id.* at 10.

Despite WEC's Decision, corroborated by the Wisconsin Department of Justice, Plaintiffs continue to allege that the Alternate Elector Defendants acted unlawfully on December 14, 2020 and, in doing so, conspired to violate Wisconsin's election laws, public nuisance laws, and criminal statutes. (*See generally* Compl.). They add that they requested the Wisconsin Attorney General to sue the Alternate Elector Defendants and that the Attorney General declined. (Compl. ¶¶ 261-262, Exs. H and I).

## STANDARD OF REVIEW

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* It requires more than pleading facts "that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). It requires more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original). And, since courts need not accept as true asserted legal

conclusions, it requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *see also id.* at 678-79. As the Supreme Court noted: Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

## ARGUMENT

I.      **Plaintiffs Fail to Allege Sufficient Facts to Show a Right to Relief and, Therefore, the Complaint Must be Dismissed.**

Plaintiff's Complaint consists of 55 pages of unsubstantiated, irrelevant, and misleading assertions and conclusions. Indeed, the first five pages of the Complaint contain a long-winded introduction more appropriate to a fiction novel. While it is certainly unusual for a Complaint to contain such a passage, it is less surprising for a suit likely initiated in hopes of garnering media attention rather than asserting viable claims for actual harm to the Plaintiffs due to wrongful conduct by Defendants. In fact, the Complaint contains only conclusory allegations and, moreover, confirms that these Plaintiffs have failed to state a claim for relief. *Twombly*, 550 U.S. at 555 (2007)(A complaint must contain factual allegations showing that the plaintiff is entitled to relief, and those "allegations must be enough to raise the right to relief above the speculative level.")

Ignoring their pleading requirements, Plaintiffs assert, at best, hypothetical, speculative, and conclusory allegations. In fact, the Complaint irrefutably establishes that the electoral process employed by the Alternate Elector Defendants, as set forth in Wisconsin and Federal law, was in compliance with applicable law. Wis. Stats. §§ 8.18, 7.75; 3 U.S.C. §§ 7, 11, and 15. *See Bush v. Gore*, 531 U.S. 98, 127, 121 S. Ct. 525, 541, 148 L. Ed. 2d 388 (2000) (J. Stevens, dissenting); 107 Cong. Rec. at 289-290 (Jan. 6, 1961)(1960 competing slate of electors by

Democrat party).  Moreover, the Alternate Elector Defendants were expressly authorized and

required to meet at the State Capitol on December 14, 2020 pursuant to Wisconsin law. Wis.

Stats. § 7.75(1) ("The electors for president and vice president shall meet at the state capitol

following the presidential election at 12:00 noon the first Monday after the 2nd Wednesday in

December.")  The Court does not accept such assertions of law in the Complaint as true for

purposes of this motion and should reject any assertion contrary to the express requirements of

Federal and Wisconsin law. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Additionally, it is important to note the obvious—Plaintiffs' candidates, now President

Joseph R. Biden and Vice President Kamala Harris, were elected.  Plaintiff Penebaker and

Plaintiff Arnold, both of which voted in the 2020 election, did in fact cast their electoral votes on

December 14th as Democrat Party electors, their votes were accepted and counted by Congress,

and their candidate was elected to the office of the President of the United States. (Compl. ¶¶ 1-

2, 74-76). Plaintiff Joseph casted her vote on election day in November and her candidates were

elected as well.  (*Id*. ¶ 3).  Put simply, there is no basis under law to find the Alternate Elector

Defendants liable based on anything alleged in the Complaint.

Plaintiffs' suit also circumvents WEC's exclusive authority, at least in part, to determine

violations of Wisconsin's election code. WEC's power to initiate civil actions "shall be the

exclusive remedy for alleged civil violations of chs. 5 to 10 or 12." Wis. Stats. § 5.05(2m)(k).

