IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KHARY PENEBAKER, MARY ARNOLD,
and BONNIE JOSEPH,

                    Plaintiffs,

        v.

ANDREW HITT, ROBERT F. SPINDELL, JR.,           OPINION and ORDER
BILL FEEHAN, KELLY RUH, CAROL BRUNNER,
EDWARD SCOTT GRABINS, KATHY KIERNAN,                22-cv-334-jdp
DARRYL CARLSON, PAM TRAVIS,
MARY BUESTRIN, JAMES R. TROUPIS, and
KENNETH CHESEBRO,

                    Defendants.

---

This case is about an alleged conspiracy to overturn the results of the 2020 U.S. Presidential election in Wisconsin by creating a false slate of electors who purported to cast the state's electoral votes for Donald Trump. Plaintiffs are Wisconsin residents, two of whom served as electors pledged to Joe Biden. They sued the Trump electors and two attorneys with ties to the Trump campaign in Wisconsin state court, asserting state-law claims for civil conspiracy and public nuisance. Defendants removed the lawsuit to this court on the ground that some of plaintiffs' claims arise under federal law. Dkt. 1.

Plaintiffs move to remand the case to state court. Dkt. 12. This case is set against the backdrop of federal election law, and it implicates issues of national importance. But that is not enough to meet the exacting standards of federal jurisdiction. Federal courts have jurisdiction over a state-law claim only if the claim turns on the resolution of a substantial federal issue. The federal issues in plaintiffs' complaint are not substantial ones; rather they call for the kind of application of law to facts that the Supreme Court has said does not give

rise to federal jurisdiction. Because this court does not have jurisdiction over this case, it must be remanded to state court.

BACKGROUND

The court draws the following allegations from the plaintiffs' complaint. Dkt. 1-2. Plaintiffs Khary Penebaker, Mary Arnold, and Bonnie Joseph are Wisconsin residents. Penebaker and Arnold were nominated by the Wisconsin Democratic party to serve as Wisconsin's presidential electors for the 2020 U.S. presidential election.

Under Wisconsin law, presidential electors are selected by popular vote. A vote for the presidential nominee of a party is, in practice, a vote for that party's electors. *See* Wis. Stat. § 8.25. Joe Biden, the Democratic party nominee, won Wisconsin's popular vote in 2020. Donald Trump, the Republican party nominee, sought a partial recount of the election results. The recount affirmed that Biden had won the state's popular vote. Accordingly, the chair of the Wisconsin Election Commission and Governor Tony Evers certified that the Democratic nominees for elector had been selected as the presidential electors for the state of Wisconsin. In December, Trump appealed the results of the partial recount in state court. The results of the recount were affirmed in circuit court and by the state supreme court.

Plaintiffs allege that defendants sought to overturn the result of Wisconsin's presidential vote by creating a competing slate of electors pledged to Republican candidate Donald Trump. The Republican electors are defendants Andrew Hitt, Robert F. Spindell, Jr., Bill Feehan, Kelly Ruh, Carol Brunner, Edward Scott Grabins, Kathy Kiernan, Darryl Carlson, Pam Travis, and Mary Buestrin. Plaintiffs further allege that the plan was orchestrated by defendant Kenneth Chesebro, an attorney with ties to the Trump campaign. Plaintiffs also

name as a defendant James Troupis, an attorney for the Trump campaign in Wisconsin. But they allege only that Troupis received memos from Chesebro explaining the scheme, *see* Dkt. 1-2, ¶¶ 88, 91, so it's not clear what role he played in the alleged conspiracy.

State and federal law directed Wisconsin's electors to meet and cast the state's electoral votes on December 14, 2020, in the Wisconsin State Capitol building. On that day, the Republican elector defendants gathered in a room in the Capitol. During the meeting, they learned that the Wisconsin Supreme Court had affirmed the results of the recount and that Biden had won the state's popular vote. Despite this, defendants executed a document titled "Certificate of the Votes of the 2020 Electors from Wisconsin" where they represented that they were the duly elected electors for the state of Wisconsin and that they had cast Wisconsin's electoral votes for Trump. Dkt. 1-2, ¶¶ 119–120. Defendants transmitted a copy of the document to the President of the United States Senate and the Archivist of the United States, among other parties designated by federal law, in the hopes that Vice President Mike Pence would decertify the slate of Wisconsin electors pledged to Biden and would instead certify the slate pledged to Trump.