First, as noted in the Complaint, WEC already determined that the Alternate Elector Defendants

did not violate the Wisconsin election code when they met on December 14th and submitted

alternate electoral votes to Congress.  (Compl. at 5, n. 8). The bi-partisan WEC voted 6-0 in

favor of dismissing that complaint with the recommendation of the Wisconsin Department of

Justice. *See Sickel v. Hitt, et al.,* 2021 EL 2021-13 (March 15, 2022), available at

https://www.wispolitics.com/wp-content/uploads/2022/03/220315Ruling.pdf; *Sickel v. Hitt, et al.,* 2021 EL 21-13, WI DOJ Memorandum (February 9, 2022), available at https://www.wispolitics.com/wp-content/uploads/2022/03/220315Memo.pdf.  Second, counsel for the Plaintiffs is the same attorney who represented the plaintiff before WEC, alleging the same statutory violations of the Wisconsin election code this Complaint alleges based on the same conduct this Complaint alleges.  Although required to do so, there is no allegation in the Complaint that Plaintiffs brought any of their claims before WEC prior to filing suit.  Fed. R. Civ. P. 9(c).  Disappointed by the agency decision and almost a year and a half after Defendants met on December 14, 2020, Plaintiffs resurrect the unfounded claims defying the exclusive procedure of WEC. Such maneuvering is, charitably put, improper and intended to harass Defendants, and should be swiftly rejected. *See also Nodell Inv. Corp. v. City of Glendale, Milwaukee Cnty.*, 78 Wis. 2d 416, 424, 254 N.W.2d 310 (1977) (deferring to an agency's exclusive authority "is a doctrine of judicial restraint which the legislature and the courts have evolved in drawing the boundary line between administrative and judicial spheres of activity.")

The Plaintiffs dedicate much of the Complaint to what Defendants or others non-parties to this suit (such as Donald J. Trump, Michael Pence, Michael Gableman, Robin Vos, Timothy Ramthun, etc.) might do in future elections and whether it violates election laws.[5] Such allegations have no impact on any claim for relief against the Alternate Elector Defendants. Furthermore, WEC has exclusive authority to determine what is lawful or unlawful under Wisconsin's election code and WEC has already determined that the alternate electors did not violate Wisconsin law. Second, any request for a declaration by this Court based on hypothetical

---

[5] Plaintiffs also spend several pages describing a "movement" to decertify the 2020 presidential election and efforts by individuals who are not parties in this lawsuit to decertify said election, and the harms that could follow in the future as a result. (Compl. ¶¶ 166-178).  To the extent that Plaintiffs believe that those other individuals have inflicted harm or could inflict harm, it has no bearing on any claim against Defendants.

future events in matters over which Wisconsin possesses exclusive authority over is an improper.

*Dyer v. Blair*, 390 F. Supp. 1291, 1309 (N.D. Ill. 1975) (declining to issue an advisory opinion

on an issue controlled by the state legislature).

For the reasons set forth above, as well as below, the Plaintiffs have failed to state a claim

for relief and their Complaint must be dismissed.

## II.   There is No Cause of Action Under Article I, Section 9 of the Wisconsin Constitution.

Plaintiffs allege that, "pursuant to Wis. Const. art. I, § 9," the Court should unilaterally

fashion a "remedy" in the event the Court does not award relief in connection with any other

claims set forth in the Complaint.  In other words, in furtherance of their quest for political

retribution, Plaintiffs ask the Court to become a "roving commission" and create its own relief in

order to sanction Defendants for conduct Plaintiffs believe was wrong. In doing so, Plaintiffs

disregard hundreds of years of jurisprudence, procedural rules, due process, and the separation of

powers, and the United States Supreme Court's express admonition against usurping such

powers. Such a request is not only unfounded, but deserves dismissal in the harshest terms.

Wis. Const. art. I, §9 provides:

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs
> which he may receive in his person, property, or character; he ought to obtain
> justice freely, and without being obliged to purchase it, completely and without
> denial, promptly and without delay, conformably to the laws.

Art. I, ¶§ 9 "merely guarantees to every litigant a day in court, and not a legal right or

cause of action. *Shanak v. City of Waupaca,* 185 Wis. 2d 568, 598, 518 N.W.2d 310. As such, it

provides a right to process when a litigant already has existing rights:

> In its recent interpretation of the provision, however, this court has stated that art.
> I, § 9 confers no legal rights.  Rather, art. I, § 9 applies only when a prospective
> litigant seeks a remedy for an already existing right. In *Makos,* Justice Bradley
> described this right as a "legislatively recognized right:" "The *Mulder* court

emphasized that its prior Wis. Const. art. I, § 9 analysis in *Kallas* stood for no more than the proposition that the 'remedy for wrongs' section might have 'possible application ... where a remedy is sought for a "legislatively *recognized right.*" ' "  The right-to-remedy clause thus preserves the right "to obtain justice on the basis of the law as it in fact exists."