Plaintiffs filed this lawsuit in Wisconsin state court in May 2022. Dkt. 1-2. The complaint asserts three sets of claims under Wisconsin law. First, plaintiffs allege that defendants conspired to falsely assume the role of Wisconsin's presidential electors, in violation of several state and federal criminal laws. Second, plaintiffs allege that defendants created a public nuisance by interfering with Wisconsin citizens' right to vote and "repeatedly violat[ing] various criminal prohibitions." *Id.*, ¶ 234. Third, plaintiffs assert a quo warranto action under Wis. Stat. § 784. A quo warranto action "tests the ability of an individual to hold office." *State ex rel. Kaul v. Prehn*, 2022 WI 50, ¶13, 402 Wis. 2d 539, 548, 976 N.W.2d 821, 825 (cleaned

up). Because plaintiffs' motion to remand turns on the substance of plaintiffs' claims, the court will discuss their claims in greater detail in the analysis section of this opinion.

The elector defendants timely removed the lawsuit to this court. Dkt. 1. Defendants Troupis and Chesebro filed their consent to removal soon after. Dkt. 10. Plaintiffs moved to remand and they seek fees for the improper removal. Dkt. 12. The elector defendants filed a brief in opposition, Dkt. 28, in which defendant Chesebro later joined, Dkt. 38. Defendant Troupis filed a separate brief in opposition. Dkt. 33.

ANALYSIS

**A.  Motion for remand**

Removal is appropriate only if a suit could have been filed originally in federal court. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986). Defendants rely on 28 U.S.C. § 1331 as the basis for jurisdiction, which gives federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." A case arises under federal law if it appears on the face of the plaintiff's complaint that (1) federal law creates the cause of action or (2) the plaintiff's right to relief "necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006).

Plaintiffs do not assert any federal causes of action in their complaint. But defendants contend that federal jurisdiction is proper because plaintiffs' state-law claims raise substantial questions of federal law. A complaint asserting state-law causes of action gives rise to federal jurisdiction only if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance

4

approved by Congress. *Empire Healthchoice*, 547 U.S. at 699. Only a "special and small" category of cases asserting state-law causes of action will meet all four requirements. *Id*. at 690. The Seventh Circuit has observed that the inquiry "rarely results in a finding of federal jurisdiction." *Evergreen Square of Cudahy v. Wisconsin Hous.* & *Econ. Dev. Auth*., 776 F.3d 463, 466 (7th Cir. 2015). As the parties seeking to invoke federal jurisdiction, defendants have the burden of demonstrating that jurisdiction is proper. *See Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997).

The plaintiffs concede that the federal issues in this case are disputed. So the court will consider the remaining three issues: whether the federal issues are necessarily raised, substantial, and capable of resolution in this court without disrupting the federal-state balance of judicial responsibilities.

### 1.  Are federal issues necessarily raised

The first question is whether plaintiffs' complaint necessarily raises a federal issue. Plaintiffs assert three sets of claims under Wisconsin law: a civil conspiracy claim, a public nuisance claim, and a quo warranto action. Defendants don't contend that plaintiffs' quo warranto action necessarily raises a federal issue, so the court need not consider that claim. To determine whether plaintiffs' civil conspiracy and public nuisance claims necessarily raise federal questions, the court must consider what plaintiffs must prove to prevail on those claims.