***

The legislature formulates the statutory law of Wisconsin, pursuant to constitutional authority. The legislature's authority includes the power to define and limit causes of action and to abrogate common law on policy grounds.

This court itself has determined that sound public policy may justify limitations on liability.  In other words, we ourselves have placed limitations on people's rights to recover for personal injury in order to advance the overall interest of justice. Article I, §9 does not empower this court to substitute its views for legislative policy any more than art. I, §9 prevents this court from using sound policy to influence tort law.

*Aicher ex rel. LaBarge v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶¶ 43, 51, 237 Wis. 2d 99, 122–23, 613 N.W.2d 849, 863 (citations omitted). In *Aicher*, the court was tasked with determining whether Wis. art. I, §9 overrides time limitations for bringing a claim of medical malpractice that may otherwise bar access to the courts. The Wisconsin Supreme Court held that "[n]o right to remedy resides here because the legislature expressly chose not to recognize a right based on a claim discovered more than five years after the allegedly negligent act or omission." *Id.* ¶ 54 (Noting that "time limitation periods . . . are policy considerations better left to the legislative branch of government.")  That section generally grants authority to the courts to provide a remedy "[w]hen an adequate remedy or forum does not exist to resolve disputes or provide due process, the courts." *In re Paternity of John R. B.,* 2004 WI App 21, ¶ 17, 269 Wis. 2d 543, 674 N.W.2d 681 (internal quotation marks omitted). But art. I, § 9 "does not entitle Wisconsin litigants to the exact remedy they desire." *Wiener v. J. C. Penney Co.,* 65 Wis. 2d 139, 150, 222 N.W.2d 149 (1974); *Mayhugh v. State*, 2015 WI 77, ¶¶ 43-44, 364 Wis. 2d 208, 867 N.W.3d 754.

Case: 3:22-cv-00334-bbc   Document #: 6   Filed: 06/22/22   Page 20 of 33

Plaintiffs cite *Thomas ex. Rel. Gramling v. Mallet*, 2005 WI 129, 285 Wis. 2d 236, 701 N.W.2d 523 in their Complaint for the notion that this Court may ignore requests for relief in the Complaint in favor of fashioning its own cause of action and imposing relief it deems fit. (Compl. ¶ 288). First, courts have no power to make laws and then punish people for breaking them. That is the definition of tyranny. Unilateral judicial action strikes of the Star Chamber, and infringes upon the separation of powers, due process, and fundamental rules of pleading. Second, as noted above, Plaintiffs may seek relief through the WEC's exclusive administrative process, but strategically chose to disregard that exclusive process. Plaintiffs cannot avoid exclusive administrative process because they already know the outcome and then claim they have no remedy available. *Acharya v. AFSCME, Council 24, WSEU, AFL-CIO, Loc. No. 1*, 146 Wis. 2d 693, 700, 432 N.W.2d 140, 143 (Ct. App. 1988)(Art. I, § 9 "do[es] not entitle litigants to the precise remedy they may desire, but merely to their day in court" or before an administrative agency, such as "the WERC."); *see also In re Paternity of John R. B*., 2004 WI App 21, 269 Wis. 2d 543, N.W.2d 68 ([Plaintiff's] constitutional challenge is a nonstarter because the legislature provided both a procedure and a forum which accommodate his concerns.) *Wiener v. J. C. Penney Co.,* 65 Wis. 2d 139, 151, 222 N.W.2d 149 (1974)(Art. I, § 9 does not grant litigants "the exact remedy the desire" and, where litigants believe that "present procedures are inconvenient and unsuitable, the legislature is the proper forum in which to seek a change.") Third, Plaintiffs must also establish that they actually were harmed and, Art. I, § 9 provides no substitute for such failure. Wis. Art. I, § 9 (applicable when no remedy available for "injuries, or wrongs which he may receive in his person, property, or character"). In fact, *Gramling* involved a dispute over the recovery for a victim with serious and actual injuries from lead poisoning, and the court confirmed that Art. I, § 9 does "not create new rights," but, rather, it allows the courts to fashion

a remedy "through the existing common law." *Gramling*, 2005 WI 129, ¶ 129; *see also State v. Henley*, 2010 WI 97, ¶ 75, 328 Wis. 2d 544, 578–79, 787 N.W.2d 350, 367 ("The fair administration of justice is not a license for courts, unconstrained by express statutory authority, to do whatever they think is "fair" at any given point in time.)