Under Wisconsin law, a civil conspiracy is a combination of two or more persons acting together to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Radue v. Dill*, 74 Wis. 2d 239, 241, 246 N.W.2d 507, 509 (1976). Plaintiffs allege that defendants engaged in a conspiracy to violate the following state and federal laws:

- Wis. Stat. § 946.69, which prohibits falsely assuming to act as a public officer;

- Wis. Stat. § 939.05, Wisconsin's criminal conspiracy statute;

- 18 U.S.C. § 1512(c)(2), which applies to a person who "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so";

- 18 U.S.C. § 494, which applies to any person who creates a writing for the purpose of defrauding the United States or transmits such a writing to a United States officer; and

- 18 U.S.C. § 371, which applies to conspiracies to "commit any offense against the United States, or to defraud the United States."

Dkt. 1-2, ¶¶ 216–217.[1]

As for the public nuisance claim, a public nuisance is a condition or activity that substantially or unduly interferes with the use of a public place or with the activities of an entire community. *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, ¶ 68, 254 Wis. 2d 77, 140, 646 N.W.2d 777, 807. A repeated violation of a criminal statute constitutes per se a public nuisance. *State v. H. Samuels Co.*, 60 Wis. 2d 631, 636, 211 N.W.2d 417, 420 (1973). Plaintiffs allege that defendants "unduly interfered with the activities of the entire Wisconsin electorate" by falsely acting as the state's presidential electors, and that defendants created a per se nuisance by violating "various criminal prohibitions" during the alleged civil conspiracy. Dkt. 1-2, ¶ 234. All parties assume that plaintiffs' per se public nuisance claim is based on the same criminal statutes as plaintiffs' conspiracy claim.

---

[1] Plaintiffs also allege that defendants violated Wis. Stat. § 5.10, which provides that the state's presidential electors are chosen by statewide vote, and Wis. Stat. § 7.75, which governs when state electors meet to cast their votes. But those statutes impose duties on the state's electors, not on defendants, so it isn't clear how defendants could have violated them. In any case, they provide no basis for federal jurisdiction.

Defendants contend that plaintiffs' complaint necessarily raises federal issues, for two reasons: that (1) plaintiffs' claims implicate the federal Electoral Count Act; and (2) plaintiffs' claims are predicated on violations of federal criminal law.

### a. Electoral Count Act

First, defendants contend that resolving plaintiffs' civil conspiracy and public nuisance claims will require the court to interpret the federal Electoral Count Act, 3 U.S.C. §§ 1–21, which governs how electors submit electoral votes and how those votes are counted by Congress. Plaintiffs cite the act frequently in their complaint, and both sets of defendants contend that the act is central to resolving plaintiffs' claims. The elector defendants contend that plaintiffs' claims must be decided in light of the act's provisions related to how Congress should choose between competing slates of electoral college votes. *See* Dkt. 28, at 9 (citing 3 U.S.C. § 15). Defendant Troupis argues that whether defendants' actions were unlawful turns on whether they took all the steps required by the act to have their votes counted. Specifically, Troupis says that defendants could not have effectively posed as Wisconsin's electors without attaching the certifications from Governor Evers that are required under federal election law. *See* Dkt. 33, at 16 (citing 3 U.S.C. § 5).

Plaintiffs' claims, as pleaded, do not necessarily raise these federal issues. The electoral college is a federal institution, so it would be nearly impossible to plead a claim about presidential electors without referring to federal law. But the heart of plaintiffs' complaint is that the elector defendants falsely certified that they were the duly-elected electors from the state of Wisconsin even though they knew that Trump had lost the election and that the Wisconsin Supreme Court had affirmed the election results. The selection and appointment of presidential electors is governed by state law, *see* Wis. Stat. § 8.25, so plaintiffs' claims do not

require the court to consider whether defendants' actions met the requirements of the Electoral Count Act.

Defendants may, as Troupis argues, attempt to defend the state-law claims on the ground that the documentation of their alternative slate of electors was so apparently deficient under the Electoral Count Act that it was not deceptive. But the existence of a federal defense does not create federal jurisdiction. *Chicago Tribune Co. v. Bd. of Trs. of the Univ. of Ill.*, 680 F.3d 1001, 1003 (7th Cir. 2012). This is true "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). Whether defendants' competing slate of electors satisfied the requirements of the Electoral Count Act could ultimately be relevant to this case. But that issue is not one necessarily raised by plaintiffs' complaint.