In sum, Plaintiffs expressly ask the Court to fashion relief in the event "the Court disagrees" with the causes of actions set forth in its Complaint. That fundamental misreading of that section to confer law-making power upon the court ultimately ignores the history of the section:

> Article I, sec. 9 originated out of concerns that citizens not be forced to bribe public officials to get into court.  Accordingly, this article provides persons the right of access to the courts to obtain justice *based on the law as it exists*. Moreover, as James acknowledges, under Article I, sec. 9, the legislature has the right to impose reasonable limitations upon the remedies available to the parties.

*In re Paternity of James A.O.*, 182 Wis. 2d 166, 175, 513 N.W.2d 410, 413 (Ct. App. 1994)(internal citations omitted). As such, Plaintiffs' requests to fashion a claim or remedy must be rejected and this claim should be dismissed.

## III.    The Public Nuisance Claims Fail as a Matter of Law.

In conclusory fashion, Plaintiffs make vague allegations of a public nuisance, such as: "they cite the false assumption of the office of presidential elector"; improper use of public resources by meeting at the State Capitol on December 14; the "probability that Defendants. . .will inflict these injuries on Plaintiffs . . . in the future"; and future interference with their interest in their right to vote. (Compl.  ¶¶241-42, 249-53).  The Plaintiffs request that the Court enjoin these actions as a public nuisance as defined under Wis. Stat. §823.01 and Wis. Stats. §823.02.

21

Among a legion of specious assertions, this is perhaps the most specious.  Assertions of a public nuisance must at least allege facts showing "the impingement of public rights, rights that are common to all members of the public" and, moreover, allege facts to show that the harm resulting from the nuisance is "both (1) significant, and (2) different from the harm suffered by other members of the public exercising the common right that was the subject of the interference." *Bostco LLC v. Milwaukee Metro. Sewerage Dist.*, 2013 WI 78, ¶ 29, 350 Wis. 2d 554, 575, 835 N.W.2d 160, 171 (citing Restatement (Second) of Torts § 821C (1979)); Wis. Civil JI-1928 and 1932. The substantial interference must involve "the use of a public place or with the activities of an entire community." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, ¶ 21, 254 Wis. 2d 77, 102, 646 N.W.2d 777, 788. Lastly, it must also be shown through alleged facts that the Defendants' conduct, either negligent or intentional, caused the public nuisance and resulting harm. Wis. Civil JI-1928 and 1932.

Plaintiffs' Complaint fails to assert facts to satisfy any elements of a public nuisance. *Ashcroft v. Iqbal,* 556 U.S. at 678 (2009). There is no well pleaded allegation that the Alternate Elector Defendants did anything to interfere with anyone's public rights. Indeed, there is no suggestion that there was any interference with anyone's ability to vote—especially the Plaintiffs, who voted, elected their slate of electors, whose votes were certified and counted in Congress.[6] There is also no allegation that anything that the Alternate Defendants did in relation to their duties on December 14, 2020 unreasonably interfered with the use of a public place or with the activities or rights common to all members of the public. The Alternate Elector Defendants' presence in the State Capitol on December 14, 2020 is provided by law. Wis. Stats.

---

[6] As noted by WEC and the Wisconsin Dept. of Justice, Wisconsin statutes "say nothing about an alternative set of electors casting votes and do not expressly prohibit a slate of electors from casting votes to preserve their votes in case pending legal challenges prove successful." *Sickel v. Hitt, et al.,* 2021 EL 21-13, WI DOJ Memorandum (February 9, 2022), at 5, available at https://www.wispolitics.com/wp-content/uploads/2022/03/220315Memo.pdf.

§ 7.75(1)(the electors "shall meet at the state capitol"). Furthermore, the Complaint itself notes that the Alternate Elector Defendants did not reserve a room at the State Capitol and therefore could not have caused any resulting harm from their use. (Compl. ¶ 104 (alleging that the Wisconsin Senate Majority Leader authorized the use of the room)). Likewise, even assuming some unreasonable interference detriment to the general public, nothing alleged suggests that Plaintiffs suffered harm both significant and different from the harm suffered by the public, which is an express element of the claim.

A nuisance is nothing more than a particular type of harm suffered, and liability depends upon the existence of tortious acts that cause the harm. *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶ 25, 277 Wis. 2d 635, 691 N.W.2d 658. No public nuisance can exist based on lawful conduct, since it can never be "unreasonable" to comply with one's lawful duties. As noted above, everything that the Alternate Elector Defendants did on December 14, 2020 was lawful. Wis. Stats. §§ 5.10, 8.18, and 7.75; 3 U.S.C. §§ 11 and 15.