### b. Federal criminal law

Second, defendants contend that plaintiffs' complaint necessarily raises federal issues because plaintiffs predicate their conspiracy and public nuisance claims on alleged violations of federal criminal law. If the wrongful act that forms the basis of a civil conspiracy claim is a violation of a statute, the plaintiff must show that the defendants actually violated the statute to prevail on that claim. *See Tele-Port, Inc. v. Ameritech Mobile Comm.*, 2001 WI App 261, 248 Wis. 2d 846, 863, 637 N.W.2d 782, 791 (dismissing claim that defendants conspired to violate Wis. Stat. § 133.05(1) after the court "already determined that [defendant] did not violate [it].").

Plaintiffs counter that their claims do not necessarily raise issues of federal law because they also allege that defendants violated state law. If a claim can be supported independently

8

by both state and federal law theories, "federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996). Plaintiffs contend that they need only show that defendants violated Wisconsin law to prevail on their conspiracy and public nuisance claims, so it would not be necessary to reach the federal criminal laws they cite.

The court is not persuaded that the federal statutory violations provide anything more than alternative bases for liability. To resolve plaintiffs' claims that implicate federal criminal laws, a court will need to determine whether defendants acted "corruptly," (18 U.S.C. § 1512(c)), "falsely" (18 U.S.C. § 494), or fraudulently (18 U.S.C. § 371). These aren't crimes specific to federal election law; they are generic crimes relating to dishonesty in dealing with the United States government. The elements of the federal crimes differ somewhat from those of the state crimes, because the federal crimes require that the United States be a target of the criminal intent, which is not an element of the predicate state crimes. But the heart of the federal crimes is that defendants planned to act corruptly, falsely, or fraudulently. The element of corruption and deception is also the core of the state-law crime of assuming to act as a public officer, and plaintiffs allege the same acts for both the federal and state-law crimes. Plaintiffs do not allege that defendants committed any acts prohibited by federal law that are not also prohibited by state law. This is not a case like *Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.* involving separate and distinct injuries, some rooted exclusively in federal law. 850 F.3d 714, 722 (5th Cir. 2017).

The court concludes that federal issues are not necessarily raised by plaintiffs' complaint. But even if it were necessary to decide whether defendants violated the alleged federal predicates to determine the extent of defendants' liability, the court must consider

whether the federal questions raised by the application of those statutes are "substantial" for the purposes of jurisdiction under § 1331.

### 2. Are the federal issues raised substantial ones

Whether a federal issue is substantial focuses on the issue's importance "to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013). An issue has such importance when it raises questions about the interpretation or validity of a federal statute*, see Smith v. Kan. City Title & Tr. Co.*, 255 U.S. 180, 201 (1921) (validity); *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005) (interpretation), or when it challenges the functioning of a federal agency or program*, see id*.; *cf. Bennett v. Sw. Airlines Co*., 484 F.3d 907, 911 (7th Cir. 2007) (holding that federal jurisdiction was lacking because, among other reasons, the plaintiffs did not "challenge the validity of any federal agency's or employee's action"). An issue may also qualify as substantial when it is a "pure issue of law" and a ruling on the issue is "both dispositive of the case and would be controlling in numerous other cases." *Empire Healthchoice*, 547 U.S. at 700 (citations omitted),

By contrast, a federal issue is not substantial if it is "fact-bound and situation-specific," *id*. at 701, or it raises only a hypothetical question unlikely to affect interpretations of federal law in the future, see *Gunn*, 568 U.S. at 261. A federal issue is not substantial merely because it is novel. *See id.* at 262. Jurisdiction is not created by the mere fact that proof of violation of a federal statute is an element of a plaintiff's state-law cause of action. *See Merrell Dow Pharm*., 478 U.S. at 816.