Lastly, this request, as it relates to hypothetical future scenarios and seeking injunctive relief, is moot since the Alternate Elector Defendants no longer hold such appointments from the Republican Party, the 2020 Presidential Election is over, and there is no basis to suggest that they will be presidential electors in 2024. "An issue is moot when its resolution will have no practical effect on the underlying controversy." *PRN Assocs. LLC*, 317 Wis. 2d 656, ¶ 25, 766 N.W.2d 559; *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 1023, 185 L. Ed. 2d 1 (2013) ("When the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" the case is moot). An issue is moot when it "seeks to determine an abstract question which does not rest upon existing facts or rights, or which seeks a judgment in a pretended controversy when in reality there is none, or one which seeks a decision in advance about a right

before it has actually been asserted or contested." *Matter of Commitment of J.W.K.*, 2019 WI 54, ¶ 11, 386 Wis. 2d 672, 683, 927 N.W.2d 509, 515. Regardless of whether Plaintiffs position their claims as backward- or forward-looking, the allegations fail to state a claim upon which relief can be granted.

## IV.    There is No Separate Cause of Action for Punitive Damages.

Although Plaintiffs pled punitive damages as a separate cause of action, a request for punitive damages is a request for a certain remedy, but it is not a separate cause of action. *Brown v. Maxey*, 124 Wis. 2d 426, 431, 369 N.W.2d 677, 680 (1985) ("[P]unitive damages are in the nature of a remedy and should not be confused with the concept of a cause of action.") Additionally, since the Alternate Elector Defendants acted lawfully and since all of the other claims asserted in the Complaint fail, so too does a request for punitive damages. The Complaint contains no allegation that any Defendant acted maliciously towards or acted in intentional disregard of the rights of any Plaintiff, the basic requirements of any punitive damage claim. Wis. Stat. § 895.043(3). As such, the claim for punitive damages should be dismissed.

## V.    Plaintiffs' Vague and Conclusory Allegations of Conspiracy Fail as a Matter of Law.

Count one of the Complaint alleges in conclusory fashion that the Defendants conspired, both criminally and civilly, to violate various Federal and Wisconsin criminal statutes and to defraud the United States. Plaintiffs' civil conspiracy allegations related to these alleged criminal law violations fall far short of the pleading requirements.

### A)  Plaintiffs' conclusory allegations of a civil conspiracy fail to state a claim.

Plaintiffs' Complaint is devoid of any factual allegations to support a claim for civil conspiracy to violate any law noted in the Complaint.  Rather, Plaintiffs assert conclusory and hyperbolic allegations of some vague conspiracy that they conclude violated a consortium of

inapplicable statutes premised on their incorrect conclusion that the Alternate Elector Defendants "falsely assume[d] the office of presidential elector for the State of Wisconsin." (Compl. ¶¶ 215, 221).  Without more, these unfounded assertions fail to show facts that support the elements of a civil conspiracy.

A civil conspiracy involves "a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." *City of Milwaukee v. N.L. Indus., Inc.,* 2005 WI App 7, ¶ 25, 278 Wis. 2d 313, 691 N.W.2d 888. As such, a complaint must allege facts to show: (1) the formation and operation of a conspiracy; (2) a wrongful act or acts done pursuant to the conspiracy; and (3) damage resulting from the act or acts. *N. Highland Inc. v. Jefferson Mach. & Tool Ins.,* 2017 WI 75, ¶ 25, 377 Wis. 2d 496, 898 N.W.2d 741; *Medline Indus., Inc. v. Diversey, Inc.,* 563 F. Supp. 3d 894 (E.D. Wis. 2021).

The Plaintiffs assert no facts demonstrating any of the foregoing elements.  Foremost, everything that the Complaint alleges that the Alternate Elector Defendants did in relation to December 14, 2020 was lawful, as WEC unanimously confirmed the Wisconsin Dept. of Justice's endorsement. *Sickel v. Hitt, et al.,* 2021 EL 2021-13 (March 15, 2022), available at https://www.wispolitics.com/wp-content/uploads/2022/03/220315Ruling.pdf; *Sickel v. Hitt, et al.,* 2021 EL 21-13, WI DOJ Memorandum (February 9, 2022), available at https://www.wispolitics.com/wp-content/uploads/2022/03/220315Memo.pdf.  Moreover, absent from the Complaint are facts establishing the other necessary elements of a conspiracy, such as accomplishing a lawful purpose by unlawful means. Likewise, nothing is alleged that demonstrates that Plaintiffs experienced damage from any conspiracy.  Rather, the Complaint contains only bare conclusions; but bare conclusory statements without factual allegations cannot

survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. at 678 (2009). Accordingly, the civil conspiracy claim must be dismissed.[7]