With those principles in mind, the court concludes that whether defendants violated federal criminal law as part of the alleged conspiracy and per se public nuisance is not a substantial federal issue for the purpose of arising under jurisdiction, for three main reasons.

First, the case does not challenge the actions of a federal agency, program, or employee. Defendants in this case are not federal employees, and plaintiffs do not allege that any federal agency acted unlawfully. Defendant Troupis contends that Congress has an interest in plaintiffs' claims because it may resolve "the circumstances under which the Electoral College votes are recognized by Congress as official, binding actions." Dkt. 33, at 16. But plaintiffs' claims are about whether defendants violated the law by purporting to cast the state's electoral votes, not whether Congress was right to count them. The federal government has a "direct interest in the availability of a federal forum to vindicate its own [] action[s]," *Grable*, 545 U.S. at 315. But that interest is not present here.

Second, the contested federal issue does not present a pure question of federal law. To resolve plaintiffs' claims that implicate federal criminal laws, a court will need to determine whether defendants: (1) "corruptly . . . obstruct[ed], influence[d], or impede[d]" an official proceeding under 18 U.S.C. § 1512(c); (2) falsely made a writing for the purpose of defrauding the United States or transmitted such a writing to a United States officer under 18 U.S.C. § 494; and (3) conspired to defraud the United States under 18 U.S.C. § 371. Determining whether defendants' conduct violated these statutes does not present "a context-free inquiry into the meaning of a federal law." *Bennett*, 484 F.3d at 910. Instead, these questions turn on the specific facts of the case, including, for example, whether defendants knew that the state supreme court had affirmed the results of the election and the intended effect of their alternative slate of electors. This case has a factual complexity that is anything but a pure question of federal law.

Third, given the centrality of state law to this case, it's unlikely that a decision on any federal issues in this case would produce controlling precedent. Resolving the case could require

a court to apply some federal standards to the facts, but a state court is competent to do that. *See Tafflin v. Levitt*, 493 U.S. 455, 465 (1990) ("State courts adjudicating civil RICO claims will . . . be guided by federal court interpretations of the relevant federal criminal statutes, just as federal courts sitting in diversity are guided by state court interpretations of state law"). More important, whether defendants' actions were corrupt, false, or fraudulent—elements of the federal crimes—fundamentally depends on whether defendants were the duly elected electors under state law. Defendants contend that this lawsuit would have precedential value because the Trump campaign induced similar slates of false electors in several other swing states. But a determination that the defendants in this case violated certain federal criminal laws by impersonating Wisconsin's electors would not be controlling in other states, because each case would depend fundamentally on the state's laws governing the selection of its electors.

### 3. Would exercising jurisdiction disrupt the federal-state balance

A federal issue must satisfy all four elements of the jurisdictional test for jurisdiction to lie over a state-law claim. *Gunn*, 568 U.S. at 258. Because the federal issue raised by plaintiffs' claims is not substantial, the court does not have jurisdiction over this case. But even if the federal issue were substantial, it does not meet the final requirement for establishing jurisdiction, which is that the federal issue can be resolved without upsetting the federal-state balance of judicial responsibilities established by Congress. Factors relevant to this determination include whether finding federal jurisdiction would lead to a significant increase in the number of cases filed in federal court, *see Grable*, 545 U.S. at 319, and whether the state has a special interest in the subject matter of the lawsuit, *see Gunn*, 568 U.S. at 264.

The court concludes that a finding of federal jurisdiction would disrupt federal-state balance, for three reasons. First, although few cases are likely to have facts similar to this one, a general practice of exercising jurisdiction over common-law conspiracy claims resting on violations of federal criminal law would encourage parties to manufacture federal jurisdiction by adding federal-law predicates to state-law conspiracy claims.

Second, in general, federal criminal statues do not provide a private cause of action for civil liability. *See Ragsdale v. Turnock*, 941 F.2d 501, 509 (7th Cir. 1991). The absence of a private cause of action in a statute is good evidence that Congress intended to keep civil claims about that statute out of federal court. *See Grable*, 545 U.S. at 318; *Bennett*, 484 F.3d at 911. Allowing plaintiffs to bring claims alleging violations of federal criminal law merely because they are styled as civil conspiracy claims would thus frustrate congressional intent.