### B) Plaintiffs' conspiracy claims fail to satisfy the heightened pleading requirements of Fed. R. Civ. Pro. 9(b).

Not only missing the most basic factual support, Plaintiffs' conspiracy claims must be dismissed because the Complaint fails heightened pleading requirements that Fed. R. Civ. Pro. 9(b) imposes, since they allege a conspiracy rooted in acts of fraud and similar intentional conduct. *Haywood v. Massage Envy Franchising, LLC,* 887 F.2d 329, 333 (7th Cir. 2018) (finding that the particularity" requirement of Rule 9(b) applies not only to claims expressly denominated as "fraud," but also to claims that are "grounded" in or "sound" in fraud). Pleading fraud with particularity requires specifying the time, place, particular contents of the false representations, the identity of the party making the misrepresentation, and the consequences of the misrepresentation. *H.G. Gallimore, Inc. v. Abdula*, 652 F. Supp. 437, 441 (N.D. Ill. 1987). Moreover, where a complaint accuses multiple defendants, the allegations must inform each defendant of their specific fraudulent acts justifying that individual's inclusion in the count. *UNR Industries, Inc. v. Continental Ins. Co*., 623 F. Supp. 1319, 1328–29 (N.D.Ill.1985).

Here, the only allegation is that the Alternate Elector Defendants voted their slate of electors on December 14, 2020 and submitted those votes pursuant to Wisconsin and Federal law. There is no specific allegation of anything false or fraudulent. Rather, Plaintiffs' claims of fraud stem from their clear misunderstanding of the law and their unsupported conclusion that the actions, in and of itself, taken by the Alternate Elector Defendants were unlawful. As noted

---

[7] To the extent that Plaintiffs allege liability directly from any suggestion that the Alternate Elector Defendants violated any criminal statute, such claims are precluded. The Plaintiffs' conspiracy claims are not cognizable private causes of action. 28 U.S.C. §§ 371, 494, and 1512(c)(2) and Wis. Stat. §§ 939.05 and 946.09 cited in support of the conspiracy claims are criminal statutes that impose criminal penalties, but there is no express civil cause of action for violations of any of those statutes.

above, Plaintiffs' conclusion is incorrect. Regardless, even if their Complaint sufficiently alleged that the Alternate Elector Defendants conspired to violate 28 U.S.C. §§ 371, 494, and 1512(c)(2) and Wis. Stat. §§ 939.05 and 946.09, such allegations would still require dismissal because the Complaint fails to describe with particularity the unlawful means and unlawful results for a cognizable conspiracy claim.

Each criminal statute referenced by the Plaintiffs requires particularized pleading as to the essential element of the intent to defraud. *United States v. Henningsen*, 387 F.3d 585, 589-590 (7th Cir. 2004) (intend to defraud is defined as "willfully and with specific intent to deceive or cheat"). For example, 18 U.S.C § 371 requires alleging with particularity acts of a conspiracy "to defraud the United States"; 18 U.S.C. § 494 requires alleging with particularity acts "for the purpose of defrauding the United States"; 18 U.S.C. § 1512(c)(2) requires alleging with particularity conduct of those acting "corruptly"; and Wis. Stat. § 946.69, plead as conspiracy under Wis. Stat. 939.01, requires alleging with particularity of conduct "knowing that he or she is not the public officer or public employee . . . that he or she assumes to be." The Complaint is devoid of specific facts related to each (let alone any) Defendants' specific intent to defraud the United States or the Plaintiffs. Instead, the Plaintiffs repeatedly assert unfounded, specious, and conclusory allegations that the Defendants are "fraudulent electors."

Moreover, the Complaint fails to demonstrate the most basic elements of a fraud claim: detrimental reliance and harm. That is because none exists. The United States Congress counted the Plaintiffs', not the Defendants', electoral votes, and their political party's candidates won the election. Plaintiffs failed to articulate how the Defendants' conduct harmed them in any way, shape, or form.

27

Plaintiffs have also failed to allege facts to demonstrate violations of the referenced criminal statutes, 18 U.S.C. §§ 494 and 1512(c)(2) and Wis. Stat. 946.69, with any particularity. Under 18 U.S.C. § 494, in order to state a claim for civil conspiracy to utter a forgery, a plaintiff's allegations must establish facts showing that: (i) that the defendants agreed to utter a false writing; (ii) that the document in question was a public record; and (iii) that the defendants did so with the intent to defraud the United States. Plaintiffs have failed to plead any particularized facts related to the Defendants' specific knowledge or awareness on the alleged falsity of their document "Certificate of the Votes of the 2020 Electors from Wisconsin." These are both essential elements that must be plead with supporting facts, and the Plaintiffs have failed to do so. Moreover, there is no allegation that anything in the foregoing document was false (*i.e.,* the Alternate Elector Defendants met at the State Capitol, voted for the Republican Party candidates, and submitted their votes pursuant to applicable law)..

Likewise, related to 18 U.S.C. § 1512(c)(2), Plaintiffs must allege, again with particularity, facts demonstrating the following elements: (i) that the defendants conspired to obstruct, influence, impede any official proceeding; and (ii) that the defendants acted corruptly. The Plaintiffs' Complaint fails to specifically state how the Defendants obstructed, influenced, or impeded any official proceeding. Moreover, even if the Plaintiffs properly plead allegations related to obstructing, influence, or impediment, they have failed to adequately link those actions to the requisite scienter element of "corrupt" intent. Again, that is because none exists. The Alternate Elector Defendants casted a competing slate of electoral votes to preserve the same during on-going court challenges.

Lastly, Wis. Stat. § 946.69 criminalizes one who falsely impersonates a public officer or public employee. Fatal to the Plaintiffs' claim is that the Defendants were neither public officers

nor public employees. Wis. Stat. § 939.22 defines a "public officer" as "any person appointed or elected according to law to discharge a public duty for the state or one of its subordinate governmental units." The Complaint alleges that the Alternate Elector Defendants were nominated by the Republican Party pursuant to Wis. Stat. § 8.18 and, thereafter, met to vote for "the candidates of the political party which nominated them under s. 8.18" pursuant to Wis. Stat. § 7.75(2). (Compl. ¶ 31-32, 52, 59, 62).  That is, they were not appointed or elected to perform any duty for the state or any agency of the state. Moreover, there is no allegation that they falsely impersonated anyone. They acted in their individual capacities, through their prior nominations, and voted as required by law for the party's candidates. This claim, like the rest, is meritless and should be dismissed.

## VI.   Plaintiffs' Quo Warranto Claim Fails as a Matter of Law.

Plaintiffs' claim of Quo Warranto must be dismissed for several reasons. Not only have the Plaintiffs failed to state a cognizable claim, there is no actual dispute for the court to resolve. Quo warranto is an extraordinary remedy available under Wis. Stat. § 784.04. It can be appropriately described as the statute governing usurpation of public office. *Id*. For relief, a plaintiff must show not only that he or she is entitled to the office, but also that it is unlawfully held and exercised by the defendant in the action and the plaintiff suffered an injury as a result. *Id*.  The allegations in the Complaint do not establish any such right to relief.

### A)  The Plaintiffs are not "public officers."

The Plaintiffs have failed to allege that presidential electors qualify as "public office" under the statute. To qualify as a "public office," the position must possess sovereign power of the government, have permanency and continuity, and be entered upon by taking an oath, among

other things. *Burton v. State Appeal Bd.,* 38 Wis. 2d 294, 156 N.W.2d 386 (1968).[8]  The

Plaintiffs, in relation to their nomination as temporary presidential electors by the Republican

Party, were not exercising the sovereign power of the state; again, they acted on behalf of a

political party in accordance with applicable law.

> **B) The Plaintiffs fail to allege facts of "usurpation" as required by Wis. Stat. § 784.04 and fail to allege any injury.**

Even if, *arguendo*, the presidential electors qualify as "public officers" and the Complaint

properly plead this fact, count four must be dismissed as the Plaintiffs' fail to allege any facts

related to the Defendants' alleged "usurpation" of office, an essential element of a quo warranto

claim. Wis. Stat. § 784.04. "Usurpation" in the context of Quo Warranto refers to the "unlawful

seizure and assumption of another's position, office, or authority." USURPATION, Black's Law

Dictionary (11th ed. 2019). The Complaint alleges that "[b]y falsely assuming the office of

presidential elector for the State of Wisconsin, the Fraudulent Elector Defendants did 'usurp,

intrude into or unlawfully hold or exercise [that] public office.'" Regardless of how Plaintiffs

frame it, the Alternate Elector Defendants were duly nominated to be presidential electors, voted

as presidential electors on December 14, 2020, and, thereafter, submit their votes. Wis. Stat. §

8.18 and § 7.75. One cannot usurp a nomination that he or she has the statutory right to hold.

Count four also fails to state an injury to a special interest entitling Plaintiffs to redress.

Litigants, like the Plaintiffs, must allege a "special interest beyond general interest common to all

members of public" and a specific injury to that "special interest." *State ex rel. First Nat. Bank of*

*Wisconsin Rapids v. M & I Peoples Bank of Coloma,* 95 Wis. 2d 303, 290 N.W.2d 321 (1980).

The Plaintiffs' allege they have a special interest "because they are entitled to the office that the

---

[8] Similarly, Wisconsin Statutes define a State Public Official as an "individual holding a state public office," and lists the various offices that apply. Wis. Stats. §§ 19.42 (14), (13)(listing offices, such as, "[a] municipal judge, positions "regularly appointed by the governor," and "members of the elections commission").

Fraudulent Elector Defendants usurped" and "because they are Wisconsin taxpayers and voters". (Compl. ¶¶ 265, 266). The latter argument is not a special interest as a matter of law. *State ex rel. First Nat. Bank of Wisconsin Rapids,* 95 Wis. 2d at 311. Furthermore, Plaintiffs were not entitled (and do not allege to be entitled) to be presidential electors for the Republican Party since they were not nominated and approved by the Republican party pursuant to Wis. Stat. § 8.18. Rather, Plaintiff Penebaker and Plaintiff Arnold allege that they were Democrat party electors and, as such, they were able to vote and were able to fulfill their duties.  Accordingly, there is no allegation of any usurpation.

### C)  The Quo Warranto claim is moot.

In addition to the Plaintiffs' inability to state a cognizable quo warranto claim, count four should be dismissed, as any theoretical dispute is now moot. Quo warranto remedies are applied only to on-going exercises of power. *Save Lake Calhoun v. Strommen*, 928 N.W.2d 377 (Minn. Ct. App. 2019), aff'd in part, rev'd in part, 943 N.W.2d 171 (Minn. 2020); *Mansfield v. McShurley*, 911 N.E.2d 581, 587 (Ind. Ct. App. 2009); *Sorensen v. Swanson*, 181 Neb. 205, 209 (1967). The Defendants no longer occupy the position of presidential electors for the Republican Party, just as Plaintiffs Penebaker and Arnold no longer occupy the position of presidential electors for the Democrat party, and therefore a writ of quo warranto is not available to the Plaintiffs as a matter of law.

### <u>CONCLUSION</u>

Based on the foregoing, the Alternate Elector Defendants respectfully requests that the Court dismiss Plaintiffs' Complaint for failure to state a claim upon which relief may be granted.

31

Dated this 22nd day of June, 2022.

Respectfully submitted,

LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
Attorneys for Defendants, Andrew Hitt, Robert F. Spindell, Jr.,
Bill Feehan, Kelly Ruh, Carol Brunner, Edward Scott Grabins,
Kathy Kiernan, Darryl Carlson, Pam Travis and Mary Buestrin.

By:  *Electronically signed by Kurt A. Goehre*
          R. George Burnett, State Bar No. 1005964
          Kurt A. Goehre, State Bar No. 1068003

<u>POST OFFICE ADDRESS</u>:
231 South Adams Street
Green Bay, WI  54301
P. O. Box 23200
Green Bay, WI  54305-3200
920-437-0476
E-mail:  rgb@lcojlaw.com
             kag@lcojlaw.com
#4258458

## CERTIFICATE OF SERVICE

I certify that on June 22, 2022, I filed Defendants' Memorandum in Support of Motion to Dismiss, on behalf of Defendants Andrew Hitt, Robert F. Spindell, Jr., Bill Feehan, Kelly Ruh, Carol Brunner, Edward Scott Grabins, Kathy Kiernan, Darryl Carlson, Pam Travis, and Mary Buestrin, via the CM/ECF system for the U.S. District Court for the Western District of Wisconsin, which will cause a copy to be served on all registered parties.

*s/Kurt A. Goehre*
Kurt A. Goehre