Third, Wisconsin itself has a significant interest in the selection and appointment of its presidential electors. Although the electoral college is a federal institution, the Constitution leaves the manner of selecting electors to each state. *See* Article II, § 1, cl. 2. The state of Wisconsin has a significant interest in ensuring that its electors are selected in accordance with its own laws. States may choose whether to enforce the results of the statewide vote by enacting a so-called "pledge law" that directs electors to cast their vote for their party's candidate. *See Ray v. Blair*, 343 U.S. 214, 227 (1952). Wisconsin has such a pledge law, *see* Wis. Stat. § 7.75, clearly demonstrating its interest in ensuring that its electoral votes go to the candidate who won the state's popular vote.

Defendants provide two arguments why the federal interests in this case outweigh Wisconsin's, neither of which are persuasive. First, defendants contend that there is a federal interest in maintaining uniformity in federal criminal law. But "Congress ensured such

uniformity by vesting exclusive jurisdiction over actual [federal criminal] cases in the federal district courts." *Gunn*, 568 U.S. at 251; *see* 18 U.S.C. § 3231. Federal courts would not be bound by the state court's decisions or interpretations, *see Tafflin,* 493 U.S. at 465, so the state court's determinations would not undermine uniformity in how the laws are applied in federal criminal proceedings.

Second, defendants contend that there is strong interest in "maintaining uniformity in litigation directly concerning federal elections and the Electoral Count Act." Dkt. 33, at 20. But for the reasons explained earlier in this opinion, plaintiffs' claims do not necessarily raise any issues related to the Electoral Count Act. The federal issues raised by plaintiffs' complaint are bound to the facts of this case, so exercising jurisdiction here would not do much to foster uniformity in election litigation. Hearing plaintiffs' state-law claims in this court would do little to advance any significant federal interest, so jurisdiction is improper.

## B. Fees for improper removal

Plaintiffs seek an award of costs incurred in moving for remand. A court may award costs and fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp*., 546 U.S. 132, 141 (2005). The request will be denied. Plaintiffs contend that defendants did not have a reasonable basis for removal because their complaint did not assert any federal causes of action. But plaintiffs' causes of action were expressly predicated on alleged violations of federal law, and the complaint implicates a national effort to overturn the presidential election. Defendants' effort to remove the case on the theory that it raised a substantial question of federal law was understandable, even though ultimately unsuccessful.

Plaintiffs also contend, in a cursory fashion, that fee shifting is justified because the elector defendants' notice of removal did not account for the position of defendants Troupis or Chesebro, as was required by 28 U.S.C. § 1446(b)(2)(A). *See* Dkt. 13, at 11. But plaintiffs provide no authority that fees are justified for a defective notice if the defendant had a reasonable basis for seeking removal. "When an objectively reasonable basis [for removal] exists, fees should be denied." *Martin*, 546 U.S. at 141.

## CONCLUSION

Not every important federal issue should be resolved in a federal forum. *Chi. Tribune Co.*, 680 F.3d at 1003. Even claims that involve "uniquely federal interests" do not give rise to federal jurisdiction unless the plaintiffs' right to relief necessarily depends on a substantial question of federal law. *Empire HealthChoice*, 547 U.S. at 688. The federal issues here are merely incidental to the fundamental state-law questions expressly raised by plaintiffs' complaint. Plaintiffs' claims that defendants falsely claimed to be the duly elected electors for the state of Wisconsin are governed by Wisconsin law, and the case belongs in a Wisconsin state court.

## ORDER

IT IS ORDERED that:

1.  Plaintiffs' motion to remand, Dkt. 12, is GRANTED.

2.  Plaintiffs' request for fees is DENIED.

3.  The case is REMANDED to the Circuit Court for Dane County, Wisconsin.

Entered February 9, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge